QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jennifer A. Kash (Bar No. 203679)
  (jenniferkash@quinnemanuel.com)
  Sean Pak (Bar No. 219032)
  (seanpak@quinnemanuel.com)
  Iman Lordgooei (Bar No. 251320)
  (imanlordgooei@quinnemanuel.com)
  Sam Stake (Bar No. 257916)
  (samstake@quinnemanuel.com)
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for Defendants PROOFPOINT, INC.
and ARMORIZE TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., <br><br>        Plaintiff, <br><br>     vs. <br><br> PROOFPOINT, INC. AND ARMORIZE TECHNOLOGIES, INC., <br><br>       Defendants. | Case No. 5:13-CV-05808-BLF <br><br> **PROOFPOINT, INC. AND ARMORIZE TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE INFRINGEMENT CONTENTIONS** <br><br> **Date:**    **March 26, 2015** <br> **Time:**   **9:00 a.m.** <br> **Dep.:**   **Courtroom 3, 5th Floor** <br> **Judge:** **Hon. Beth L. Freeman** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .................................................................................................... 1

STATEMENT OF RELIEF SOUGHT ............................................................................. 1

STATEMENT OF THE ISSUES ..................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

I.      INTRODUCTION ................................................................................................. 3

II.     STATEMENT OF FACTS ..................................................................................... 4

        A.      Finjan Serves Deficient Infringement Contentions ................................. 4

        B.      Proofpoint Alerts Finjan to Deficiencies in the Infringement Contentions ............. 5

        C.      Finjan Fails To Comply with the Magistrate Judge's Order ..................... 6

III.    LEGAL STANDARD ............................................................................................ 6

IV.     ARGUMENT ........................................................................................................ 8

        A.      Finjan Improperly Combines Its Contentions Against Multiple Products ............... 8

        B.      Finjan's Contentions Fail To Even Address Several Accused Products .................. 9

        C.      Finjan's Contentions Fail To Identify Any Theory For Numerous Limitations ......... 10

        D.      Finjan Relies On Boilerplate Examples Not Tied To The Claim Limitations ......... 14

        E.      Finjan's Contentions Fail To Identify Additional Unnamed Products .................. 19

        F.      Finjan's Contentions Fail To Identify Infringement Under the Doctrine of Equivalents, Indirect Infringement, or Willful Infringement ................................. 19

        G.      Finjan's Contentions Should Be Stricken and the Case Stayed Until Finjan Serves Compliant Infringement Contentions ......................................................... 22

V.      CONCLUSION ..................................................................................................... 24

Case No. 5:13-CV-05808-BLF
DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS

# TABLE OF AUTHORITIES

**Page**

## Cases

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc., No. C 11-04049 JW,*
2012 WL 1030031 (N.D. Cal. Mar. 22, 2012) ..........................................................22

*Bender v. Advanced Micro Devices, Inc.,*
No. C-09-1149 MMC (EMC), 2010 WL 363341 (N.D. Cal. Feb. 1, 2010) ...............6

*Bender v. Infineon Techs. N. Am. Corp.,*
No. C09-02212 JW (HRL), 2010 WL 964197 (N.D. Cal. Mar. 16, 2010) ..........3, 11, 16

*Blue Spike, LLC v. Adobe Sys., Inc.,*
No. 14-cv-01647-YGR (JSC), 2015 WL 335842
(N.D. Cal. Jan. 26, 2015).....................................................7, 18, 20, 21, 22, 23

*CSR Tech. Inc. v. Freescale Semiconductor,*
No. C-12-02619 RS (JSC), 2013 WL 503077 (N.D. Cal. Feb. 8, 2013) ..................20

*Creagri, Inc. v. Pinnaclife Inc., LLC,*
No. 11-cv-06635-LHK-PSG, 2012 WL 5389775 (N.D. Cal. Nov. 2, 2012) ............20, 21

*DCG Sys. v. Checkpoint Techs., LLC, No. C 11-03792 PSG,*
2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ..........................................................7

*DSU Med. Corp. v. JMS Co., Ltd.,*
471 F.3d 1293 (Fed. Cir. 2006) ...............................................................................21

*Digital Reg. of Texas, LLC v. Adobe Sys., Inc.,*
No. CV 12-01971-CW (KAW), 2013 U.S. Dist. LEXIS 23447 (N.D. Cal. Feb. 20, 2013) ......10

*Digital Reg. of Texas, LLC v. Adobe Sys. Inc.,*
No. CV 12-01971-CW (KAW), 2013 WL 3361241 (N.D. Cal. July 3, 2013) ...............8, 11, 14

*France Telecom, S.A. v. Marvell Semiconductor, Inc.,*
No. 12-cv-04967 WHA (NC), 2013 WL 1878912 (N.D. Cal. May 3, 2013) ...................20, 21

*InterTrust Techs. Corp. v. Microsoft Corp., No. C 01-1640 SBA,*
2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) ..........................................................6

*Limelight Networks, Inc. v. Akamai Techs., Inc.,*
134 S. Ct. 2111 (2014) .............................................................................................21

*Network Caching Tech., LLC v. Novell, Inc.,*
No. C-01-2079-VRW, 2002 U.S. Dist. LEXIS 26098 (N.D. Cal. Aug. 13, 2002) .............19, 22

*Oracle Am., Inc. v. Google Inc.,*
No. C 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ....................19

*Perfect Surgical Techniques, Inc. v. Olympus America, Inc.,*
No. C 12-5967 PJH, Dkt. No. 108 (N.D. Cal. Oct. 28, 2013)..............................10, 19

*Renesas Tech. Corp. v. Nanya Tech. Corp.*,
    No. C03-05709JFHRL, 2004 WL 2600466 (N.D. Cal. Nov. 10, 2004) ....................................7

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) ..........................................................................................22

*Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ..........................................................................7, 24

*Shared Memory Graphics LLC v. Apple Inc.*,
    No. C-10-02475 MMC (JSC), 2011 WL 3878388 (N.D. Cal. Sept. 2, 2011)............................7

*Theranos, Inc. v. Fuisz Pharma LLC*,
    No. 11-cv-05236-YGR, 2012 U.S. Dist. LEXIS 172160
    (N.D. Cal. Nov. 30, 2012) ......................................................7, 10, 14, 17, 19, 22, 23

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ..............................................................................................7

*Vigilos LLC v. Sling Media, Inc.*,
    No. C-11-04117 SBA (EDL), 2012 WL 9973147 (N.D. Cal. July 12, 2012).......................9, 19

## Statutes and Rules

Fed. R. Civ. P. 11 .....................................................................................3, 7, 18, 19, 22, 23

Patent L.R. 3-1 ........................................................................................7, 17, 18, 19

Patent L.R. 3-1(c) ...........................................................................................................7, 8

Patent L.R. 3-1(d) ..........................................................................................................20, 21

Patent L.R. 3-1(h) ...............................................................................................................21

Patent L.R. 3-3 .............................................................................................................1, 23

