UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., | Case No.  13-cv-05808-HSG |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE INFRINGEMENT CONTENTIONS** |
| PROOFPOINT, INC., et al., | |
| Defendants. | Re: Dkt. No. 118 |

This action arises from eight patents granted to Finjan, Inc., all of which involve software technologies concerning behavior-based internet security (*i.e.*, the asserted patents "protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet").  *See* Dkt. No. 104 at ¶ 7.  Finjan filed the instant lawsuit on December 16, 2013, alleging that numerous products sold by Proofpoint, Inc. and Armorize Technologies, Inc. (the "Defendants") infringe these patents.  *See* Dkt. No. 1.

Finjan served its infringement contentions on April 17, 2014.  Defendants moved to strike those contentions as deficient under this District's Patent Local Rules.  *See* Dkt. No. 118. Defendants seek an order striking Finjan's infringement contentions in their entirety and with prejudice, and request the Court stay the case until Finjan demonstrates good cause to amend.  *See id.*  For its part, Finjan asserts that its infringement contentions meet all requirements of the Patent Local Rules but, even if they do not, it should be permitted to amend its contentions without a stay and without prejudice.  *See* Dkt. No. 121.

The Court has read and considered the arguments and evidence offered by the parties, both in their written submissions to the Court and at the hearing held on March 19, 2015.  For the reasons explained below, this Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to strike Finjan's infringement contentions.

## I.     LEGAL STANDARD

The requirements of Patent Local Rule 3–1 provide a "streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in its absence." *FusionArc, Inc. v. Solidus Networks, Inc.*, 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *Network Caching Tech., LLC v. Novell Inc.*, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002)).  The Rule "require[s] parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006).  This early disclosure "provide[s] structure to discovery and enable[s] the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Creagri, Inc. v. Pinnaclife Inc., LLC*, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012) (citation omitted).  The Rule reads, in pertinent part:

> [A] party claiming patent infringement shall serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions[ ]' . . . [which] shall contain the following information:
>
> (a)     Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;
>
> (b)     Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c)     A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.
>
> (d)     For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be

United States District Court
Northern District of California

described.

(e)     Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

. . .

(h)     If a party claiming patent infringement alleges willful infringement, the basis for such allegation.

Pat. L.R. 3-1.

For infringement contentions to satisfy the Local Rule, "plaintiff [must] compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products . . . reverse engineering or its equivalent are required." *Network Caching*, 2002 WL 32126128 at *5; *InterTrust Tech. Corp. v. Microsoft Corp.*, 2003 WL 23120174, at *3 (N.D. Cal. Dec. 1, 2003) ("The purpose of Patent Local Rule 3–1, however, is in fact to be nit picky, to require a plaintiff to crystalize its theory of the case and patent claims."); *Bender v. Maxim Integrated Prods.*, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) ("[P]laintiff bears the burden of providing infringement contentions that specify the location of every claim element within the accused products, so that the Court can make a principled decision on whether discovery will proceed.").  The party claiming infringement is required to include in its infringement contentions "all facts known to it, including those discovered in [its] pre-filing inquiry." *Renesas Tech. Corp. v. Nanya Tech. Corp.*, 2004 WL 2600466, at *2 (N.D. Cal. Nov. 10, 2004).

"[A]ll courts agree that the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant [as to] why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F.Supp.2d 1022, 1025 (N.D. Cal. 2010) (citation omitted) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).  While the patent rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case, . . . a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to

3

it." *DCG Sys. v. Checkpoint Techs., LLC*, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012); *see also Shared Memory Graphics*, 812 F. Supp. 2d at 1025 (stating that patent holder "must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction").

## II.    ANALYSIS

Defendants contend that Finjan's infringement contentions do not comply with this District's Patent Local Rules because they: (1) improperly combine multiple products into single claims charts; (2) do not address all accused products; (3) fail to provide a theory of infringement for several allegedly infringing products; (4) fail to sufficiently identify how each accused product infringes each claim element in each asserted patent; and (5) fail to sufficiently assert the doctrine of equivalents, willful infringement, and indirect infringement.  A careful review of Finjan's infringement contentions reveals that they suffer from many of the deficiencies asserted by the Defendants.

### A.    Finjan's Combination Claim Charts

Under Patent Local Rule 3-1(c), the party claiming infringement must serve a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function."

Finjan attempted to satisfy this obligation by dividing the Defendants' products into two groups—"Proofpoint Products" and "Armorize Products"— and then creating one claim chart per group per asserted patent.  *See* Opposition at 3.  Finjan defines "Proofpoint Products" as "Proofpoint products and services that utilize the Zero-Hour Threat Detection and Malware Analysis Service including but not limited to Proofpoint Enterprise Protection, Proofpoint's Malvertising Protection, Proofpoint's SafeImpressions, Proofpoint's Targeted Attack Protection, Proofpoint Essentials (including the packages of Beginner, Business, and Professional), Proofpoint Protection Server, and Proofpoint Messaging Security Gateway."  *See, e.g.,* Dkt. No. 118-3 at 1. "Armorize Products" is defined to mean: HackAlert Anti-Malware, CodeSecure Automated Static

