PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
HANNAH LEE (State Bar No. 253197)
hlee@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., | Case No.: 13-CV-05808-HSG |
| Plaintiff, | **PLAINTIFF FINJAN, INC.'S MOTION TO STRIKE INVALIDITY THEORIES NOT DISCLOSED IN DEFENDANTS PROOFPOINT, INC. AND ARMORIZE TECHNOLOGIES, INC.'S PRELIMINARY ELECTION** |
| v. | |
| PROOFPOINT, INC., and ARMORIZE TECHNOLOGIES, INC., | |
| Defendants. | Date:      November 12, 2015 |
| | Time:     2:00 p.m. |
| | Dep.:      Courtroom 15, 18th Floor |
| | Judge:    Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED..................................................................................................................1

STATEMENT OF THE ISSUES...................................................................................................2

I.     INTRODUCTION ...............................................................................................................2

II.    STATEMENT OF FACTS .................................................................................................3

III.   ARGUMENT ......................................................................................................................6

      A.     Proofpoint Violated The Court's Order By Including Invalidity Theories In Its Final Election of Prior Art That Were Not From Its Preliminary Election Of Prior Art. ........................................................................................................6

      B.     Finjan Would Be Unfairly Prejudiced If Proofpoint Is Permitted To Assert Invalidity Theories That Were Not Contained In Both Its Preliminary Election And Final Election. ....................................................................................8

      C.     Proofpoint Lacks Good Cause To Modify The Court's Scheduling Order At This Late Stage In The Proceedings ...........................................................10

IV.   CONCLUSION .................................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayers v. City of Richmond,*
    895 F.2d 1267 (9th Cir.1990) .................................................................................................... 7

*Cornwell v. Electra Cent. Credit Union,*
    439 F.3d 1018 (9th Cir. 2006) ................................................................................................... 7

*Finisar Corp. v. Nistica, Inc.,*
    No. 13-CV-03345-BLF, Dkt. 181 (N.D. Cal. Apr. 6, 2015) ..................................................... 7

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992) ............................................................................................... 7, 10

*Mitsubishi Elec. Corp. v. Sceptre, Inc.,*
    2-14-CV-04994-ODW (AJWx), Dkt. 98 (C.D. Cal. Oct. 1, 2015) ........................................... 6

*Singh v. Arrow Truck Sales, Inc.,*
    No. 05-cv-2564-GEB-KJM, 2006 WL 1867540 (E.D. Cal. July 6, 2006) ............................... 7

*Wong v. Regents of Univ. of Cal.,*
    410 F.3d 1052 (9th Cir. 2005) ................................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 16(b)(4).............................................................................................................. 10

Fed. R. Civ. P. 16(f) ..................................................................................................................... 7

Patent L.R. 3-6 .............................................................................................................................. 6

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 12, 2015, at 2:00 p.m. or as soon thereafter as the matter may be heard by Honorable Haywood S. Gilliam, Jr. in Courtroom 15, 18th Floor, United States District for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Finjan, Inc. ("Finjan") shall and hereby does move the Court for an order striking certain invalidity theories asserted by Defendants Proofpoint, Inc. and Armorize Technologies, Inc. (collectively "Proofpoint"). This motion is based on this notice of motion and supporting memorandum of points and authorities; the supporting declaration of Lisa Kobialka ("Kobialka Decl."); exhibits thereto; and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the court.

**RELIEF REQUESTED**

Finjan seeks an order striking from this action specific references and invalidity theories set forth in Proofpoint's September 23, 2015 Final Election of Asserted Prior Art ("Final Election") that were not disclosed according to the schedule set by the Court. Specifically, Finjan is seeking to limit the case to the invalidity theories in Proofpoint's Final Election that are a subset of the invalidity theories which were timely disclosed in Proofpoint's Preliminary Election of Asserted Prior Art ("Preliminary Election"). The following anticipation theories based on the following references were the only invalidity theories that overlap between Proofpoint's Preliminary Election and Final Election:[1]

| Finjan Asserted Patent | Proofpoint's Asserted Reference |
|---|---|
| U.S. Patent No. 6,154,844 (the "'844 Patent") | U.S. Pat. No. 6,253,370 ("Abadi") |
| U.S. Patent No. 7,058,822 (the "'822 Patent") | US Patent No. 5,983,348 ("Ji) <br><br> Trend Micro's InterScan AppletTrap system as disclosed in Trend Micro's "InterScan AppletTrap: Eliminates Malicious Code" and other publications ("Trend Micro") |
| U.S. Patent No. 7,613,918 (the "'918 Patent") | US Patent No. 7,587,755 ("Kramer") <br> U.S. Pat. No. 7,797,727 ("Miller") |
| U.S. Patent No. 7,647,633 (the "'633 Patent") | Ji |

