UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PROOFPOINT, INC. and ARMORIZE TECHNOLOGIES, INC.,<br><br>　　　　Defendants. | Case No.  3:13-cv-05808-HSG (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 4**<br><br>Re: Dkt. No. 183 |

　　　　Plaintiff Finjan, Inc. (Finjan) sues for alleged infringement of patents pertaining to internet security.  In Discovery Dispute Joint Report (DDJR) No. 4, Finjan seeks an order compelling defendants to provide supplemental responses to Interrogatories 4 and 5 and to produce additional documents in response to Requests for Production 14, 21, and 112.  The matter is deemed suitable for determination without oral argument.  Civ. L.R. 7-1(b).  Upon consideration of the parties' respective positions, this court grants Finjan's request in part and denies it in part.

　　　　The discovery requests at issue seek sales and revenue information for the accused products as follows:

　　　　Interrogatory 4:　　　"Describe in detail the revenue, sales, pricing, costs, gross profits, net profits, and market share of each of the accused instrumentalities from the year 2013 to the present, including but not limited to identifying on a monthly, quarterly, and annual basis the gross and net revenues and gross and net profits generated by each of the accused instrumentalities, as well as the costs and expenses incurred by [defendants] in generating such revenue and profits."

Interrogatory 5:     "From the filing date of the Complaint to the present, separately identify the number of software subscriptions, appliances, licenses, seats, and upgrades for each release or version of the Accused Instrumentalities and the sales price and revenues associated with those subscriptions, appliance, licenses, seats and upgrades."

Request for Production 14:   "All documents, communications, or things relating to any sales or revenue generated from each of the accused instrumentalities from the year 2013 to the present."

Request for Production 21:   "Summaries of the revenue, sales, pricing, costs, gross profits, net profits, and market share of each of the accused instrumentalities from the year 2013 to the present."

Request for Production 112:   "Documents sufficient to show the number of accused instrumentalities sold from year 2013 to the present."

The present discovery dispute arises from the following chronology of events:

On January 15, 2015, defendants produced financial information re the accused products for 2008 through the third quarter of 2014, which they say was the most current information available at that time. This production included bookings data and general ledger data, and defendants represent that this information comprises the entirety of the data kept for sales and revenues of the accused products, including the Proofpoint Enterprise Protection (PEP) product. That same day, defendants supplemented their responses to Interrogatories 4 and 5 by identifying the production numbers of the general ledger spreadsheets produced to plaintiff, stating that responsive information may be ascertained from those documents.

On August 7, 2015, defendants further supplemented their interrogatory responses to include a reference to their SEC filings, as well as a chart defining 26 descriptions and acronyms in the produced financial spreadsheets.

On August 21, 2015, defendants say they produced updated bookings information for the last three quarters.

On August 25, 2015, Finjan deposed Paul Auvil, defendants' Chief Financial Officer and Fed. R. Civ. P. 30(b)(6) witness on financial information.

On September 2, 2015, defendants supplemented their interrogatory responses again, this time citing the updated bookings documents produced on August 21 and incorporating by reference Auvil's deposition testimony.

2

Defendants say that they recently discovered that a single line item for a non-accused functionality in PEP inadvertently was left out of their prior production. Defendants represent that this information will have been produced to plaintiff by September 25, 2015 (i.e., the day after this DDJR was filed).

Finjan now argues that defendants' interrogatory responses are deficient because the referenced spreadsheets contain information that plaintiff does not understand and which can only be explained by defendants. Plaintiff also claims that defendants have not identified the number of subscriptions sold in response to Interrogatory 5. As for documents, Finjan says that defendants agreed to produce updated general ledger data for the last three quarters, but still have not done so. Additionally, Finjan believes that defendants have withheld certain revenue information. It says this is so because data in defendants' general ledger documents is inconsistent with information reported to the SEC and information contained in an investor presentation.

Defendants maintain that they have provided sufficient information for plaintiff to properly review and analyze their spreadsheets. They further contend that plaintiff's assertions about inconsistencies in their financial documents are unsubstantiated and misguided and that, other than the previously omitted PEP data and the agreed-upon updated general ledger data, defendants have provided Finjan with their public filings and internal financial data and reporting for all accused products.

### A.     Interrogatories 4 and 5

Fed. R. Civ. P. 33(d) permits a party to respond to an interrogatory by referring to business records only "if the burden of deriving or ascertaining the answer will be substantially the same for either party . . .." Fed. R. Civ. P. 33(d). "A requesting party claiming an inappropriate use of Rule 33(d) must make a prima facie showing that the use of Rule 33(d) is somehow inadequate, whether because the information is not fully contained in the documents or because it is too difficult to extract." Cefalu v. Holder, No. 12-0303 TEH (JSC), 2013 WL 4102160 at *3 (N.D. Cal., Aug. 12, 2013) (citing RSI Corp. v. Int'l Bus. Machines Corp., No. 08-CV-3414, 2012 WL 3095396, at *1 (N.D.Cal. July 30, 2012)). "The burden then shifts to the responding party to show that '(1) a review of the documents will actually reveal answers to the interrogatories; and (2) the

3

1   burden of deriving the answer is substantially the same for the party serving the interrogatory as
2   for the party served.'" Id. (quoting RSI Corp., 2012 WL 3095396, at *1).