Patent L.R. 3-6 .............................................................................................................1, 10

DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS

## NOTICE OF MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on March 26, 2015 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-titled court, located at 280 South 1st Street, San Jose, CA 95113, Defendants Proofpoint, Inc. and Armorize Technologies, Inc. (collectively, "Proofpoint" or "Defendants") will and hereby do move the Court for an Order striking the infringement contentions served by Plaintiff Finjan, Inc. ("Finjan") with prejudice and staying all dates in this case indefinitely pending further action by the parties. Alternatively, Proofpoint requests an Order striking Finjan's infringement contentions with leave to amend only upon a showing of good cause pursuant to Patent L.R. 3-6, and further moves the Court to stay this action pending any showing of good cause by Finjan and service of amended infringement contentions in compliance with the Local Rules. Proofpoint further requests the opportunity to serve supplemental invalidity contentions in response to any such amended infringement contentions ultimately served by Finjan. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Sam Stake, filed herewith, the pleadings and papers on file herein, and any evidence and argument presented to the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

Proofpoint seeks an Order from the Court striking the infringement contentions served by Plaintiff Finjan, Inc. ("Finjan") with prejudice, and staying all dates in this case indefinitely pending further action by the parties. Alternatively, Proofpoint seeks an Order granting Finjan leave to amend only upon a showing of good cause, and further moves the Court to stay this action pending any showing of good cause by Finjan and service of amended infringement contentions in compliance with the Local Rules. Finjan further requests the opportunity to serve supplemental invalidity contentions in response to any such amended infringement contentions ultimately served by Finjan, consistent with the timing set forth under Patent Local Rule 3-3.

## STATEMENT OF THE ISSUES

1. Whether Finjan's infringement contentions fail to meet the standards set forth under the Patent Local Rules and fail to provide adequate notice of Finjan's theory of infringement, and should

1  therefore be stricken with prejudice or with leave to amend only upon a showing of good cause.

2      2.      Whether to stay this action pending Finjan's showing of good cause and service of

3  amended infringement contentions complying with the Patent Local Rules.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Finjan filed this sprawling lawsuit against Proofpoint over one year ago, asserting over 120 claims across eight patents against a dozen of Proofpoint's products.  In support of these claims, Finjan served infringement charts that group together these products as either "Proofpoint Products" or "Armorize Products."   These groupings are arbitrary and serve only to obscure Finjan's failure to identify sufficient infringement contentions for any single accused product.   In fact, Finjan provides *no infringement analysis at all* for many accused products and, for all products, its boilerplate contentions fail to identify the particular structures or methods that meet each claim limitation.  All told, Finjan fails to show that even a single Proofpoint product directly infringes a single claim of a single patent, and further fails to provide support for its doctrine of equivalents, indirect infringement, and willful infringement theories.

Finjan's inadequate infringement contentions raise doubts as to whether Finjan conducted any pre-suit investigation of Proofpoint's products.   Finjan had an obligation to "include in its infringement contentions all facts known to it, including those discovered in its Fed. R. Civ. P. 11 pre-filing investigation." *Bender v. Infineon Techs. N. Am. Corp.*, No. C09-02212 JW (HRL), 2010 WL 964197, at *1 (N.D. Cal. Mar. 16, 2010).   But Finjan omitted from its contentions basic facts demonstrating a good faith belief in infringement, and has refused to supplement its contentions since, despite having been alerted repeatedly to deficiencies by Proofpoint and the Magistrate Judge.  Specifically, when the Magistrate Judge ordered Finjan to supplement its interrogatory response detailing its infringement contentions by "provid[ing] a comparison of each accused product to the asserted patents on a claim by claim, element by element basis" (Dkt. No. 115 at 6), Finjan *simply cut-and-pasted* its already deficient infringement contentions into its response.

In light of Finjan's continued refusal to amend its infringement contentions, and the resulting prejudice to Proofpoint in defending against Finjan's unfounded claims, the Court should strike Finjan's contentions with prejudice, or with leave to amend only upon a showing of good cause, and stay this action until Finjan files contentions that comply with Patent L.R. 3-1 and demonstrate that it has met its Rule 11 obligations.

## II.     STATEMENT OF FACTS

### A.     Finjan Serves Deficient Infringement Contentions

Finjan served its infringement contentions on April 17, 2014. These contentions assert infringement of eight patents and over 120 claims across twelve accused products, but fail to meet the requirements set forth by Patent L.R. 3-1. In particular, Finjan's infringement contentions do not contain a chart that sets forth where each asserted claim limitation is allegedly found within each of the accused products individually. Finjan instead served a single infringement chart alleging infringement of each of five asserted patents by "Proofpoint Products" and each of seven asserted patents by "Armorize Products." Declaration of Sam Stake ("Stake Decl."), Exs. A – L.[1] Each of the infringement charts asserted against "Armorize Products" relies on an improper amalgamation of at least four different products in a single chart:

> HackAlert Anti-Malware, CodeSecure Automated Static Source Code Analysis, SmartWAF Web Application Firewall, SafeImpressions and Malvertising Protection.

Exs. F – L at 1. Finjan provides no evidence that any of these products are identical or substantially similar for purposes of analyzing infringement, nor is it clear whether Finjan alleges infringement by a hypothetical system that implements all of the listed products or, instead, any one of those products. Finjan similarly groups together seven products as "Proofpoint Products":

> Proofpoint products and services *that utilize the Zero-Hour Threat Detection and Malware Analysis Service including but not limited to*: Proofpoint Enterprise Protection, Proofpoint's Malvertising Protection, Proofpoint's SafeImpressions, Proofpoint's Targeted Attack Protection, Proofpoint Essentials (including the packages of Beginner, Business, and Professional), Proofpoint Protection Server, and Proofpoint Messaging Security Gateway.

Exs. A – E at 1 (emphasis added).[2] Notably, nowhere in these charts does Finjan provide evidence that these products use either Zero-Hour Threat Detection or Malware Analysis Service, or that these products are identical or substantially similar for purposes of Finjan's infringement analysis.

---

[1] All citations to Exhibits herein are to the exhibits attached to the Stake Decl.

[2] All emphases herein are added unless noted otherwise.

## B. Proofpoint Alerts Finjan to Deficiencies in the Infringement Contentions

Given these and many other defects in Finjan's contentions, as early as June 9, 2014, Proofpoint served Finjan with a letter identifying: (1) Finjan's failure to provide separate claim charts for each accused product, (2) Finjan's failure to identify specifically how each accused product practices each limitation of the asserted claims, and (3) Finjan's boilerplate allegations under the doctrine of equivalents. Ex. N (June 9, 2014 letter from H. Chen to B. Wells). At the same time, Proofpoint produced documents to Finjan to aid it in amending those contentions. Specifically, Proofpoint produced over 260 technical documents related to the Armorize products, internal "wiki" documentation for the Proofpoint accused products, and—most importantly—made the source code for all of the accused products available for inspection. Ex. O (Jun. 9, 2014 letter from J. Kash to P. Andre). Proofpoint further followed up on several occasions, each time providing Finjan with an opportunity to amend its infringement contentions. Exs. Q-S, U-X (letters from Proofpoint to Finjan between Jul. 18, 2014 and Nov. 10, 2014). Each time, Finjan responded with a bald denial that its contentions were deficient and refused to provide amended contentions. Exs. P, T, Y (letters from Finjan to Proofpoint between Jul. 10, 2014 and Nov. 10, 2014). Finjan made no effort to address its deficient contentions even after an in-person meet and confer between lead counsel for each party. Ex. Z (Nov. 24, 2014 letter from T. Nichols to K. Kastens).