United States District Court
Northern District of California

1   Source Code Analysis, SmartWAF Web Application Firewall, SafeImpressions and Malvertising

2   Protection.  *See, e.g.*, Dkt. No. 118-8 at 1.

3   As an initial matter, a separate claim chart for each accused product is not mandatory under

4   Patent Local Rule 3-1(c).  Combination claim charts (whereby the party asserting infringement

5   describes how multiple products infringe the asserted patent(s) in a single chart) can provide the

6   required specificity under Patent Local Rule 3-1(c), *if* each accused product allegedly infringes in

7   the same way.  *See, e.g.,Creargi*, 2012 WL 5389775 at *3 (finding a single claim chart for

8   multiple accused products sufficient where the plaintiff specified that all the identified products

9   contained the same chemical compound, which plaintiff asserted was the infringing element of

10  each of the identified products); *see also Network Prot. Sciences, LLC v. Fortinet, Inc*., 2013 WL

11  5402089, at *3 (N.D. Cal. Sept. 26, 2013) ("[W]hen supported by adequate analysis showing that

12  the accused products share the same critical characteristics, representative infringement

13  contentions may suffice.").

14  The issue before Court is whether the two categories of products identified by Finjan's

15  combined claim charts meet this standard.  According to the Defendants, Finjan has provided no

16  showing that the accused products are so functionally identical that they infringe on each claim of

17  each of the eight patents in the exact same way.  Defendants therefore argue that Finjan must

18  provide separate charts detailing its theory of infringement as to each individual product.  Finjan

19  responds with two counter-arguments.  As to its Proofpoint Products chart, Finjan asserts that

20  combining seven products into a single chart is appropriate because "[e]ach of the 'Proofpoint

21  Products' utilize the Zero-Hour Threat Detection and Malware Analysis Service solutions, which

22  Finjan contends is the infringing aspect of the 'Proofpoint Products.'"  Opp. at 11.  Second, for the

23  Armorize Products, Finjan claims that it "separately mapped each individual product within the

24  group, so Defendants' arguments do not even apply to these products."  *Id*.  The Court addresses

25  each counterargument in turn.

26  **1.      Proofpoint Products**

27  On its face, Finjan's Proofpoint Products grouping appears to be permissible, in that it

28  identifies common infringing components in the grouped products.  Like the plaintiff in *Creargi*,

United States District Court
Northern District of California

5

1    who represented that the same infringing chemical compound existed in each accused product,

2    Finjan has represented that all seven Proofpoint Products utilize the allegedly infringing Zero-

3    Hour Threat Detection or Malware Analysis Service solutions.  Dkt. No. 121 at 4.  However, this

4    case differs from *Creargi* in that Finjan's Proofpoint Products category groups together products

5    that allegedly use one of *two* infringing solutions, and there is no representation that those two

6    solutions infringe the asserted patents in the exact same way.  Accordingly, in order to comply

7    with Patent Local Rule 3-1(c), Finjan must, at a minimum, break the Proofpoint Products claim

8    charts into two: one for those products that allegedly contain Zero-Hour Threat Detection, and

9    another for those that allegedly contain Malware Analysis Service.  *See* Hr'g Tr. at 7:20-21 ("We

10   can specify that.  That's not a problem.  We can separate out those charts.").

### 2.    Armorize Products

12        The Court also agrees with Defendants that combining the five Armorize Products into a

13   single claim chart for each asserted patent is improper under Patent Local Rule 3-1(c).  Unlike the

14   Proofpoint Products, Finjan does not assert that the Armorize Products all contain a common

15   infringing solution (or solutions) and thus infringe each patent in the exact same way.  Instead,

16   Finjan asserts that, despite producing only one claim chart per asserted patent, Finjan "actually

17   [has] a separate paragraph for each product within that single claim chart . . . . So we really did go

18   element-by-element and address each of those individual products."  Hr'g Tr. at 8:2-13.  In

19   essence, Finjan claims that it has already disclosed its specific theories of infringement concerning

20   the five distinct Armorize Products, and that the only difference between its single combined

21   claim chart and the separate charts demanded by Defendants is a matter of formatting.

22        As an initial matter, the Court questions whether lumping information about five products

23   into a single claim chart (absent a common infringing element) could ever satisfy the language or

24   purpose of Patent Local Rule 3-1(c).  The object of the Rule is to delineate and crystalize theories

25   of infringement as to each accused product, which is not well-served by creating charts that

26   address multiple distinct products at once.  *InterTrust*, 2003 WL 23120174 at *3 ("The purpose of

27   Patent Local Rule 3–1, however, is in fact to be nit picky, to require a plaintiff to crystalize its

28   theory of the case and patent claims.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Regardless, even assuming the idea could be sound in theory, Finjan faltered in its

2   execution.  Contrary to Finjan's representation at the March 19, 2015 hearing, its combination

3   charts do not "have a separate paragraph for each [of the Armorize Products]." Hr'g Tr. at 8:2-3.