---

[1] There were 20 invalidity theories in Proofpoint's Final Election that were not from Proofpoint's Preliminary Election. They are identified in Exhibit 1 to Kobialka Declaration, filed herewith.

| | Trend Micro |
|---|---|
| U.S. Patent No. 7,975,305 (the "'305 Patent") | US Patent No. 7,636,945 ("Chandnani") U.S. Pat. No. 7,398,553 ("Li") |
| U.S. Patent No. 8,079,086 (the "'086 Patent") | Abadi |
| U.S. Patent No. 8,141,154 (the "'154 Patent") | U.S. Pub. No. 2007/0113282 ("Ross") |
| U.S. Patent No. 8,225,408 (the "'408 Patent") | U.S. Pat. No. 5,860,011 ("Kolawa") |

Any other invalidity theory should be stricken from the case because it violates the Court's Order and was not timely disclosed.

## **STATEMENT OF THE ISSUES**

Whether the invalidity theories that Defendants added to its Final Election of Asserted Prior Art should be stricken because they were not previously disclosed in Defendants' Preliminary Election of Prior Art.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The twenty invalidity theories identified in Proofpoint's Final Election that were not in Proofpoint's Preliminary Election should be stricken from the case.  Proofpoint's attempt to introduce new invalidity theories violates the Court's Order Setting Case Schedule, which explicitly required Proofpoint to identify such references and theories in the Final Election that were a *subset* of the anticipation and specific obviousness combinations identified in Proofpoint's Preliminary Election. Dkt. No. 139 (emphasis added).  Proofpoint, however, listed obviousness combinations and anticipation theories in its September 23rd Final Election that were not from its Preliminary Election. In many cases, Proofpoint introduced references that were not identified anywhere in its Preliminary Election.

Proofpoint has no good cause to disregard the Court's Order, which identified how the parties would handle the reduction of issues in this case.  Dkt. No. 98.  The parties were to narrow the asserted claims and prior art invalidity theories at certain stages in the case to ensure that discovery is not unwieldy and unduly burdensome.  Thus, Finjan identified a limited universe of claims that it could assert at trial with its December 19, 2014 Preliminary Election of Asserted Claims, which Proofpoint

2

could rely upon during discovery and for its Preliminary Election.  Proofpoint likewise was required to identify a limited universe of its invalidity theories in its January 16, 2015 Preliminary Election, which Finjan was supposed to be able to rely upon during discovery and before Finjan was required to identify its Final Election of Asserted Claims.

Proofpoint's explanation for why it was appropriate to identify 20 new invalidity theories in its Final Election was its reliance on an improper Amended Preliminary Election of Prior Art ("Amended Preliminary Election").  Specifically, Proofpoint served, without warning, an Amended Preliminary Election that introduced new references and different obviousness combinations more than six months after the Court's deadline to serve its Preliminary Election.  This Amended Preliminary Election is invalid because it was not done pursuant to the Court's Schedule.  Although Finjan advised Proofpoint it needed to seek leave to amend the case schedule to validate this late disclosure, Proofpoint refused to do so.  Furthermore, Proofpoint's improper Amended Preliminary Election is unreliable because the invalidity theories contained in that document have very little overlap with Proofpoint's Final Election. For example, *none* of Proofpoint's obviousness theories disclosed in its Final Election were the same obviousness combinations listed in Proofpoint's improper Amended Preliminary Election.

If Proofpoint is permitted to use these new invalidity theories from its Final Election, Finjan will be substantially prejudiced because it relied on the Court's Scheduling Order to direct its discovery efforts and focus its claims in the case.  Finjan should not be faced with new invalidity theories that were not included in Proofpoint's Preliminary Election (or its subsequent improper Amended Preliminary Election).  Proofpoint's disregard of the Scheduling Order, and subsequent refusal to address the issue before serving its Final Election, justifies Finjan's request to strike Proofpoint's new invalidity theories in Proofpoint's Final Election that were not disclosed in Proofpoint's Preliminary Election.