3         Plaintiff claims that it cannot tell how the information contained in the spreadsheets is
4   responsive (if at all) to Interrogatories 4 and 5, but its arguments ring hollow in view of the
5   opportunity for discovery that Finjan has had with respect to these matters.  Indeed, defendants say
6   that up until September 24, when Finjan sent a new draft of its portion of this DDJR, Finjan had
7   not identified a single description in the documents it did not understand, and did not mention any
8   actual discrepancy in defendants' financial data, which now form the basis for relief.  Finjan
9   argues that defendants' assertion is "disingenuous," but Finjan does not refute that, during meet-
10  and-confer negotiations, it did not specify the deficiencies now being alleged in the DDJR.  Finjan
11  says only that during negotiations, it told defendants "that there were numerous columns in the
12  spreadsheets including some with 'highlighting,' and did not know how those were responsive to
13  Finjan's Interrogatories."  (DDJR 4 at 5 n.2).  Moreover, plaintiff has had the referenced
14  spreadsheets since January 2015.  Finjan does not argue that it didn't have a full and fair
15  opportunity to examine Auvil about the financial information produced by defendants.  Nor does
16  plaintiff contend that Auvil was unprepared or not knowledgeable.  Plaintiff emphasizes that the
17  spreadsheets contain over 100 columns of information.  Even so, to the extent plaintiff claims that
18  it cannot understand the information presented in them, this court wonders why Finjan waited until
19  September 24, after the close of fact discovery, to specify the items Finjan believes require
20  clarification.

21        Nevertheless, this court will grant Finjan's request for further clarification as to the
22  following items:   Within 3 days from the date of this order, defendants' shall serve a further
23  supplemental interrogatory response that (1) states whether the spreadsheet data represents final
24  data or data that was offered to customers; and (2) explains what the following column headers
25  mean:  "Booked Booked Count," "Total Contract Value," "Total Order (Amount)," "Accounting
26  Done," and "Invoice Total."  Finjan's request for further discovery as to Interrogatories 4 and 5 is
27  otherwise denied.
28

### B. Requests for Production 14, 21, and 112

Based on defendants' representations, this court assumes that the omitted data re the PEP non-accused functionality was produced by September 25. If not, defendants shall produce that information forthwith.

To the extent defendants have not already produced the updated general ledger data for the past three quarters that they indisputably agreed to provide, those documents shall be produced forthwith, and in any event, no later than 3 days from the date of this court's order.

As discussed above, the remainder of this dispute concerns Finjan's belief that defendants have withheld responsive data, based on inconsistencies Finjan says it has found between defendants' general ledger data and information in an investor presentation and in defendants' SEC filings.[1] Plaintiff now requests an order requiring defendants to produce its general ledger spreadsheets for all products, including non-accused products, so that it can determine defendants' revenues for itself.

Plaintiff's arguments re the investor report are unavailing. Defendants say that the presentation shows "annual recurring revenue," whereas the general ledger spreadsheets record recognized revenue in accordance with Generally Accepted Accounting Principles. In other words, defendants argue that Finjan erroneously is comparing apples to oranges. And, indeed, plaintiff has not explained why the general ledger data and the information presented to investors properly are comparable.

As for the alleged discrepancies between the general ledger spreadsheets and defendants' SEC reports, Finjan says that the information should be consistent because Auvil testified in deposition that the general ledger data was used to report revenues to the SEC. Finjan claims that, for some quarters, the numbers produced by defendants differ by as much as 70% compared to defendants' publicly reported information. Defendants say that they are investigating these matters, but remain skeptical of plaintiff's analysis because Finjan has not explained where it got

---

[1] Finjan also argues that "Defendants agreed to provide written confirmation of the authenticity and time periods for documents that their 30(b)(6) witness could not testify to, but have failed to do so." (DDJR 4, p. 6). This statement comes out of left field, and it is not clear that this matter has anything to do with the documents requests at issue. Nevertheless, if defendants agreed to provide this information, they should do so forthwith.

5

1  its numbers or how those figures were calculated.  They represent that they have provided Finjan
2  with their public filings, internal financial data and reporting for all accused product revenue.  On
3  this record, plaintiff has not managed to persuade that these alleged deficiencies warrant
4  production of defendants' general ledger data for all products, including non-accused ones.
5  Plaintiff's request for an order compelling that production is denied.  Nevertheless, the court will
6  require defendants to provide plaintiff with declaration(s) from appropriate person(s) attesting that
7  defendants conducted a diligent search and reasonable investigation and have produced all non-
8  privileged documents responsive to Requests 14, 21, and 112.

   SO ORDERED.

Dated:   October 21, 2015



HOWARD R. LLOYD
United States Magistrate Judge

3:13-cv-05808-HSG Notice has been electronically mailed to:

Benu C. Wells     bwells@kramerlevin.com

Cristina Lynn Martinez     cmartinez@kramerlevin.com

David Morad Elihu     davidelihu@quinnemanuel.com, marthaherrera@quinnemanuel.com

Grant Nicholas Margeson     grantmargeson@quinnemanuel.com

Hannah Yunkyung Lee     hlee@kramerlevin.com, svdocketing@kramerlevin.com

Iman Lordgooei     imanlordgooei@quinnemanuel.com, kathleencorey@quinnemanuel.com, lorenaalfaro@quinnemanuel.com

James R. Hannah     jhannah@kramerlevin.com, svdocketing@kramerlevin.com

Jennifer A. Kash     jenniferkash@quinnemanuel.com, terririvers@quinnemanuel.com

Lisa Kobialka     lkobialka@kramerlevin.com, svdocketing@kramerlevin.com

Paul J. Andre     pandre@kramerlevin.com, svdocketing@kramerlevin.com

Sam Stephen Stake     samstake@quinnemanuel.com, christinamunoz@quinnemanuel.com, laurenhillemann@quinnemanuel.com

Sean Sang-Chul Pak     seanpak@quinnemanuel.com, susanneglobig@quinnemanuel.com