Worse yet, Finjan has also refused to clearly identify and specify its infringement theories in response to Proofpoint's interrogatory seeking Finjan's product-by-product, claim-by-claim infringement theories. Ex. AA (Finjan's Resp. to Rog 1). Finjan has refused to amend its contentions to provide clear notice of what is at issue in this litigation, even while simultaneously insisting that the case proceed and moving aggressively for discovery. Dkt. No. 66 (arguing against a stay pending reexamination); Dkt. No. 109 (moving to compel discovery despite deficient contentions). Tellingly, Finjan has only inspected Proofpoint's source code four times to date (Ex. CC) and made no effort to supplement its infringement contentions or interrogatory response with information from Proofpoint's technical documents or source code.

### C.    Finjan Fails To Comply with the Magistrate Judge's Order

In view of Finjan's push for broad discovery and simultaneous refusal to provide notice of its infringement theories even in response to interrogatories, Proofpoint sought appropriate relief from the Magistrate Judge. Although Magistrate Judge Lloyd concluded that he lacked authority to compel supplementation of Finjan's contentions (Dkt. No. 115 at 6, n.3), he compelled Finjan to supplement its interrogatory responses to provide sufficient details regarding its infringement contentions to bring them in line with Patent L.R. 3-1:

> Finjan must supplement its response to Defendants' Interrogatory No. 1 to disclose "what in each accused instrumentality it contends practices each and every limitation of each asserted claim," and to provide a comparison of each accused product to the asserted patents on a claim by claim, element by element basis.

Dkt. No. 115 at 6 (ordering supplementation by Jan. 15, 2015).

On January 15, 2015, however, Finjan served a supplemental response to Proofpoint's Interrogatory No. 1 that provided ***no new information***. Ex. BB (Finjan's Supp Resp to Rog 1). Indeed, Finjan's "supplemental" response merely copied verbatim the same infringement contentions that were previously incorporated by reference into its original response, and which Magistrate Lloyd specifically found to be an insufficient response to the interrogatory. *See* Appendix A (comparison of Finjan's infringement contentions to Finjan's Supp. Resp. to Rog. 1). Thus, Finjan has failed to provide notice of its infringement theories in compliance with this District's Patent Local Rules, the Federal Rules of Civil Procedure, and, now, in violation of a court order. Proofpoint therefore brings the instant motion to clarify the scope of this case and determine what Finjan alleges is infringing.

## III.    LEGAL STANDARD

"The overriding principle of the Patent Local Rules is that they are designed to make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003). Patent L.R. 3-1 is intended "to require the party claiming infringement to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149 MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). "[A] plaintiff is required to include

in its [infringement contentions] all facts known to it, including those discovered in . . . [its] pre-filing inquiry." *Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. C03-05709JFHRL, 2004 WL 2600466, at *2 (N.D. Cal. Nov. 10, 2004).

Patent Local Rule 3-1(c) requires a "chart identifying *specifically where each* limitation of *each* asserted claim is found within **each** Accused Instrumentality." Patent L. R. 3-1(c). "[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)). In particular, the plaintiff must "disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-cv-05236-YGR, 2012 U.S. Dist. LEXIS 172160, at *9 (N.D. Cal. Nov. 30, 2012) (quoting *DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012)); *Shared Memory Graphics*, 812 F. Supp. 2d at 1025 (stating that patentee "must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction").

Where a plaintiff's contentions are facially inadequate in failing to disclose a plaintiff's theory of infringement, courts routinely strike the contentions. *See Theranos,* 2012 U.S. Dist. LEXIS 172160 at *22-23 (striking contentions where disclosures failed to meet Rule 11 obligations, and requiring plaintiff to file a motion for leave to amend in order to serve revised contentions). This is particularly true where plaintiff is provided repeated opportunities to amend its contentions, yet fails to do so. *Shared Memory Graphics LLC v. Apple Inc. ("Shared Memory Graphics II")*, No. C-10-02475 MMC (JSC), 2011 WL 3878388 at *8 (N.D. Cal. Sept. 2, 2011) (striking plaintiff's second amended infringement contentions without leave to amend); *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842 at *6-*8 (N.D. Cal. Jan. 26, 2015) (striking doctrine of equivalents, indirect infringement, and willful infringement contentions given plaintiff's "failure to take any action," despite defendants "having raised this defect in informal communications, a discovery letter to the Court, and a formally noticed motion").

DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS

## IV.    ARGUMENT

Finjan has an obligation to "identify specifically where *each* limitation of *each* asserted claim is found within *each* Accused Instrumentality." Patent L. R. 3-1(c). Contrary to this obligation and the Magistrate Judge's Discovery Order (Dkt. 115 at 6), Finjan's contentions fail to identify infringement on a limitation-by-limitation basis for even a *single* accused product. Finjan instead groups together the accused products into two categories, "Proofpoint Products" and "Armorize Products," without any showing that the products are similar for purposes of infringement. This improper grouping serves to obscure several deficiencies in Finjan's contentions: (1) Finjan uses broad, generic allegations that bear no link to accused Proofpoint products; (2) Finjan fails altogether to identify any alleged infringement by numerous accused products (3) Finjan fails to map claim limitations to specific features of the accused products, and fails altogether to identify where many claim limitations are found; and (4) Finjan repeatedly copies and pastes the same marketing materials as "support" for disparate claim limitations, without tying the evidence to each limitation at issue. Moreover, Finjan provides inadequate, boilerplate allegations of infringement under the doctrine of equivalents, indirect infringement, and willful infringement.

Finjan has been provided repeated opportunities to correct these deficiencies in its infringement contentions. Yet it has refused to do so, even in the face of the Magistrate Judge's order compelling adequate disclosure of Finjan's infringement theories. For these reasons, Finjan's contentions are insufficient and should be stricken without leave to amend.