4   For example, while a product called "SafeImpressions" is listed as one of the five products that

5   constitute the Armorize Products group, Finjan's contentions do not discuss the SafeImpressions

6   product in the portion of its chart devoted to Claim 1a of the '154 Patent.  *See* Dkt. No. 118-13 at

7   1-6.  The only time the word "SafeImpression" appears in those six pages is in a website link on

8   page two, which is not accompanied by any explanatory discussion.  *Id*. at 2.  The same is true of

9   Claims 1b, 4a, 6a, and 10a of the '154 Patent.  *See id*. at *passim*.  This is facially insufficient under

10   Patent Local Rule 3-1.  *See, e.g., Digital Reg of Texas, LLC v. Adobe Systems Inc.*, 2013 WL

11   3361241, *4 (N.D. Cal. Jul. 3, 2013) (infringement contentions that "incorporate[] screen shots in

12   lieu of explanatory text" are improper).  Similarly, the words "Malvertising Protection" (another

13   of the five named Armorize Products) do not appear in even one cell of the 66-page claims chart

14   addressing how the Armorize Products allegedly infringe the '154 Patent.  *See* Dkt. No. 118-13.

15    Given these deficiencies, Finjan's combined Armorize Products claim charts do not

16   provide the level of specificity required by this District's Patent Local Rules.  In order to do so,

17   Finjan must create separate claim charts for each Armorize Product and disclose exactly which

18   features of each product allegedly infringe each claim element of each asserted patent.

19    **B.    Finjan's Claim Charts Do Not Address All Accused Products**

20    Defendants have identified five products that, while included in either Finjan's definition

21   of Proofpoint Products or Armorize Products, do not appear in Finjan's claim charts for many of

22   the asserted patents: Proofpoint Protection Server, Proofpoint Messaging Security Gateway,

23   Proofpoint Enterprise Protection, Armorize Malvertizing Protection and Proofpoint Essentials.

24   *See* Memorandum at 9-10.  Finjan admits that its infringement contentions do not expressly

25   discuss these products.  Instead, it attempts to justify its failure by arguing: (1) that Proofpoint

26   Protection Server, Proofpoint Messaging Security Gateway, and Proofpoint Enterprise Protection

27   are all different names for the same product; (2) that Proofpoint Enterprise Protection and

28   Proofpoint Essentials are "similar;" and (3) that Finjan provided notice to Defendants that several

1   products were identified by different names, despite the Defendants' alleged failure to provide

2   "key discovery" that would describe the overlap.  *See* Opposition at 13.

3          Finjan's counter-arguments are unpersuasive.  To the extent any of Finjan's explanations

4   justify its complete failure to address the missing products, those explanations should have been

5   provided in its infringement contentions.  Finjan may not serve infringement contentions as

6   required by the Patent Local Rules and then informally supplement them after the fact (either

7   through correspondence with Defendants or through briefing to the Court).  The Patent Local

8   Rules provide a mechanism to supplement contentions after service, which Finjan has not

9   followed.  *See* Patent L.R. 3-6.

10         **C.     Finjan's "ProofPoint Products" Category is Improper Under Rule 3-1(b)**

11         As described above, Finjan's infringement contentions are grouped into two charts for each

12  patent, one that applies to Proofpoint Products and a second that applies to Armorize Products.

13  See Opposition at 3.  Finjan defines Proofpoint Products as "Proofpoint products and services that

14  utilize the Zero-Hour Threat Detection and Malware Analysis Service including but not limited to

15  [seven identified products]."  *See, e.g.*, Dkt. No. 118-3 at 1.  Defendants argue that this

16  formulation is improper, as it purports to identify infringing products by their functionality (*i.e.*,

17  the use of the Zero-Hour Threat Detection and Malware Analysis Service), not their name or

18  model number.  The Court agrees.

19         This District's Patent Local Rules require a party claiming infringement to identify each

20  "accused apparatus, product, device, or other instrumentality ('Accused Instrumentality') of each

21  opposing party of which the party is aware."  Pat. L.R. 3-1(b).  This identification must be "as

22  specific as possible" and, where known, include the "name or model number" of each accused

23  apparatus.  *Id*.  The Local Rules do not permit "broad categorical identifications" nor

24  "representative examples."  *See Oracle Am., Inc. v. Google Inc*., 2011 WL 4479305, at *2 (N.D.

25  Cal. Sept. 26, 2011) (finding categorical identification of "mobile devices running Android"

26  insufficient under Local Rule 3-1(b) and precluding claims against products not specifically

27  identified).

28         Finjan did not meet this requirement.  "Proofpoint products and services that utilize the

Zero-Hour Threat Detection and Malware Analysis" is no more specific than "mobile devices running Android," which the Court found insufficient under Rule 3-1(b) in *Oracle America*.  *See* 2011 WL 4479305 at *2.  Accordingly, Finjan's claims against Proofpoint Products in this action are limited to the seven products expressly named in its contentions.  The broad phrase "services that utilize the Zero-Hour Threat Detection and Malware Analysis" cannot expand the definition of Proofpoint Products beyond those seven specifically identified.