## II.   STATEMENT OF FACTS

On November 14, 2014, the Court issued an order setting forth the case schedule and the procedure for narrowing the claims and prior art in the case ("Order for Narrowing Issues").  Dkt. No.

3

98.  This Order for Narrowing Issues stated that Proofpoint was to serve early in the case a "Preliminary Election of Asserted Prior Art, which shall identify ... no more than six anticipatory and four obviousness combinations per Patent-in-Suit."  *Id.* at 3.  An obviousness combination was explicitly defined as follows: "an obviousness combination refers to a theory of invalidity and may contain additional references to support that theory.  For example, an obviousness combination may be supported by a patent and two publications."  *Id.* at n.2.  Thus, Proofpoint was permitted to identify 48 anticipation theories and 32 obviousness theories.

The Order for Narrowing Issues also provided that Proofpoint will make a Final Election of Prior Art during expert discovery, where it "shall identify the references it will present at trial from the subset of references previously identified" from the Preliminary Election.  Dkt. Nos. 98, 139.  Proofpoint was permitted to identify either 3 anticipation theories and 1 obviousness theory or 2 anticipation theories and 2 obviousness theories per patent-in-suit that were from its Preliminary Election.  *Id.*  Finjan was similarly ordered to limit the claims it was asserting as a quid pro quo.  Dkt. No. 98.  On April 2, 2015, Honorable Haywood S. Gilliam set the Court' Schedule in accordance with the Schedule set forth by Honorable Judge Beth L. Freeman.  Dkt. No. 139.

Finjan served Proofpoint with its Preliminary Election of Asserted Claims on December 19, 2014, reducing the number of claims from its Infringement Contentions to forty claims for Finjan's eight Asserted Patents.  Kobialka Decl., Ex. 2.  In response, Proofpoint served its Preliminary Election on January 16, 2015, as required by the Court's Schedule.  *Id.*, Ex. 3.  After the parties served their respective Preliminary Elections, the Court ordered Finjan to amend its infringement contentions to provide more detail related to newly produced documents, but did not allow Finjan to expand the scope of its contentions.  Dkt. No. 138.  In turn, Finjan and Proofpoint stipulated, and the Court ordered, that Proofpoint could amend its invalidity contentions "to the extent Finjan's amended infringement contentions provide new or different interpretation of the asserted claims."  Dkt. No. 141 at 4.  Finjan served its amended infringement contentions which did not assert any new patent claims or accuse different products of infringement, much less a new or different interpretation of the asserted claims.  When Proofpoint amended its invalidity contentions, however, Proofpoint introduced for the first time

4

1   new references and invalidity theories.  Because Finjan did not want to burden the Court with any

2   further motion practice, and because Proofpoint was limited to the references and theories in its

3   Preliminary Election, Finjan did not object to Proofpoint's new theories and references in Proofpoint's

4   amended invalidity contentions.

5            Three weeks after serving its amended invalidity contentions, and without previously notifying

6   Finjan or seeking leave of the Court, Proofpoint served an Amended Preliminary Election of Prior Art.

7   Kobialka Decl., Ex. 4.  Practically every invalidity theory contained in this Amended Preliminary

8   Election was new.  For example, it included 27 new obviousness theories, two new references for

9   anticipation, eight new references for obviousness that were never identified in the Preliminary

10  Election, and five new anticipation theories, among other things.  Finjan promptly informed Proofpoint

11  that this attempt to amend was improper, that Proofpoint needed leave of the Court to amend the

12  Scheduling Order, and that Finjan would seek to strike any theories not properly disclosed under the

13  Scheduling Order.  *Id*., Ex. 5 (July 16, 2015 Letter); *see also id*., Ex. 6.

14           On September 9, 2015, Finjan served its Final Election of Asserted Claims, reducing the

15  number of claim at issue from forty to twenty-four claims.  *Id*., Ex. 7.  Soon thereafter, Finjan once

16  again reminded Proofpoint that under the Order for Narrowing Issues, Proofpoint was required to

17  identify theories from its January 16, 2015 Preliminary Election.  *Id*., Ex. 8 (Sept. 19, 2015 Email).