### A.    Finjan Improperly Combines Its Contentions Against Multiple Products

Finjan's infringement contentions are fundamentally flawed because they improperly lump together disparate products as "Proofpoint Products" and "Armorize Products," without identifying Finjan's infringement theory for any single accused product. As a result, Defendants have no notice or understanding of whether Finjan is asserting infringement of the accused Proofpoint and Armorize products individually, or of a hypothetical system that incorporates all of the accused products in combination. Thus, Finjan's contentions impermissibly "fail[] to identify and differentiate between . . . products." *See Digital Reg. of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2013 WL 3361241 at *3 (N.D. Cal. July 3, 2013) ("*Digital Reg. II*") (rejecting contentions that identify the

"Accused System and Method" as "the Ubisoft Online Services Platform, Ubisoft Game Launcher, Ubisoft store (UbiShop), Uplay, and all associated computer hardware, software and digital content").

Finjan has demonstrated no basis for combining distinct products into a single chart. While products are ordinarily charted individually, "representative claim charts may be used in the appropriate case" where the infringement analysis is identical for a group of products; however, "Plaintiff has the burden of establishing that the products in the claim charts are representative of all of the accused products[.]" *Vigilos LLC v. Sling Media, Inc.*, No. C-11-04117 SBA (EDL), 2012 WL 9973147, at *5 (N.D. Cal. July 12, 2012). Here, Finjan does not assert, let alone prove, that any accused product is representative. Instead, Finjan simply provides piecemeal and unrelated snippets selected from Proofpoint's marketing materials to allege infringement by "Armorize Products" or "Proofpoint Products," even though no single accused instrumentality is shown to infringe. Indeed, Finjan merely pastes these repetitive snippets into charts without any explanation, and fails to show how the accused products are related to each other or to claim limitations. Finjan's amalgamated contentions fail to disclose Finjan's theory of infringement for any accused product.

**B.    Finjan's Contentions Fail To Even Address Several Accused Products**

Finjan's combined contentions hide the fact that Finjan fails entirely to address many of the accused products listed in its infringement contentions:

- **Proofpoint Protection Server**. The contentions mention Proofpoint Protection Server only in the claim preambles for the '822, '633 and '408 patents. Ex. A at 3, 22; Ex. B at 3, 18, 35, 47; Ex. E at 3, 50. No mention is found in either the '844 or '305 patents. Exs. C, D.

- **Proofpoint Messaging Security Gateway**. The contentions mention Proofpoint Messaging Security Gateway only in the claim preambles for the '822, '633, and '408 patents. Ex. A at 2, 3, 22; Ex. B at 2-3, 17-18, 34-35, 46-48; Ex. E at 2-3, 50. It is mentioned without analysis for the '305 patent. Ex. D at 1, 14, 18, 36, 46, 52. It is not mentioned for the '844 patent. Ex. C.

- **Proofpoint Enterprise Protection**. The contentions also fail to address how any aspect of the accused Proofpoint Enterprise Protection instrumentality meets most, if not all, of the limitations of the asserted '408 Patent. Ex. E.

- **Armorize Malvertising Protection**. The contentions also fail to address how any aspect of the accused Armorize Malvertising Protection instrumentality meets most if not all of the limitations of the asserted '086 patent. Ex. J.

- **Proofpoint Essentials**. The contentions neglect to discuss Proofpoint Essentials in any way across all asserted patents, except by repeatedly providing a URL webpage link without further explanation. Exs. A-E.

In providing these wholly deficient disclosures, Finjan has ignored its obligation to serve timely and compliant infringement contentions. Finjan should have presented sufficient and compliant infringement contentions for all accused products by the April 17, 2014 deadline established by the Court. Having not done so, Finjan should have then submitted sufficient and compliant infringement contentions in accordance with Magistrate Judge Lloyd's order to "supplement its response to Defendants' interrogatory [seeking Finjan's Infringement Contentions] by January 15, 2015." Dkt No. 115 at 6. Instead, Finjan brazenly re-submitted its prior infringement contentions without correcting any deficiencies, offering up the same wholly insufficient and ineffective amalgamation of products. As a result, Finjan effectively has provided no charts at all. Accordingly, Finjan's contentions against these products should be stricken without leave to amend, or with leave only upon a showing of good cause for Finjan's late amendment. *Theranos,* 2012 U.S. Dist. LEXIS 172160, at *22-23 (striking facially inadequate contentions); *Perfect Surgical Techniques, Inc. v. Olympus America, Inc.*, No. C 12-5967 PJH, Dkt. No. 108 (N.D. Cal. Oct. 28, 2013), Slip Op. at 2 (striking contentions as to all products that plaintiff repeatedly failed to evaluate); *see* Patent L.R. 3-6 (permitting amendment of infringement contentions only upon a *timely* showing of good cause).

### C. Finjan's Contentions Fail To Identify Any Theory For Numerous Limitations

Throughout its contentions, Finjan also fails to identify ***any*** theory of infringement for numerous limitations in each asserted claim of each patent-in-suit. Finjan initially asserted infringement of 8 patents and over 120 claims, and, in doing so, was required to "disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim[.]" *Theranos*, 2012 U.S. Dist. LEXIS 172160, at *9. Where a patentee fails to identify the structures or acts corresponding to even a single limitation, a patentee's infringement contentions are inadequate

and must be amended.  *See Digital Reg. of Texas, LLC v. Adobe Sys., Inc.*, No. CV 12-01971-CW (KAW), 2013 U.S. Dist. LEXIS 23447 at *13-14 (N.D. Cal. Feb. 20, 2013) (rejecting contentions that fail to clearly define "electronic content").

Here, Finjan's contentions fall well short of this standard; Finjan fails to identify structures or acts corresponding to numerous limitations within each of its asserted patents.  Finjan instead simply parrots the claim language, and states in a conclusory manner that the limitation is present, relying only on string citations to Proofpoint marketing materials and websites.  This approach has been repeatedly rejected.  *Digital Reg. II*,  2013 WL 3361241 at *3-*4 (infringement contentions that "parrot[] the claim language" and "incorporate[] screen shots in lieu of explanatory text" are insufficient because they leave defendants "to guess what particular system (or aspect of a particular system) [Plaintiff] is accusing of meeting each limitation."); *Bender v. Infineon*, 2010 WL 964197, at *2 (rejecting contentions that rely on generic cut-and-paste descriptions in support of each element).