Finjan does not contest that allegedly infringing products must be specifically identified under Patent Local Rule 3-1(b).  Instead, Finjan recasts Defendants' argument as an attempt to preclude it from moving to amend its contentions at any point in the future.  *See* Opposition at 14.  The Court does not agree with Finjan's characterization.  Finjan's right to amend does not depend on the overbroad categorical language Defendants seek to strike; no "placeholder" language is needed to preserve the option of future amendment.  When a patentee discovers additional potentially infringing products after serving its infringement contentions, the appropriate action is to move the Court to amend upon a showing of good cause.  *See* Patent L.R. 3-6 ("Amendment of the Infringement Contentions  . . . may be made only by order of the Court upon a timely showing of good cause."); *see also Seiko Epson Corp. v. Coretronic Corp*., 2008 WL 2563383 (N.D. Cal. June 23, 2008) (granting motion to amend preliminary infringement contentions after additional potentially infringing products were discovered during the course of discovery).  Finjan has not moved the Court to amend its contentions to add newly discovered infringing products.  Accordingly, the only Proofpoint products at issue in this case are those expressly identified in Finjan's infringement contentions served on April 17, 2014.

For these reasons, the Court **STRIKES** the words "including but not limited to" from Finjan's definition of Proofpoint Products, wherever that definition appears in Finjan's infringement contentions.  Finjan's definition of Proofpoint Products is limited to the seven products expressly listed in the definition.  This ruling does not prejudice Finjan's right to move the Court to add new potentially infringing products to its contentions upon a showing of good cause in compliance with Patent Local Rule 3-6.

United States District Court
Northern District of California

9

### D.    Finjan Does Not Identify Where Each Limitation of Each Asserted Claim is Found within Each Accused Instrumentality

The core argument in Defendants' motion is that, even setting aside the issues discussed above, Finjan's infringement contentions do not contain sufficient detail to provide notice of its theory of infringement as required by Patent Local Rule 3-1.  The Court agrees.

The Patent Local Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments*, 417 F. Supp. 2d at 1123.  "At the Patent Local Rule 3-1 Disclosure stage, a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required." *InterTrust*, 2003 WL 23120174 at *3.  This burden cannot be met simply by parroting claim language or referencing screenshots and/or website content.  *See Digital Reg of Texas*, 2013 WL 3361241, *4 (infringement contentions that "parrot" claim language and "incorporate[] screen shots in lieu of explanatory text" are improper because  they leave defendants "to guess what particular system (or aspect of a particular system) [the patentee] is accusing of meeting each limitation."); *GN Resound A/S v. Callpod, Inc.,* 2013 WL 1190651, at *4 (N.D. Cal. Mar. 21, 2013) ("[D]irecting Defendant to a video, without describing the content of the video or explaining how the content of the video supports its infringement contention, is inadequate to satisfy Rule 3-1(c).").

Here, Finjan's infringement contentions are largely comprised of generic marketing literature and screenshots of the type routinely rejected by courts in this District.  These unexplained references comprise the majority of Finjan's over 1,000 pages of claim charts.  Defendants correctly note that the same handful of screenshots and website addresses are copied and pasted into hundreds of cells, often with little or no explanation for what information contained in those sources relates to the relevant claim elements.  *See* Dkt. No. 118 at 14-17.  For example, asserting that support for a particular claim "is demonstrated in Armorize's public documents and at [a list of four website addresses], *see* Dkt. No. 118-13 at 1, does not meet the level of specificity required by this District's Patent Local Rules.  *Network Caching*, 2002 WL 32126128, at *4 (rejecting infringement contentions where the patentee "provides no explanation of how the proxies described in the literature map onto the claim language.")  If the cited sources

United States District Court
Northern District of California

contain information necessary to understand Finjan's infringement theories, Finjan must identify the particular supporting language in those sources and explain how that language fits into Finjan's theory of infringement.

Even more troublingly, the little explanation Finjan does provide is framed in high-level generalities that do not specifically relate to the claim elements identified in each Claim. *See* Pat. L.R. 3-1(c) (requiring the patentee to identify "the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function."); *Shared Memory Graphics*, 812 F.Supp.2d at 1025 (holding that the patentee "must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction"); *Bender*, 2010 WL 1135762, at *2 ("[P]laintiff bears the burden of providing infringement contentions that specify the location of every claim element within the accused products, so that the Court can make a principled decision on whether discovery will proceed."). For example, "Claim 1a" of the '154 Patent discloses:

> A system for protecting a computer from dynamically generated malicious content, comprising: a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function within the input, only if a security computer indicates that such invocation is safe;

Dkt. No. 118-13 at 1. In order to satisfy Patent Local Rule 3-1(c) as to Claim 1a, Finjan was required to identify what structure, act, or material in each of the Armorize Products infringes each claim element. In other words, what constitutes the "first function," "second function," and the "input" in the allegedly infringing Armorize Products?

These are questions that Finjan's infringement contentions do not answer. The words "first function," "second function" and "input" do not appear in Finjan's Claim 1a claims chart at all. Instead, the substantive portion of Finjan's contentions describes how the Armorize Products work in a general sense, without tying the explanation to the specific claim elements identified in the 1a Claim:

> By the way of example, and not limitation, Armorize Products meet the recited claim language because Armorize Products dynamically analyzes exploit kits, exploit code, obfuscated scripts within web content, to prevent delivery of a payload or dropper from another server to a client computer. Armorize Products use a cloud system to analyze the dynamic threats. For example, HackAlert uses a

United States District Court
Northern District of California

behavior-based scanning engine to send downloadable content to run in an isolated sandbox hosted at the Armorize datacenter to be analyzed for behavioral characteristics that indicate malware injections.  If there is an active drive-by download, the download is analyzed and the behavior and remediation guidance is reported back to the end user.