18  Proofpoint's response was that a motion to strike was premature until after Proofpoint served its Final

19  Election of Prior Art.  *Id*.  On September 23, 2015, Proofpoint served its Final Election, disclosing

20  twenty new invalidity theories that were not from its Preliminary Election.  *Id*., Exs. 1, 3, 4, 9.

21           In its Final Election, Proofpoint was permitted to identify up to 32 invalidity theories from the

22  80 invalidity theories in its Preliminary Election.  Yet only twelve of those 80 invalidity theories were

23  contained in Proofpoint's Final Election. Dkt No. 98; Kobialka Decl., Ex. 9.  Thus, with its Final

24  Election, Proofpoint dropped *68* of its invalidity theories and improperly added *20* new invalidity

25  theories.

26

27

28

5

FINJAN'S MOTION TO STRIKE INVALIDITY THEORIES          Case No. 13-CV-05808-HSG
NOT DISCLOSED IN PRELIM. ELECTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   ARGUMENT

Proofpoint's invalidity theories should be limited to the subset of invalidity theories (and references) that Proofpoint disclosed in its Preliminary Election, as required by the Court's Order for Narrowing Issues.   Dkt. Nos. 98 and 139.  In this case, there are twelve invalidity theories (all anticipation theories) in Proofpoint's Final Election which are from its Preliminary Election.

### A.   Proofpoint Violated The Court's Order By Including Invalidity Theories In Its Final Election of Prior Art That Were Not From Its Preliminary Election Of Prior Art.

Striking certain invalidity theories from the case is warranted here because Proofpoint violated the Court-ordered Schedule by (1) selecting invalidity theories in its Final Election that were not previously disclosed in its Preliminary Election, and (2) refusing to seek leave to properly serve an Amended Preliminary Election, such that Finjan knew it could rely upon Proofpoint's Amended Preliminary Election for the remainder of discovery in the case.

Proofpoint's decision not to limit its invalidity theories in its Final Election to the theories in its Preliminary Election is in violation of the Court's Order for Narrowing Issues, making it proper to strike these theories.  *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."); *Mitsubishi Elec. Corp. v. Sceptre, Inc.*, 2-14-CV-04994-ODW (AJWx), Dkt. 98 at *4 (C.D. Cal. Oct. 1, 2015) (granting plaintiff's motion to strike the defendant's amended invalidity contentions because the defendant served the amended invalidity contentions without first requesting leave from the Court, in violation of Patent L.R. 3-6).  The Court's Order for Narrowing Issues required that Proofpoint elect invalidity theories from a "subset" of those disclosed in its Preliminary Election.  Proofpoint's failure to do so violates the Court's Order, and therefore warrants the exclusion of these invalidity theories from the case.  Dkt. No. 98.

Proofpoint cannot rely upon its Amended Preliminary Election, which was not permitted under the Court's current Scheduling Order.  Dkt. No. 139.  To the extent Proofpoint suggests that its

6

1   amended invalidity contentions created a reasonable basis for serving an Amended Preliminary

2   Election, Proofpoint is not permitted to just disregard the Court's Scheduling Order unilaterally—it

3   was required to first obtain leave of the Court for the Amended Preliminary Election to be valid.

4   *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (noting that "[a] scheduling

5   order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel

6   without peril'").  Finjan reminded Proofpoint on multiple occasions that it needed to seek leave of the

7   Court.  *See*, *e.g.*, Kobialka Decl., Ex. 8 (September 19, 2015 Email).  Finjan did so to ensure that

8   Finjan could rely upon Proofpoint's new invalidity theories and so that Finjan had an appropriate

9   remedy in the event Proofpoint's Final Election was not based on a subset of Proofpoint's Amended

10   Preliminary Election.  Proofpoint's inexplicable refusal to seek leave to amend left Finjan with no

11   choice but to rely upon Proofpoint's Preliminary Election for case management and discovery

12   purposes, as set forth in the Court's Scheduling Order.

13         Proofpoint's attempts to disregard the scheduling order may be subject to sanctions by the

14   Court.  Fed. R. Civ. P. 16(f)[2]; *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir.1990)

15   (affirming sanction of lawyer for failing to comply with a Rule 16 order, even if the failure was not

16   made in bad faith).  Indeed, Rule 16 was drafted based on the policy that "[d]isregard of the order

17   would undermine the court's ability to control its docket, disrupt the agreed-upon course of the

18   litigation, and reward the indolent and the cavalier."  *Johnson*, 975 F.2d at 610 (citations omitted).