Despite having access to Proofpoint's technical documents and source code for months, Finjan has persistently refused to supplement its infringement contentions.  Below is an exemplary list of claim limitations for which Finjan has failed to identify any cogent or discernible theory of infringement by the accused products:

| Patent | Asserted Claim Limitation |
|---|---|
| '822 | "mobile protection code" (Ex. A at 30-31; Ex. F at 50) |
| | "packaging engine"  (Ex. A at 30-31; Ex. F at 50) |
| | "detection indicator" (Ex. A at 34-35; Ex. F at 55) |
| '633 | "mobile protection code" (Ex. B at 26; Ex. G at 27) |
| | "protection agent engine" (Ex. B at 26; Ex. G at 27) |
| '844 | "Downloadable security profile" (Ex. C at 4) |
| | "inspector" (Ex. C at 4) |
| | "linking by the inspector the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients" (Ex. C at 10) |
| '305 | "a database of parser and analyzer rules" (Ex. D at 9-10, Ex. H at 4-5) |
| | "patterns of types of tokens" (Ex. D at 9-10, Ex. H at 4-5) |
| | "tokens comprising a punctuation type, an identifier type and a function type" (Ex. D at 9-10, Ex. H at 4-5) |

DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS

| Patent | Asserted Claim Limitation |
|--------|---------------------------|
| '408 | "parser rules and analyzer rules" (Ex. E at 10-11, Ex. I at 8) |
|  | "define certain patterns in terms of tokens" (Ex. E at 10-11, Ex. I at 8) |
|  | "lexical constructs for the specific programming language" (Ex. E at 10-11, Ex. I at 8) |
| '086 | "representation of the Downloadable security profile data" (Ex. J at 8) |
|  | "appending a representation of the Downloadable security profile data to the Downloadable" (Ex. J at 8) |
|  | "appended Downloadable" (Ex. J at 8) |
| '154 | "first function" (Ex. K at 1) |
|  | "second function" (Ex. K at 1) |
|  | "transmitter / receiver" (Ex. K at 6, 9) |
| '918 | "computer accounts" (Ex. L at 1) |
|  | "security context" (Ex. L at 1) |
|  | "an appropriate computer account from among the plurality of computer accounts" (Ex. L at 8-9) |

For each of these terms, and others, Finjan provides at most a boilerplate recitation that the limitation is found in the accused products, without identifying what specifically meets the limitation or why it believes the limitation is met. To give a specific example, claim 1 of the '918 patent requires scanning content to derive a profile of the content and, based on the derived profile, determining "an appropriate computer account from among the plurality of computer accounts" of a user's computer that should be used to execute the content. Finjan fails to identify where or how any accused product scans content to derive a profile or that any accused product then determines an appropriate computer account based on the derived profile. Instead, Finjan alleges in conclusory fashion that the accused products "determine an appropriate computer account to process CODE-A, such as a user policy," followed by a string citation to links on the Armorize website:

| | |
|---|---|
| 1c. determining, based on the derived profile of CODE-A, an appropriate computer account from among the plurality of computer accounts, under which CODE-A may be processed by the client computer; | Armorize Products meet the recited claim language because they determine, based on the derived profile of CODE-A, an appropriate computer account from among the plurality of computer accounts, under which CODE-A may be processed by the client computer.

By the way of example, and not limitation, Armorize Products derive a profile data for the potentially malicious executable code ("CODE-A") by scanning CODE-A. Using the profile, Armorize Products determine an appropriate computer account to process CODE-A, such as a user policy. For example, Armorize Products may create a profile of the CODE-A that includes a list of suspicious computer operations that may be attempted by the code. |

DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS

| This is demonstrated in Armorize's public documents and at http://www.armorize.com/codesecure/index.php, http://www.armorize.com/index.php?link_id=product, http://www.armorize.com/index.php?link_id=hackalert, and http://www.armorize.com/pdfs/resources/smartwaf.pdf. |
| --- |

Ex. L at 8-9. Here, Finjan fails to identify where or what it alleges are the "plurality of computer accounts" – are they on a single computer, multiple computers, user computers, or Proofpoint's computers? Finjan's contentions also completely fail to identify how the accused products allegedly "determin[e] … an appropriate computer account" from among these accounts. Finjan has had access to Proofpoint's source code and technical documents for months, yet it is no closer to providing a discernible theory of infringement. Finjan instead relies on a series of repetitive citations to public websites and marketing materials, without explanation of how those materials show that any accused product meets the claim limitations. As a result, Proofpoint is left in the dark as to what stands accused of meeting any of these limitations.

Finjan repeats this pattern of parroting claim language and then failing to identify specific claim limitations for each of the exemplary terms listed above. At times, Finjan elaborates slightly on its introduction to products, yet these introductions still fail to tie features of any particular product to the actual limitations. For example, the '154 patent requires both a "first function" and a "second function," but Finjan offers no explanation of what these functions are:

DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS

| 1a. A system for protecting a computer from dynamically generated malicious content, comprising: a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe; | Armorize Products meet the recited claim language because they provide a system with a content processor for processing content received over a network, the content including a call to a first function, and the call including an input, and for invoking a second function with the input, only if a security computer indicates that such invocation is safe.<br><br>By the way of example, and not limitation, Armorize Products meet the recited claim language because Armorize Products dynamically analyzes exploit kits, exploit code, obfuscated scripts within web content, to prevent delivery of a payload or dropper from another server to a client computer. Armorize Products use a cloud system to analyze the dynamic threats. For example, HackAlert uses a behavior-based scanning engine to send downloadable content to run in an isolated sandbox hosted at the Armorize datacenter to be analyzed for behavioral characteristics that indicate malware injections. If there is an active drive-by download, the download is analyzed and the behavior and remediation guidance is reported back to the end user.<br><br>This is demonstrated in Armorize's public documents and at http://www.armorize.com/codesecure/index.php, http://www.armorize.com/index.php?link_id=product, http://www.armorize.com/index.php?link_id=hackalert, and http://www.armorize.com/pdfs/resources/smartwaf.pdf. |
| --- | --- |

Ex. K at 1. Instead of providing an actual analysis of the limitations of the '154 patent, Finjan simply discusses at a high level various features allegedly present in the "Armorize Products" and/or HackAlert. While Finjan makes various allegations about what these products can do, it never identifies what the alleged "first function" or "second function" are in the accused products, or the "input" that is common to both functions. Instead, Finjan again makes general allegations followed by citations to websites. The same pattern holds true for the twenty exemplary terms listed in the table above, and additional terms throughout Finjan's contentions. The Court should strike Finjan's contentions, as they fail to "disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim[.]" *Theranos*, 2012 U.S. Dist. LEXIS 172160, at *9, 22-23.

### D. Finjan Relies On Boilerplate Examples Not Tied To The Claim Limitations

After Finjan parrots the claim language of each claim and provides a brief summary, Finjan goes on to provide "examples" that allegedly demonstrate how the limitations are met. Yet Finjan repeats these examples *ad nauseam* throughout its contentions, without any explanation of how they relate to the actual claim limitations at issue. These boilerplate citations, alone, fail to provide the requisite notice of what in each limitation is allegedly infringing. *Digital Reg. II*, 2013 WL 3361241

at *4 (N.D. Cal. July 3, 2013) (infringement contentions that "incorporate[] screen shots in lieu of explanatory text" are insufficient because they leave defendants "to guess what particular system (or aspect of a particular system) [Plaintiff] is accusing of meeting each limitation").  Tellingly, Finjan merely copies and pastes the same identical citations and "analysis" across multiple disparate patents, claims and limitations, undercutting any claim that Finjan conducted a limitation-by-limitation analysis.  Oblivious to its assertion of 8 patents and over 120 claims, Finjan's blanket "infringement analysis" remains nearly identical from claim to claim:

"**Armorize Products.**"  Finjan asserts seven distinct patents against the "Armorize Products," yet in support of its contentions, for example, Finjan repeatedly cites to the same blog post described as showing Armorize Products "decoding malvertising and drive-by download exploits on msn.com."