*Id.*

Finjan's theory of infringement as to each specific element of Claim 1a may be hidden somewhere in that paragraph, but it is not readily apparent to the Court.  At the March 19, 2015 hearing, Finjan attempted to explain this language, asserting that "within these obfuscated scripts there's a first function and a second function.  It's very clear from the narrative, and also it ties directly to the screen shots."  Hr'g Tr. at 11:3-6.  The Court disagrees with Finjan's assessment of the clarity of its explanation.  It is Finjan's obligation to "map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction."  *Shared Memory Graphics*, 812 F. Supp. 2d at 1025.  At a minimum, Finjan was required to expressly discuss the particular claim elements identified in each Claim and map those elements onto the features of the allegedly infringing products.  In other words, if Finjan believes that the first and second functions are contained within the obfuscated scripts, it was obligated to say so explicitly in its infringement contentions.  Neither the Court nor the Defendants should be required to guess which aspects of the accused products allegedly infringe each claim element.  *See Digital Reg of Texas*, 2013 WL 3361241 at *4.

Finjan's failure to provide a cognizable theory of infringement for each element of each claim is apparent when its contentions are broken down accused product by accused product.  At the March 19, 2015 hearing, Finjan represented that its charts went "element-by-element" and addressed each individual Armorize Product.  *See* Hr'g Tr. at 8:12-13.  That representation is not accurate.  For example, there is no explanatory text describing how SafeImpressions infringes Claim 1a, 1b, 4a, 6a, and 10a of the '154 Patent, let alone an explanation that maps the features of that product to each claim element.  *See* Dkt. No. 118-13.  Perhaps even more concerning, when SafeImpressions is mentioned, Finjan merely pastes the same two sentences into each cell, without any reference to the claim elements to which those sentences are ostensibly addressed.  The following language is the only discussion of the SafeImpressions product in the entire 66-page

1   '154 Patent claim chart:

> In another example, Armorize SafeImpression provides detail information about the type of malware. In the example below, the malware advertisement includes information about malicious behaviors detected and information about the source of the drive-by download.

*Id.* at passim.  Finjan makes absolutely no attempt to tie these two sentences to any of the dozens of claim elements of the '154 Patent.  *See id.* (identical language contained in claim chart cells purportedly explaining Finjan's infringement theory as to Claims 1c, 2, 3, 4b, 4c, 4d, 5, 5b, 6c, 6d, 7, 8, 10b, 10c, 10d, and 11 of the '154 Patent).  No reasonable reading of these sentences could possibly disclose how SafeImpressions allegedly infringes each element of Claim 1c, Dkt. No. 118-13 at 9 ("a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input"), as well as Claim 8, *id.* at 48 ("The system of claim 6 wherein the input variable is dynamically generated by said content processor prior to being transmitted by said transmitter.").

Even Armorize Products that receive somewhat more detailed treatment suffer from the same underlying disconnect.  Like Finjan's discussion of SafeImpressions, its description of Armorize HackAlert (which constitutes the bulk of Finjan's infringement contentions), is largely comprised of rote descriptions divorced from the specific claim elements of each asserted Claim. For example, the following paragraph is repeated verbatim in each of the 21 Claims identified in Finjan's claim chart for the '154 Patent:

> Armorize HackAlert analyzes, detects, prevents, and mitigates against malware infections. HackAlert is a system to protect a computer from dynamically generated malicious content. A computer attempts to access web content with that input sent to HackAlert, the content processor. If HackAlert determines the web content to be safe, the client computer is able to load the web content. "HackAlert focuses on special malware, such as 0-day exploits or exploits used in APT (Advanced Persistent Threat) attacks, that are undetectable by typical virus or malware scanners. This may include for example malicious binaries, document exploits (PDF, Word, Excel, PowerPoint, Flash), Java exploits, browser exploits, BHO (browser helper object) exploits, drive-by downloads, click-to downloads, etc." http://www.armorize.com/index.php?link_id=hackalert.

Dkt. No. 118-13 at *passim*.  The same is true of the following description of the Armorize website:

United States District Court
Northern District of California

> *See also*, http://blog.armorize.com/2010/12/hdd-plus-malware-sprea dthrough.html showing Armorize Products decoding malvertising and drive-by download exploits on msn.com. In the example below, the banner contains obfuscated javascript code, which loads iframes that include exploits to cause drive-by downloads. Armorize's HackAlert can use multiple behavioral and static analysis techniques coupled to detect potential malware and make a call to Armorize's media reputation database. If the downloadable is safe, HackAlert will allow the file to be downloaded, otherwise it will prevent the file from being downloaded or it will make the file safe.