19   Any actions taken outside the Court's schedule are void and properly struck.  *Finisar Corp. v. Nistica,*

20   *Inc.*, No. 13-CV-03345-BLF, Dkt. 181 at *13 (N.D. Cal. Apr. 6, 2015) (disregarding the parties private

21

22   ─────────────────

23   [2] *See also Singh v. Arrow Truck Sales, Inc.*, No. 05-cv-2564-GEB-KJM, 2006 WL 1867540, at *2
     (E.D. Cal. July 6, 2006) ("Rules are rules and the parties must play by them.  In the final analysis, the

24   judicial process depends heavily on the judge's credibility.  To ensure such credibility, a district judge
     must often be firm in managing crowded dockets and demanding adherence to announced deadlines.  If

25   he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to
     escape the foreseeable consequences of noncompliance"); *Cornwell v. Electra Cent. Credit Union*, 439

26   F.3d 1018, 1027 (9th Cir. 2006) ("district court's ability to control its docket by enforcing a discovery
     termination date, even in the face of requested supplemental discovery that might have revealed highly

27   probative evidence, when the [party's] prior discovery efforts were not diligent.").

28                                                    7

─────────────────

1    agreements since they failed to inform the court, "particularly because such an agreement limits the

2    court's ability to control the litigation before it").

3           Because Proofpoint disregarded this Court's Scheduling Order, it should be limited to the

4    twelve anticipation theories in its Final Election that were from its Preliminary Election.  All other

5    invalidity theories should be stricken from the case.

6           **B.    Finjan Would Be Unfairly Prejudiced If Proofpoint Is Permitted To Assert**

7                  **Invalidity Theories That Were Not Contained In Both Its Preliminary Election**
                   **And Final Election.**

8           Based on the Court's Scheduling Orders, Finjan appropriately relied upon the invalidity

9    theories contained in Proofpoint's Preliminary Election for discovery and case management purposes.

10   Finjan further relied upon the Court's requirement that Proofpoint's Final Election would not contain

11   any new invalidity theories because it was supposed to only identify a subset of the invalidity theories

12   contained in Proofpoint's Preliminary Election.  Dkt. Nos. 98, 139.

13          If Proofpoint is permitted to rely on these new invalidity theories in its Final Election and

14   disregard the Scheduling Order requirements, Finjan would be materially prejudiced at this stage in the

15   proceedings.  Another District Court in Northern District found that "…the prejudice is substantial"

16   where a party sought to change its invalidity theories in its Preliminary Election, noting that

17   "infringement cases get framed by invalidity cases."  Kobialka Decl., Ex. 10 (Jan. 13, 2015 Hearing

18   Tr. at 18:19-25, *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. C-13-03999 BLF, N.D. Cal.).  Here, Finjan

19   relied on Proofpoint's Preliminary Election to develop its infringement strategies.  Finjan focused its

20   discovery efforts on specific invalidity theories and based its identification of specific claims in its

21   Final Election of Asserted Claims, in part, on Proofpoint's Preliminary Election.  Allowing Proofpoint

22   to add new invalidity theories beyond what was disclosed in its Preliminary Election grants Proofpoint

23   a significant advantage, since Finjan identified a narrowed list of claims it was asserting based upon

24   Proofpoint's Preliminary Election and in reliance upon the Court's Scheduling Order.

25          Proofpoint should not be able to undermine the purpose of requiring the parties to narrow the

26   asserted claims and invalidity theories by permitting it to present, after the close of discovery, new

27

28

                                                         8

FINJAN'S MOTION TO STRIKE INVALIDITY THEORIES          Case No. 13-CV-05808-HSG
NOT DISCLOSED IN PRELIM. ELECTION

invalidity theories that were not in its Preliminary Election.  Indeed, if a party could not rely upon the asserted claims and prior art in the parties' respective election, the parties would not be able to focus the infringement and invalidity theories during discovery and in preparing for expert reports and trial.  Furthermore, the parties would not have any certainty that the case would be limited to the claims and invalidity theories identified in the parties' respective preliminary elections of asserted patent claims and invalidity theories, unless a party sought leave to amend the case schedule.  If Finjan sought to assert new claims in its Final Election of Claims, Proofpoint would certainly have objected to such a disclosure.