*See, e.g.,* Ex. F at 2-3, 5, 9-10, 14-15, 21, 24, 28-29, 33-34, 38-39, 44-45, 46, 50-51, 55-56, 62, 65, 69-70, 75, 79, 82, 87, 92-93, 96, 101; Ex. G at 2-3, 5, 9-10, 14-15, 16-17, 19, 21, 23, 27-28, 32-33, 34-35, 36-37, 39-40, 43, 47-48, 54, 58, 60-61; Ex. H at 3, 5, 12-13, 16-17, 20-21, 28-29, 35-36, 39, 45-46, 53-54; Ex. I at 3-4, 6, 9, 15, 19, 23, 27, 43-44, 50, 56-57, 61-62, 67, 75; Ex. J at 2-3, 17, 21, 22-23, 24-25, 40, 44, 48-49, 55-56, 78-79, 99-100, 106-107; Ex. K at 1-2, 7, 9-10, 12-13, 15, 17-18, 23, 25, 28-29, 30-31, 33-34, 39, 41, 44-45, 46-47, 49, 51-52, 57, 59, 62-63, 64-65; Ex. L at 2-3, 4, 10, 13, 18, 25, 27, 28, 30, 31-32, 35, 36-37, 42, 45, 50, 57, 59, 60, 62, 63-64, 65, 66-67, 72, 75, 80, 86, 92, 99, 105 (citing the same screenshot and/or URL with the same or substantially similar explanatory text).

This repetitive disclosure suffers from two major deficiencies. The first is that Finjan fails to tie its "analysis" to any particular claim limitation. What does "decoding malvertising and drive-by download exploits" have to do with, for instance, determining "an appropriate computer account from among the plurality of computer accounts" in the '918 patent? Or indicating the presence of a "first function" and "second function" in the '154 patent? Finjan does not explain. Precisely because such boilerplate contentions fail to provide notice, courts in this District have consistently recognized that the practice of "parrot[ing] the claim language," and "repeat[ing] the same generic descriptions and cut[ting]-and-past[ing] them beside each element of every claim" is impermissible. *Bender v. Infineon*, 2010 WL 964197, at *2. The second problem with Finjan's "analysis" is Finjan's failure to tie its allegations to any accused product. Which Armorize products actually "decod[e] malvertising and drive-by download exploits on msn.com" – is it the accused HackAlert, CodeSecure, SafeImpressions, Malvertising, or SmartWAF? Again, Finjan does not explain. Finjan exploits the ambiguity in accusing "Armorize Products" rather than citing evidence tied to any specific accused product.

**"Proofpoint Products."** Finjan's contentions against Proofpoint Products are similarly boilerplate, repetitive, and bereft of any analysis. For instance, Finjan uses the same evidence about Proofpoint's Dynamic Malware Analysis Service to support its contentions across all of its patents and claim limitations:



Ex. D at 11; *see* Ex. A at 4, 8, 12, 15, 23, 27, 31-32, 35; Ex. B at 4, 8, 12, 19, 23, 27, 36, 40, 45, 50; Ex. C at 4, 11, 15, 19, 23, 34, 47, 65-66, 70, 78, 84, 89, 94, 99, 105, 111, 116, 127, 133-34, 138, 142, 148, 158, 163, 170, 176, 182, 187, 192, 197, 204; Ex. D at 3, 7, 11, 15, 20, 25, 29, 43, 49, 54, 60, 63; Ex. E at 5, 8, 12, 17, 21, 25, 30, 39, 41, 44, 47, 53, 57, 62, 67, 73, 77, 82, 86, 94. Finjan's assertion that looking for "suspicious behavior, obfuscated scripts" constitutes infringement—a description that applies to many computer security products—falls well short "disclos[ing] what in each accused instrumentality it contends practices each and every limitation of each asserted claim[.]" *Theranos*, 2012 U.S. Dist. LEXIS 172160, at *9. These boilerplate contentions again fail to provide actual notice of Finjan's theory of infringement or tie infringement to any particular accused product, as the "Dynamic Malware Analysis Service" is not itself an accused product. How does an accused product use the "Dynamic Malware Analysis Service," and how does that result in infringement? Again, Finjan gives no explanation. Nothing in this description shows where the limitations may be found in "*each* Accused Instrumentality." Patent L.R. 3-1.

Even where Finjan identifies evidence related to a particular accused product, it fails to identify claim limitations with particularity. Instead, Finjan again repeats the same boilerplate explanations for very different claim limitations. For example, Finjan repeatedly asserts across multiple limitations and patents that Proofpoint Enterprise Protection infringes simply because it "monitors emails in real-time for threats." No additional explanation is provided.

| Patent and Limitation | Proofpoint Enterprise Protection |
|---|---|
| '633, claim 8d:<br>a protection agent engine communicatively coupled to the content inspection engine for causing mobile protection code ("MPC") to be communicated by the computer to at least one information-destination of the downloadable-information, if the downloadable-information is determined to include executable code. | In another example, Proofpoint Enterprise Protection monitors emails in real-time for threats, including from executable code, and prevents the malicious file from reaching the client computer.<br>http://www.proofpoint.com/products/protection/index.php;<br>http://essentials.proofpoint.com/tour/welcome/.<br><br>Ex. B at 29. |
| '844, claim 1c:<br>linking by the inspector the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients. | In another example, Proofpoint Enterprise Protection monitors emails in real-time for threats. http://www.proofpoint.com/products/protection/index.php;<br>http://essentials.proofpoint.com/tour/welcome/.<br><br>Ex. C at 12. |

DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS

| '305, claim 1c:<br>a database of parser and analyzer rules corresponding to computer exploits, stored within the computer, computer exploits being portions of program code that are malicious, wherein the parser and analyzer rules describe computer exploits as patterns of types of tokens, tokens being program code constructs, and types of tokens comprising a punctuation type, an identifier type and a function type; | In another example, Proofpoint Enterprise Protection receives web content and monitors emails in real-time for threats.<br>http://www.proofpoint.com/products/protection/index.php;<br>http://essentials.proofpoint.com/tour/welcome/.<br><br>Ex. D at 12. |
|---|---|
| '408, all claims | [No Disclosure] |

These conclusory allegations and unexplained URL weblinks are insufficient under Patent Local Rule 3-1, because they fail to explain where any of the limitations may be found in the accused products. The defects identified above are merely exemplary of Finjan's systematic and complete failure to comply with the standards set forth under the Patent Local Rules through its infringement contentions. While Finjan boasts of providing over 1050 pages of infringement contentions, these contentions consist of repetitive, boilerplate statements similar to the numerous examples provided herein. Finjan is not even close to "identifying specifically where *each* limitation of *each* asserted claim is found within *each* Accused Instrumentality." Patent L.R. 3-1. In his order, Magistrate Lloyd explained at length the level of specificity expected under the Patent Local Rules, and ordered that Finjan supplement its interrogatory responses to "disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim, and to provide a comparison of each accused product to the asserted patents on a claim by claim, element by element basis." Dkt. No. 115 at 6 (internal quotation marks omitted). Instead, Finjan has flouted the Court's order by copying and pasting the same contentions into its interrogatory response. As a result, Finjan's contentions remain wholly inadequate.