*Id.* Of course, inserting the same generic descriptions into all 21 Claims contained in Finjan's infringement contentions for the '154 Patent does not approach the level of specificity required by Patent Local Rule 3-1(c), whereby the plaintiff must identify "where each limitation of each asserted claim is found within each Accused Instrumentality." Finjan's infringement contentions fall well below the requirements of this District's Patent Local Rules.

Finjan's defense of its infringement contentions is unpersuasive. Finjan first asserts that Defendants selectively quote its contentions to mischaracterize its claim charts. *See* Dkt. No. 121 at 15-16. The argument is not well-taken. The portions of Finjan's infringement contentions omitted by the Defendants largely consist of screenshots and marketing literature that do nothing to enlighten the reader as to Finjan's theory of infringement. For example, Finjan's chart of Claim 1a in the '146 Patent spans six pages. Dkt. No. 118-13 at 1-6. However, the last five pages are almost exclusively comprised of screenshots and quotations to marketing literature that are not in any way tethered to the actual language used in the Claim. *Id.* at 2-6. Notably, while Finjan criticizes the Defendants for omitting pages of its claim charts, it does not identify anything contained in those pages that would assist the Court in understanding its theory of infringement. The Court has reviewed those pages and agrees with the Defendants that, at least as currently framed, they do not disclose an understandable theory.

Next, Finjan argues that its contentions should be found sufficient under Patent Local Rule 3-1(c) because it provided as much detail as possible given the publicly available information concerning the allegedly infringing products. *See* Dkt. No. 121 at 16 (citing *Creagri*, 2012 WL 5389775, at *3). Finjan emphasized this point at the March 19, 2015 hearing, explaining that detailed information about how computer security software works is not regularly disclosed in the

14

1    public arena and that, "once [it has] a chance to really get into all the other technical information,

2    [it] can provide more." *See* Hr'g Tr. at 4:11-15.  In support of its position, Finjan directed the

3    Court to the *Network Caching* case, which noted that initial infringement contentions involving

4    software programs cannot be expected to identify the source code containing the allegedly

5    infringing routines, as that information will generally not yet be available to the plaintiff.  *See*

6    *Network Caching,* 2002 WL 32126128, at *6 (noting that the "quintessential case [for] allowing

7    amendment of [infringement contentions]" is where source code is solely in the defendants'

8    possession).

9              Finjan is correct insofar as this District generally does not require parties asserting

10    infringement of a software patent to identify specific infringing routines prior to the production of

11    source code.  *See France Telecom. S.A. v. Marvell Semiconductor, Inc.*, 2013 WL 1878912, at *4

12    (N.D. Cal. May 3, 2013) ("there are times when [a] plaintiff's preparation is restricted by

13    defendants' sole possession of the information plaintiffs need"); *Theranos, Inc. v. Fuisz Pharma*

14    *LLC*, 2012 WL 6000798, at *6 n.7 (N.D. Cal. Nov. 30, 2012) (citation omitted) (noting "courts'

15    'recognition' that there are situations where a plaintiff is constrained by defendants' sole

16    possession of information" which "relates to cases involving allegedly-infringing source code").

17    However, the flexibility provided in cases involving software patents does not mean that a party

18    may delay providing *any* comprehensible theory of infringement until that source code is

19    provided.  Prior to filing an action for patent infringement, Rule 11 "requires that a plaintiff

20    compare an accused product to its patents on a claim by claim, element by element basis for at

21    least one of each defendant's products." *Network Caching*, 2002 WL 32126128 at *5 (discussing

22    *View Eng'g, Inc.*, 208 F.3d 981); *see also Bender v. Infineon Technologies North Am. Corp.*, 2010

23    WL 964197, at *1 (N.D. Cal. March 16, 2010) ("[P]laintiff is required to include [in its]

24    infringement contentions all facts known to it, including those discovered in its Fed.R.Civ.P. 11

25    pre-filing investigation.").  Finjan's infringement contentions do not on their face reflect the

26    results of the "claim by claim, element by element" investigation required by Rule 11.

27              For example, the plaintiff in *Network Caching*, like Finjan here, failed to describe how the

28    product literature cited in its infringement contentions mapped onto the specific claim language of

United States District Court
Northern District of California

United States District Court
Northern District of California

the asserted patent.  *See* 2002 WL 32126128 at *6 (noting that the party asserting infringement did not "describe how 'couple cluster technology' is relevant").  Accordingly, the Court found the plaintiff's infringement contentions "plainly insufficient" despite its recognition that the plaintiff need not identify the infringing routines in defendant's source code.  *Id*. at *6-7.  The same finding is warranted here.  To the extent the publicly available information cited by Finjan does support its infringement theory, Finjan has not described that theory with adequate specificity to meet the requirements of Patent Local Rule 3-1(c).  *See, e.g.,* Dkt. No. 118-13 at 1 (failing to describe how "obfuscating scripts" and numerous other language in its claim chart relate to the claim elements in Claim 1a of the '154 Patent).  Finjan's concessions at the March 19, 2015 hearing that it could have taken steps to further clarify its infringement contentions buttress (but are not necessary to) this conclusion.  *See* Hr'g Tr. at 7:3-4 ("We can break [products using Zero-Hour Threat Detection and Malware Analysis Service] out separately."); *id*. at 9:24-25 ("[W]e can separate [each Armorize Product] out into separate charts."); *id*. at 11:1-16 (attempting to explain the location of certain claim elements in a way not identified in the claim chart).