Moreover, Proofpoint's improper Amended Preliminary Election is unreliable because Proofpoint's Final Election is not a subset of the invalidity theories identified in Proofpoint's purported Amended Preliminary Election.  In fact, the majority of theories Proofpoint included in its Final Election were not included in Proofpoint's improper Amended Preliminary Election.  *See* Kobialka Decl., Ex. 1 (listing the invalidity theories that are in Proofpoint's Final Election that were not in its Preliminary Election).  Proofpoint's actions have left Finjan no choice but to seek to strike Proofpoint's invalidity theories upon receipt of Proofpoint's Final Election to avoid being unduly prejudiced.

Proofpoint should not be permitted to keep expanding and changing its invalidity theories which are not a "subset" of the theories disclosed in its Preliminary Election.  For example, in Proofpoint's Final Election, Proofpoint added new references to its obviousness invalidity theories and mixed and matched references into different and new obviousness combinations[3] that were not from its Preliminary Election or improper Amended Preliminary Election.  Such actions cause substantial prejudice to Finjan.

---

[3]  The Court's Order on Narrowing was explicit that a combination of references was one obviousness combination.  For example, a combination of six references did not give Proofpoint the option of selecting three or four of the references identified in that combination.  All six references were required to be used for the invalidity theory.  Dkt. 98.

### C.      Proofpoint Lacks Good Cause To Modify The Court's Scheduling Order At This Late Stage In The Proceedings

A scheduling order may only be modified for good cause and with the Court's consent.  Fed. R. Civ. P. 16(b)(4); *Johnson*, 975 F.2d at 608 (a scheduling order can be modified by the parties only on showing of good cause by demonstrating diligence).  Here, Proofpoint has failed act diligently, such that there is no good cause after the close of discovery and in the middle of expert discovery to amend the Schedule.  There was no new information discovered recently during discovery that suggests Proofpoint had good cause for adding new invalidity theories in its September 23rd Final Election.  *See* Kobialka Decl., Ex. 10 (Jan. 13, 2015 Hearing Tr. at 18:19-25, *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. C-13-03999 BLF, N.D. Cal)  Proofpoint refused to seek leave to amend the Schedule, despite Finjan's requests that it do so.  *See*, *e.g.*, Kobialka Decl., Ex. 8; *id.*, Ex. 11 (July 21, 2015 Letter).  Proofpoint's "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609 (citations omitted).

Proofpoint's service of amended invalidity contentions on June 8, 2015, does not permit Proofpoint to unilaterally elect new invalidity theories.  First, the Preliminary Election was never tied to Proofpoint's service of invalidity contentions; rather, the Preliminary Election was based on a date certain.  There was no reason to expect that Proofpoint would be permitted to make this amendment without seeking permission from the Court.  In fact, it came as a complete surprise to Finjan when Proofpoint served its improper Amended Preliminary Election three weeks after it had served its amended invalidity contentions.

Finally, the existence of prejudice to Finjan, while not necessary for finding that no good cause exists, is further grounds for finding that Proofpoint has no good cause to seek to modify the Court's Scheduling Order.  *See Johnson*, 975 F.2d at 609 (if the party was not diligent, the court need not consider prejudice to the opposing party.).  For the foregoing reasons, Finjan's motion to strike the 20 invalidity theories in Proofpoint's Final Election that were not from its Preliminary Election, as set forth in Exhibit 1 to the Kobialka Declaration, should be granted.

**IV.    CONCLUSION**

For the foregoing reasons, Finjan respectfully requests that the Court strike Proofpoint's invalidity theories that were not properly disclosed in compliance with the Schedule governing this case.

Respectfully submitted,

DATED:  October 7, 2015          By:  */s/ Lisa Kobialka*
                                        Paul J. Andre (State Bar. No. 196585)
                                        Lisa Kobialka (State Bar No. 191404)
                                        James Hannah (State Bar No. 237978)
                                        Hannah Lee (State Bar No. 253197)
                                        KRAMER LEVIN NAFTALIS
                                          & FRANKEL LLP
                                        990 Marsh Road
                                        Menlo Park, CA  94025
                                        Telephone: (650) 752-1700
                                        Facsimile: (650) 752-1800
                                        pandre@kramerlevin.com
                                        lkobialka@kramerlevin.com
                                        jhannah@kramerlevin.com
                                        hlee@kramerlevin.com

                                        *Attorneys for Plaintiff*
                                        FINJAN, INC.

11