The deficiencies in Finjan's contentions are so pervasive that the appropriate remedy is to strike the contentions in their entirety. "The party [claiming infringement] is required to include in its infringement contentions all facts known to it, including those discovered in its [Rule 11] pre-filing inquiry." *Blue Spike*, 2015 WL 335842, at *3. Where a party provides contentions that fail to suggest even a Rule 11 basis for asserting infringement, courts have stricken these contentions in their

entirety.  *Theranos*, 2012 U.S. Dist. LEXIS 172160, at *17-23.  Here, Finjan's contentions are so devoid of analysis and infused with repetitive boilerplate that they fail to meet the Rule 11 standard. By comparison, in *Network Caching Tech., LLC v. Novell, Inc.*, No.  C-01-2079-VRW, 2002 U.S. Dist. LEXIS 26098 (N.D. Cal. Aug. 13, 2002), the Court found that contentions fail to meet the standard of Rule 11 where they "simply mimic[] the language of claim 1 of the [asserted] patent" and then, in support of the contention, "cites [Defendant's] market literature."  *Id.* at *17-18.  The Court determined that "[Plaintiff] provides no link between the quoted passages and the infringement contention that simply mimics the language of the claim[,]" and concluded, "[t]his is plainly insufficient."  *Id.* at *18.  Finjan's contentions are no different.  There is no indication that Finjan conducted the "reasonable inquiry" required by Rule 11 before it asserted infringement of 8 patents and over 120 claims against 12 accused products.  As such, Finjan plainly fails to provide the required notice of its infringement theories under Patent L.R. 3-1, and Finjan's contentions should be stricken.

### E.     Finjan's Contentions Fail To Identify Additional Unnamed Products

In addition to identifying twelve products by name, Finjan also purports to assert infringement against other "products and services that utilize the Zero-Hour Threat Detection and Malware Analysis Service."  Exs. A-E.  "The Patent Local Rules require[] *specific* identification of particular accused products.  They [do] not tolerate broad categorical identifications . . . nor [do] they permit the use of mere representative examples."  *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) (emphasis in original).  "[I]dentifying products by functionality is not sufficient."  *Vigilos*, 2012 WL 9973147, at *4.  Accordingly, Finjan's attempt to accuse all products using Zero-Hour Threat Detection and Dynamic Malware Analysis Service is improper.  This portion of Finjan's contentions should be stricken without leave to amend.  *Perfect Surgical Techniques,* Dkt. No. 108, slip op. at 2 (striking with prejudice infringement contentions against products that plaintiff wholly failed to evaluate).

### F.     Finjan's Contentions Fail To Identify Infringement Under the Doctrine of Equivalents, Indirect Infringement, or Willful Infringement

Finjan's contentions are also deficient because they fail to describe in any way Finjan's bases for asserting the doctrine of equivalents, indirect infringement, or willful infringement.

**Doctrine of Equivalents.**  An assertion of infringement under the doctrine of equivalents cannot be made "without providing specific analysis, on an element-by-element basis." *CSR Tech. Inc. v. Freescale Semiconductor*, No. C-12-02619 RS (JSC), 2013 WL 503077 at *8 (N.D. Cal. Feb. 8, 2013).  Here, Finjan has failed to offer an element-by-element analysis under any sort of theory, let alone under the doctrine of equivalents.  Finjan's contentions merely states a generic reservation of the doctrine of equivalents that purports to extend to all limitations.  Ex. M at 28-29.  Finjan's claim charts fare no better, as Finjan merely repeats the same generic phrase for every limitation: "To the extent that Proofpoint contends that it does not literally infringe this claim, Proofpoint infringes under the doctrine of equivalents."  Exs. A-L, *passim*.

Courts in this District have consistently held that such general assertions of the doctrine of equivalents are not permissible.  *See, e.g., Blue Spike*, 2015 WL 335842, at *6.  "The doctrine of equivalents exists to prevent a fraud on the patent and not to give a patentee a second shot at proving infringement if it is not literally present.  [Plaintiff] cannot merely add boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory." *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-cv-06635-LHK-PSG, 2012 WL 5389775, at *6 (N.D. Cal. Nov. 2, 2012) (internal quotation marks omitted).  Despite numerous opportunities, Finjan has refused to provide its doctrine of equivalents theories.  Accordingly, references to the doctrine of equivalents should be stricken from Finjan's contentions.  *See Blue Spike*, 2015 WL 335842, at *6.

**Indirect Infringement.**  Similarly, an assertion of indirect infringement requires specificity.  Finjan must disclose, "[f]or each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement."  Patent L.R. 3-1(d).  "It is well established in this District that boilerplate language asserting indirect infringement does not satisfy Patent Local Rule 3-1(d). . . . Nor are 'generic allegations' that recite the elements of or general theory behind indirect infringement sufficient under the local rule."  *Blue Spike*, 2015 WL 335842, at *7(citing *France Telecom, S.A. v. Marvell Semiconductor, Inc., No. 12-cv-04967 WHA (NC), 2013 WL 1878912, at *5 (N.D. Cal. May 3, 2013)*; *Creagri*, 2012 WL 5389775, at *5.

Finjan's contentions baldly assert that Proofpoint has induced infringement of certain claims (Ex. M at 12-28), but fail to identify who the alleged direct infringer is, what acts they perform that constitute direct infringement, or even that there is a single party that performs every single one of allegedly infringing acts. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2118 (2014) (inducement requires, as a predicate, proof of direct infringement by a single actor). Without a showing of direct infringement, there can be no indirect infringement. *Id.* The burden is on Finjan to articulate how a third party performs each element necessary for direct infringement, and Finjan has failed to meet that burden.

Finjan's allegations as to the remaining elements of induced infringement are similarly boilerplate. Finjan points broadly to actions like "advising third parties," "providing a mechanism," "requiring third parties to agree to their terms and conditions," "advertising and promoting," and "distributing guidelines and instructions" as evidence of inducement. Finjan fails, however, to identify any specific instances where Proofpoint advised, advertised, or distributed guidelines for actually performing infringing steps. Finjan does not offer a single advertisement, instruction, or a "term and condition" that would actually induce a third party to infringe. Rule 3-1(d) requires more than mere generic allegations of advertising. *France Telecom,* 2013 WL 1878912 at *5; *Creagri*, 2012 WL 5389775 at *5. Finjan has an obligation to "identify what advertisements and instructions lead to what infringing behavior." *Id.* at *5. Finally, Finjan's contentions fail to allege or identify any awareness of the asserted patents by Proofpoint such that it had the requisite intent to induce infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (en banc) (requiring intent element for showing of inducement).