Accordingly, the Court finds that Finjan's infringement contentions do not satisfy the requirements of Patent Local Rule 3-1(c).

**E.     Doctrine of Equivalents, Willful Infringement, and Indirect Infringement**

Defendants argue that Finjan's infringement contentions are deficient because they fail to describe Finjan's bases for asserting the doctrine of equivalents, willful infringement, and indirect infringement.  The Court agrees with Defendants that Finjan has not met the requirements of the Patent Local Rules with respect to the doctrine of equivalents and willful infringement, but disagrees with Defendants that Finjan has failed to sufficiently allege indirect infringement.

**1.     Doctrine of Equivalents**

Patent Local Rule 3-1(e) requires the patentee to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."  Finjan asserts that it met this standard by concluding each section of its claim chart with a generic reservation of its right to argue the doctrine of equivalents, completely unrelated to specific claim elements or the allegedly infringing technology.  *See, e.g.,* Dkt. Nos.

16

United States District Court
Northern District of California

118-3 through 118-14, *passim* ("To the extent that Proofpoint contends that it does not literally infringe this claim, Proofpoint infringes under the doctrine of equivalents.").

Finjan's rote recitation is not sufficient.  "The doctrine of equivalents exists to prevent fraud on the patent and not to give a patentee a second shot at proving infringement if it is not literally present."  *Blue Spike, LLC v. Adobe Systems, Inc.*, 2015 WL 335842, *6 (N.D. Cal. 2015) (citing *Creagri*, 2012 WL 5289775 at *6) (internal quotation marks omitted).  Plaintiff may not simply "repeat the same boilerplate language for each of its contentions, noting in the alternative that 'this element infringes directly or under the doctrine of equivalents.'"  *Id*.  But that is exactly what Finjan has done here.

Finjan does not appear to dispute that its contentions lack the specificity required by the Patent Local Rules.  Instead, it blames Defendants for their "failure to produce information about the accused products until almost a year into the fact discovery period."  Dkt. No. 121 at 22.  Defendants' alleged delay is beside the point.  Infringement contentions are due no later than 14 days after the Initial Case Management Conference, *see* Pat. L.R. 3-1, which in most circumstances will be before any formal discovery has taken place.  If a plaintiff does not have a factual basis to assert the doctrine of equivalents in its infringement contentions at that time, it should not do so.  It is improper to assert the doctrine of equivalents with generic "placeholder" language on the hope that future discovery might support such an assertion.  If discovery uncovers a basis for the claim, Finjan may move the Court to amend its infringement contentions.  *See* Pat. L.R. 3-6 (c) (listing recent discovery of nonpublic information as support for a finding of good cause to amend infringement contentions).

Accordingly, the Court **STRIKES** all language in Finjan's infringement contentions asserting the doctrine of equivalents.  This ruling does not prejudice Finjan's right to move the Court to assert a claim under the doctrine of equivalents upon a showing of good cause in compliance with Patent Local Rule 3-6.

### 2. Willful Infringement

Defendants seek to strike Finjan's contentions relating to willful infringement, arguing that a plaintiff must assert that the defendant knew of the patent before litigation began in order to

17

United States District Court
Northern District of California

properly plead the claim, *see Blue Spike*, 2015 WL 335842 at *8, and that Finjan has made no such allegation, *see* Dkt. No. 118-15 at 31 (asserting Defendants willfully infringed "at least as of the time they learned of this action for infringement, which was filed on December 16, 2013.").

The Court finds Defendants' argument—and the inclusion of willful infringement in Finjan's infringement contentions at all—to be premature.  As Finjan conceded at the March 19, 2015 hearing, the operative complaint in this action does not include an allegation of willful infringement because Finjan did not "have the discovery or the Rule 11 basis to assert it in the complaint at the time."  Hr'g Tr. at 12:15-13:4.  Finjan explained that its infringement contentions nevertheless include a "basis" for its nonexistent willful infringement claim because "the contentions require you to address it specifically" and "because it's a requirement of the Rule."  *Id*.  Finjan misreads the relevant Patent Local Rule.  Rule 3-1(h) expressly limits a plaintiff's obligation to provide a basis for a claim of willful infringement to instances where the party actually alleges willful infringement in its complaint.  *See* Pat. L.R. 3-1(h) ("*If a party claiming patent infringement alleges willful infringement*, the [infringement contentions must provide a] basis for such allegation.") (emphasis added).  No reasonable reading of the Rule requires (or permits) a party to include a purported factual basis in its contentions simply as a "placeholder" under any circumstances, and this is doubly true where, as here, willful infringement has not even been alleged.

Accordingly, the Court **STRIKES** all language in Finjan's infringement contentions asserting willful infringement.  This ruling does not prejudice Finjan's right to move the Court to assert a claim of willful infringement upon a showing of good cause in compliance with Patent Local Rule 3-6.

### 3.      Indirect Infringement

This District's Patent Local Rules requires plaintiffs to disclose for each claim "any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement."  *See* Pat. L.R. 3-1(d).  Plaintiffs are required to allege facts supporting their assertion.  *See id.* (requiring a "description of the acts of the alleged indirect infringer" and stating that "the role of each party must be described").  "'Generic allegations' are

insufficient to disclose a theory of indirect infringement." *France Telecom,* 2013 WL 1878912, at *5 (citation omitted).

Defendants argue that Finjan is subject to several additional requirements. Defendants contend that Finjan must assert (1) the identity of the alleged direct infringer, (2) what acts the direct infringer performed that constitute direct infringement, and (3) that a single party performed every allegedly infringing act. *See* Dkt. No. 118 at 21. This Court disagrees. Finjan has identified advertisements and documents concerning specific products that it alleges advised third parties to use Defendants' products in an infringing manner. *See* Dkt. No. 118-15 at 12-24. Courts in this district have denied motions to strike where plaintiffs have made a similar showing. *See DCG Sys*, 2012 WL 1309161, at *2 (denying motion to strike where "[t]he contentions identify a specific product line, the Checkpoint 300–Series, and thus provide Checkpoint with notice that Checkpoint indirectly infringes the Asserted Patents when a 300–Series product is integrated by a customer with, for example, an automated test system."). Defendants have cited no decision requiring a plaintiff to identify the specific third party committing any underlying act of direct infringement in its initial infringement contentions. *See id*. (noting the same).

The United States Supreme Court's recent decision in *Limelight Networks, Inc. v. Akamai Technologies, Inc*., 134 S. Ct. 2111 (2014), does not affect this analysis. In *Limelight*, the Supreme Court held that a single person must perform every step of a claimed method patent for a third party to be liable for indirect infringement. *See id*. at 2118. *Limelight* simply did not address the level of specificity required of a plaintiff's infringement contentions under this District's Patent Local Rules. Under *Limelight*, Finjan must eventually identify the parties that committed the underlying acts of direct infringement in order to prevail on its indirect infringement claim, but no authority requires Finjan to do so at this stage of the litigation.

Defendants' motion to strike Finjan's assertion of indirect infringement is **DENIED**.

### III.   RELIEF

Defendants argue that Finjan's infringement contentions should be stricken with prejudice, asserting that Finjan's "egregious conduct" and "bad faith" warrant extraordinary action by the Court. *See* Dkt. No. 118 at 24-25. Striking a patentee's infringement contentions is a severe

19

1    sanction that should be used sparingly and only for good cause.  *See Bender v. Advanced Micro*

2    *Devices*, *Inc.*, 2010 WL 363341, at *2 (N.D. Cal. Feb. 1, 2010) (characterizing such relief as

3    "draconian").  The Court finds that such drastic relief is not warranted here.

4           Where appropriate, the Court will treat a motion to strike as a motion to compel

5    amendment.  *See Blue Spike*, 2015 WL 335842 at *4; *France Telecom*, 2013 WL 1878912 at *2;

6    *FusionArc*, 2007 WL 1052900 at *2.  This is the first time that Defendants have moved to strike or

7    compel amendment to Finjan's infringement contentions, and while Finjan's contentions are

8    clearly deficient, striking them with prejudice is not justified.  Courts in this District generally

9    allow plaintiffs leave to amend in these circumstances.  *See France Telecom*, 2013 WL 1878912 at

10   *5-6 (denying motion to strike but granting motion to compel amendment); *Bender*, 2010 WL

11   964197 at *2 (same); *Advanced Micro*, 2010 WL 363341 at *2 (same).

12          However, there are several exceptions to this ruling.  The Court will not provide Finjan

13   leave to amend the portions of its contentions expressly stricken, above.  To the extent Finjan

14   wishes to amend its contentions to add products beyond those specifically identified in its initial

15   infringement contentions, or if it wishes to re-allege claims under the doctrine of equivalents or for

16   willful infringement, it must comply with Patent Local Rule 3-6.  Finjan must file a properly-

17   noticed motion with this Court specifically detailing why, despite its diligence, the new allegations

18   could not have been properly asserted before.  *See* Patent L.R. 3-6 ("Amendment of the

19   Infringement Contentions or the Invalidity Contentions may be made only by order of the Court

20   upon a timely showing of good cause.").

21          Finjan must serve an amended set of infringement contentions complying with the Court's

22   ruling no later than 21 days from the date of this Order.  If Defendants believe that Finjan has not

23   remedied the deficiencies in its amended infringement contentions, it may renew its motion to

24   strike within 21 days from the date of service of Finjan's amended contentions.

25          Defendants request for a stay pending the submission of infringement contentions that

26   comply with this District's Patent Local Rules is **DENIED**.  Defendants received Finjan's

27   infringement contentions in April of 2014, but waited almost ten full months to move to strike.  Of

28   course, the parties' efforts to informally resolve their disputes can delay the filing of a motion with

United States District Court
Northern District of California

20

the Court.  But Defendants acknowledge that the parties had very divergent positions from the start, which suggests that this motion could have been brought significantly sooner.  In any event, the schedule now set by the Court provides for prompt resolution of the above-discussed issues related to Finjan's infringement contentions.

   **IT IS SO ORDERED.**

Dated: April 2, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Court Judge