Finjan's indirect infringement contentions are devoid of specific assertions, and are therefore insufficient and should be stricken with prejudice. *Blue Spike*, 2015 WL 335842 at *7.

**Willful Infringement.** Finally, Finjan also has an obligation to disclose the basis for alleging willful infringement. Patent L.R. 3-1(h). Finjan, however, states merely that "Defendants have willfully infringed … at least as of the time they learned of this action for infringement, which was filed on December 16, 2013." Ex. M at 31. Thus on its face, Finjan's contentions fail to allege that Proofpoint had knowledge of any of the asserted patents prior to the litigation. This alone is grounds

to strike Finjan's willful infringement claim. *Blue Spike*, 2015 WL 335842 at *8 ("In this District, willful infringement requires a patentee to 'make out the barest factual assertion of knowledge of an issue patent [*but*] [t]he allegations must assert that the accused infringer had knowledge of the patent *before* the patent litigation began.") (citations omitted); *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031, at *3 (N.D. Cal. Mar. 22, 2012); *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (allegations of willful infringement "must necessarily be grounded exclusively in the accused infringer's pre-filing conduct"). The remaining language in Finjan's contentions are pure boilerplate and entirely devoid of any evidence of willfulness, stating that "on information and belief" Proofpoint has proceeded with infringing conduct despite knowing the patents to be valid and infringed. A "bare recitation of the required elements for willful infringement is insufficient" as is a "mere allegation of actual knowledge, without more[.]'" *Blue Spike*, 2015 WL 335842 at *8 (citations omitted). Because Finjan's willful infringement allegations are boilerplate and grounded entirely in post-litigation conduct, they should be stricken with prejudice.

### G. Finjan's Contentions Should Be Stricken and the Case Stayed Until Finjan Serves Compliant Infringement Contentions

The proper remedy for the deficiencies in Finjan's infringement contentions is to strike them in their entirety and to stay the case until Finjan serves amended infringement contentions in compliance with the Patent Local Rules. This relief is warranted because Finjan's failure to provide sufficient contentions otherwise threatens to deprive Defendants of due process and of the ability to properly defend themselves as the case proceeds through claim construction, discovery, and expert discovery.

In similar cases where a patentee's infringement contentions fail to present even a Rule 11 basis for infringement, courts have routinely stricken the plaintiff's contentions and stayed discovery until proper infringement contentions were served. *See Network Caching Tech.*, 2002 U.S. Dist. LEXIS 26098 at *20-*21; *Theranos,* 2012 U.S. Dist. LEXIS 172160 at *22-23. In *Theranos*, the court struck plaintiff's contentions for failing to demonstrate even a Rule 11 basis for asserting infringement, because the assertions were based on either repeated "examples" of infringing uses, or based "on information and belief that something exists or occurs." *Id.* at *16-*20. Yet here, Finjan

repeatedly fails to even state that certain limitations are present "on information and belief" – instead, Finjan avoids discussing them at all. *Infra* at section IV. C. Under these circumstances, Finjan's contentions should be stricken. *Theranos,* 2012 U.S. Dist. LEXIS 172160 at *22-23 (striking contentions and requiring plaintiff to seek leave to amend to proceed with its infringement claims).

Moreover, Finjan's egregious conduct in this litigation warrants striking Finjan's contentions with prejudice. Where a party, in bad faith, repeatedly refuses to amend its infringement contentions despite the opportunity to do so, such sanctions become appropriate. *Shared Memory Graphics II*, 2011 WL 3878388 at *8 (striking plaintiff's second amended infringement contentions without leave to amend, after plaintiff "steadfastly maintained" it did not need to amend contentions); *Blue Spike,* 2015 WL 335842 at *6-*8 (striking doctrine of equivalents, indirect infringement and willful infringement contentions given plaintiff's "failure to take any action" despite defendants "having raised this defect in informal communications, a discovery letter to the Court, and a formally noticed motion"). Here, Proofpoint has repeatedly identified the deficiencies in Finjan's contentions for months. Proofpoint also immediately provided technical documents and source code by which Finjan could amend its contentions. Yet Finjan consistently denied the existence of any deficiencies in its contentions. Instead, Finjan has proceeded to pursue this case in bad faith, causing severe prejudice to Proofpoint.

Proofpoint has produced and continues to produce costly discovery on products for which Finjan has failed to provide a credible, Rule 11 basis for infringement. Proofpoint has also been required to provide invalidity contentions and, indeed, narrow those contentions based on a preliminary election of prior art (*see* Dkt. No. 98 at 3) without fair notice of Finjan's infringement theories or its position on the scope of the asserted patents. To the extent Finjan ultimately demonstrates good cause to amend its infringement contentions, Proofpoint respectfully requests leave to serve amended invalidity contentions 45 days after Finjan serves its amendments, consistent with the timing of Patent L.R. 3-3.

Finjan's refusal to articulate its infringement theories has also made it difficult for Proofpoint to select the most important terms that can be resolved in the forthcoming claim construction proceedings. The purpose of the infringement contentions is to "hasten resolution on the merits by

DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS

providing structure to discovery and enabl[ing] the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Shared Memory Graphics*, 812 F. Supp. 2d at 1025 (citations and internal quotation marks omitted). Finjan's bad faith conduct has undermined each of these goals.

Faced with Finjan's unreasonable conduct, Proofpoint sought relief from the Magistrate Judge. Magistrate Lloyd recognized the deficiencies in Finjan's infringement contentions by ordering Finjan to lay out its infringement theories in response to Proofpoint's interrogatories, rather than merely incorporating by reference the same deficient infringement contentions that are the subject of this motion. Dkt No. 115 at 6. Finjan either could or would not do so, instead copying and pasting the content of its infringement contentions into the body of its interrogatory response. *See* Appendix A. Finjan's willful defiance of the Magistrate Judge's Order has forced Proofpoint to file this motion.[3] Because Finjan has blatantly and repeatedly disregarded its obligations to provide adequate infringement contentions, the Court should strike these contentions with prejudice.

## V.       CONCLUSION

For the foregoing reasons, Proofpoint respectfully requests that the Court strike Finjan's infringement contentions in their entirety and stay all events in this matter until Finjan obtains leave of Court to serve infringement contentions complying with the Patent Local Rules.

DATED: February 5, 2015         Respectfully submitted,
                                QUINN EMANUEL URQUHART &
                                SULLIVAN, LLP

                                By   */s/ Jennifer A. Kash*
                                    Jennifer A. Kash
                                    Attorneys for Defendants PROOFPOINT, INC.
                                    and ARMORIZE TECHNOLOGIES, INC.

---

[3] Proofpoint also reserves the right to seek enforcement of the Magistrate's Order, including its fees for brining any such motion and any appropriate sanctions in view of Finjan's clear defiance of that Order.

DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS