QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jennifer A. Kash (Bar No. 203679)
  (jenniferkash@quinnemanuel.com)
  Sean Pak (Bar No. 219032)
  (seanpak@quinnemanuel.com)
  Iman Lordgooei (Bar No. 251320)
  (imanlordgooei@quinnemanuel.com)
  Sam Stake (Bar No. 257916)
  (samstake@quinnemanuel.com)
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for Defendants PROOFPOINT, INC.
and ARMORIZE TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., | Case No. 3:13-CV-05808-HSG |
| Plaintiff, | **PROOFPOINT, INC. AND ARMORIZE TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF FINJAN, INC.'S EXPERT REPORTS** |
| vs. | |
| PROOFPOINT, INC. AND ARMORIZE TECHNOLOGIES, INC., | **Date:     December 17, 2015**<br>**Time:     2:00 p.m.**<br>**Dep.:     Courtroom 15, 18th Floor**<br>**Judge:   Hon. Haywood S. Gilliam** |
| Defendants. | **[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................ 1

STATEMENT OF RELIEF SOUGHT ..................................................................... 1

STATEMENT OF THE ISSUES ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

I.      INTRODUCTION ........................................................................................ 2

II.     STATEMENT OF FACTS ........................................................................... 4

        A.      Finjan's Asserted Patents ................................................................ 4

        B.      Finjan Fails to Provide Sufficient Infringement Contentions .......... 5

        C.      Proofpoint Conducts Extensive Discovery ..................................... 7

        D.      Finjan Serves Expert Reports Disclosing Newly Accused Products and
                Theories of Infringement .................................................................. 8

III.    LEGAL STANDARD ................................................................................. 8

IV.     ARGUMENT ............................................................................................... 9

        A.      Dr. Cole and Dr. Mitzenmacher's New Identification of Accused Products
                Is Improper ....................................................................................... 9

        B.      Dr. Layne-Farrar Should Not Be Permitted To Rely on Previously
                Undisclosed Infringement Theories and Accused Products ............ 12

        C.      Dr. Cole and Dr. Mitzenmacher's Disclosure of Previously Undisclosed
                Infringement Theories in Their Expert Reports Is Improper ............ 13

        D.      Dr. Medvidovic's Should Not Be Permitted To Rely on Previously
                Undisclosed Infringement Theories .................................................. 23

        E.      Proofpoint Has Been Unfairly Prejudiced by Finjan's Late Disclosure of
                Infringement Theories ....................................................................... 24

V.      CONCLUSION ........................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*ASUS Computer Int'l v. Round Rock Research, LLC,*
  No. 12–cv–02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ................9, 11, 21

*Apple Inc. v. Samsung Elecs. Co.,*
  No.: 5:12-cv-0630-LHK-PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014)................................9

*Bender v. Advanced Micro Devices, Inc.,*
  No. C–09–1149 MMC (EMC), 2010 WL 363341 (N.D. Cal. Feb. 1, 2010) .............................9

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
  No. 13-cv-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ................................9, 24

*Finjan, Inc. v. Sophos, Inc.,*
  No. 14-cv-01197-WHO, 2015 WL 5012679 (N.D. Cal. Aug. 24, 2015)...................................8

*O2 Micro Intern. Ltd. v. Monolithic    Power Sys., Inc.,*
  467 F.3d 1355 (Fed. Cir. 2006) ...............................................................................................3

*Thought, Inc. v. Oracle Corp.,*
  No. 12-cv-05601-WHO, 2015 U.S. Dist. LEXIS 137113 (N.D. Cal. Oct. 7, 2015)...................2

### **Statutes**

Patent L.R. 3-1(b) .................................................................................................................8, 21

Patent L.R. 3-1(c) .....................................................................................................................2, 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on December 17, 2015 at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-titled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Proofpoint, Inc. and Armorize Technologies, Inc. (collectively "Proofpoint") will and hereby do move the Court for an Order striking the portions of expert reports served by Plaintiff Finjan, Inc. ("Finjan").   This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Sam Stake, filed herewith, the pleadings and papers on file herein, and any evidence and argument presented to the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

Proofpoint seeks an Order from the Court striking those portions of Finjan's expert reports that rely on theories that Finjan failed to disclose in its initial and supplemental infringement contentions.

## STATEMENT OF THE ISSUES

Whether the Court should strike the infringement theories in Finjan's expert reports that Finjan failed to disclose in its initial and supplemental infringement contentions.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Proofpoint seeks an Order from the Court striking portions of Finjan's technical and damages expert reports that identify newly accused products and infringement theories.   Finjan has no excuse for these belated disclosures, and Proofpoint has been substantially prejudiced by Finjan's improper attempts to expand the case in violation of this Court's Local Rules and deadlines.

Finjan filed this case in December 2013 and, after it failed to provide more than boilerplate infringement theories in April 2014, had its initial infringement contentions struck by the Court. Finjan was forced to serve supplemental contentions in April 2015.   Dkt. 138.   Based on these initial and supplemental contentions, Proofpoint has prepared their defenses and counterclaims, propounded written discovery, developed invalidity theories, proposed and pursued claim constructions, and taken depositions.

Now, after the close of fact discovery, Finjan has identified and relied on newly accused products and infringement theories in its infringement and damages expert reports.    This District disfavors this shifting sands approach to patent litigation.   *See* Patent L.R. 3-1(c) (The infringement contentions shall "identify[] *specifically* where each limitation of each asserted claim is found within each Accused Instrumentality") (emphasis added); *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 U.S. Dist. LEXIS 137113 at *8-9 (N.D. Cal. Oct. 7, 2015) ("The patent local rules were designed to require parties to crystallize their theories of infringement early in litigation, and to adhere to such theories . . . . [T]he philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction.") (citations omitted) (internal quotation marks omitted).

In particular, Finjan disclosed several new theories in its expert reports that were never disclosed during fact discovery, including:

- ***'086, '154 and '918 Patents.***   Finjan asserted, for the first time, the '086, '154, and '918 patents against three products: Targeted Attack Protection ("TAP"), Essentials and Enterprise Protection.

- **'154 Patent.**  Finjan for the first time asserted infringement theories regarding the '154 patent regarding URL Rewriting, the URL Blacklist, and the "██████████"

- **'086 Patent.**  Finjan for the first time alleges that Armorize Forensic Reporting Methodology ("AFRM") Reports meet limitations of the '086 patent because they include both a downloadable and a representation of the downloadable security profile data.  Finjan also for the first time alleges that the ████████ analysis engine generates a list of suspicious operations;

- **'305 and '408 Patents.**  Finjan for the first time alleged that the ████████ performs tokenization, that the ████████ includes a database of parser and analyzer rules, and that AFRM Reports are themselves parse trees;

- **'918 Patent.**  Finjan for the first time alleged theories regarding the asserted claims' "computer accounts" and "client computer," including by pointing to ████████████████████████ in the Armorize backend;

- **'844 Patent.**  Finjan's expert reports identified new theories of how Proofpoint's products practice the "generating a Downloadable security profile" and "linking the security profile to the Downloadable" limitations of the '844 patent, now alleging that specific components—including the ████████ and Thread Dashboard—practice these elements;

- **'822 and '633 Patents.**  Finjan for the first time identifies new infringement targets relating to "mobile protection code" and determining whether downloadable-information includes executable code.

In correspondence with between parties, Finjan has attempted to justify the inclusion of these newly accused products and infringement theories by pointing the finger at Proofpoint's production of additional documents after Finjan served its supplemental infringement contentions. However, "[i]f the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation."  *O2 Micro Intern. Ltd. v. Monolithic*

*Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).   At no point the productions that Finjan points to has Finjan attempted to supplement its infringement theories.   In any vent, there is no justification for Finjan's delay in asserting these new infringement theories—Finjan has had access to the relevant source code for the accused products *since June 9, 2014*.

Finjan has had since December 2013 to identify all newly accused products and infringement theories.   At every turn in this litigation, Finjan has failed to do so.   The Court should grant Proofpoint's latest motion to strike.

## II.   STATEMENT OF FACTS

### A.   Finjan's Asserted Patents

Finjan filed the Complaint on December 16, 2013 alleging infringement of the eight patents it asserts against Proofpoint:   U.S. Patent No. 8,079,086 ("the '086 Patent"), U.S. Patent No. 7,975,305 ("the '305 Patent"), U.S. Patent No. 8,225,408 ("the '408 Patent"), U.S. Patent No. 8,141,154 ("the '154 Patent"), U.S. Patent No. 6,154,844 ("the '844 Patent"), U.S. Patent No. 7,058,822 ("the '822 Patent"), U.S. Patent No. 7,647,633 ("the '633 Patent"), and U.S. Patent No. 7,613,918 ("the '918 Patent").   Dkt. No. 1.

The asserted patents allegedly disclose the following:

- The '844 patent allegedly covers receiving a Downloadable, developing a Downloadable security profile for the Downloadable, and linking that profile to the Downloadable before the Downloadable is made available to a web client;

- The '086 patent, which is similar to the '844 patent, allegedly covers developing a security profile for incoming content and appending it to the incoming content;

- The '305 patent and '408 patents are related.   The '305 patent purports to cover using a rule system to scan incoming content to determine whether it is malicious and a way for updating that rule system.   The '408 patent allegedly covers scanning an incoming stream of content dynamically using analyzer rules and a parse tree;

- The '154 patent purports to cover determining whether it is safe to invoke a second function by processing a first function;

- The '822 and '633 patents are related.   These patents purport to cover determining if code is executable and then determining whether that executable code has certain malicious attributes through the use of mobile protection code;

- The '918 patent allegedly covers generating a profile for content intended for downloading by a client computer, and using that profile to determine which client computer account and under which security context the code may be processed.

Finjan is currently asserting 24 claims from these eight patents.   Ex. A.[1]

**B.    Finjan Fails to Provide Sufficient Infringement Contentions**

On April 17, 2014, Finjan served its initial infringement contentions.   Ex. B.   Finjan did not accuse Targeted Attack Protection, Enterprise Protection, or Essentials of infringing the '086, '154, and '918 patents, even though it asserted other patents against those products.   *Id.* at 5-9. Because the contentions did not comply with the District's Patent Local Rules (*see* Dkt. No. 138), Proofpoint notified Finjan of the deficiencies and described why Finjan had failed to meet the Local Rules' requirements (*see* Dkt. No. 118 at 5).   Finjan, however, refused to supplement its contentions.   *See* Dkt. No. 118.

Proofpoint made a source code laptop, containing the relevant source code in the action, available for Finjan's inspection on June 9, 2014.   Ex. C.   Finjan inspected the source code for the first time in October 2014, over three months after it was first made available.   *See* Dkt. 157-2 at 2.   Despite having source code available to it for months, and despite numerous specific requests from Proofpoint to disclose its theories of infringement, Finjan refused to supplement its infringement contentions or interrogatory responses.   *See* Dkt. No. 118 at 5.

In a joint discovery dispute letter before Magistrate Judge Lloyd, Proofpoint requested a supplemental response to Proofpoint's Interrogatory No. 1 that disclosed Finjan's theories of infringement.   *See* Dkt. No. 109; Dkt. No. 115 at 1.   Magistrate Judge Lloyd ordered Finjan to "supplement its response to Proofpoint's Interrogatory No. 1 to disclose 'what in each accused

---

[1]   All citations to "Ex." refer to exhibits attached to the Declaration of Sam Stake, which is being filed concurrently herewith.

instrumentality it contends practices each and every limitation of each asserted claim,' and to provide a comparison of each accused product to the asserted patents on a claim by claim, element by element basis."   Dkt. No. 115 at 6.

In spite of Magistrate Judge Lloyd's Order, Finjan supplemented its response to Proofpoint's Interrogatory by merely reproducing its same deficient infringement contentions (already found lacking) and providing no new information.   Dkt. No. 118 at 6; *see also* Dkt. No. 118-2 (comparing a portion of Finjan's supplemental interrogatory response with Finjan's initial infringement contentions).   Proofpoint had "also produced over 260 technical documents related to the Armorize Products and internal 'wiki' documentation for the Proofpoint Products amounting to over 3,300 pages."   Dkt. No. 127 at 12.   Given Finjan's refusal to supplement its infringement contentions or interrogatory responses to provide its infringement theories, Proofpoint filed a motion to strike Finjan's infringement contentions.   *See* Dkt. No. 118.

On April 2, 2015, the Court issued an opinion detailing the deficiencies in Finjan's contentions.   The Court recognized that Finjan ***failed to include*** "sufficient detail to provide notice of its theory of infringement[.]"   Dkt. No. 138 at 10.   The Court found Finjan's infringement contentions did not comply with the Patent Local Rules, and ordered Finjan to provide amended infringement contentions within 21 days.   *Id.* at 10, 16, 20.   The Court also struck Finjan's improper attempt to group products, noting that Finjan would have to "***move the Court to add new potentially infringing products to its contentions upon a showing of good cause***[.]"   *Id.* at 9 (emphasis added).

Between the Court's order and Finjan's service of supplemental infringement contentions, Finjan did not review Proofpoint's source code.   *See* Dkt. 157-2 at 2.   On April 23, 2015, Finjan served supplemental contentions that failed to identify specific source code, rules, routines, or back-end elements within Proofpoint's products that allegedly meet the asserted claim limitations (instead listing high-level source code directories with no further explanation of how they support its infringement theories).   *See* Dkt. No. 149.   Proofpoint moved to strike these source code citations from Finjan's infringement contentions on May 18, 2015 (Dkt. 149), and this motion is still pending before this Court (Dkt. No. 171).   With respect to the '086, '154, and '918 patents,

these contentions did not identify TAP, Proofpoint Enterprise Protection, or Proofpoint Essentials as accused products, but instead only asserted those patents against HackAlert and Malvertising Protection.   With respect to the five other patents, however, Finjan *did* identify TAP, Enterprise Protection, and Proofpoint Essentials as accused products.   Dkt. No. 149; Ex. D at 3-4.

On May 18, 2015 Proofpoint moved to strike Finjan's deficient citations to source code from its supplemental infringement contentions.   Dkt. No. 149.   This motion is still pending before this Court.

### C.   Proofpoint Conducts Extensive Discovery

Proofpoint has developed its defenses and counterclaims against Finjan while remaining largely in the dark about Finjan's infringement contentions.   *See* Dkt. Nos. 118, 149 (Proofpoint's motions seeking to strike Finjan's infringement contentions).   Based on Finjan's limited disclosure of infringement theories to date, Proofpoint conducted extensive fact discovery and participated in claim construction proceedings before the Court, including a technology tutorial on June 2, and *Markman* hearing on June 24.   *See* Dkt. Nos. 117, 143, 152, 163.   In August, Proofpoint flew counsel to Israel to take the depositions of two named inventors (Shlomo Touboul and Yuval Ben-Itzhak), and conducted a deposition of a third named inventor in Austin, Texas in early September.   Stake Decl. ¶ 14.   Proofpoint also propounded written discovery, responded to Finjan's written discovery, pursued third party discovery, and evaluated the parties' document productions in reliance on Finjan's infringement contentions.   *Id.*   Proofpoint also served amended invalidity contentions and an amended election of prior art based on Finjan's discernable infringement theories.   *Id.; see also* Dkt. No. 141 at 4 (Proofpoint "may supplement their invalidity contentions by June 8, 2015 to the extent that Finjan's Amended Infringement Contentions provide new or different interpretation of the asserted claims.").

**D.     Finjan Serves Expert Reports Disclosing Newly Accused Products and Theories of Infringement**

On October 14, 2015, Finjan served expert reports identifying previously un-accused products and new theories of infringement.   Stake Decl. ¶ 9.   These reports included the infringement expert reports of Dr. Cole and Dr. Mitzenmacher as to the asserted patents, the expert report of Dr. Medvidovic on the "value" of the patents that relies on these reports, and the damages expert report from Dr. Layne-Farrar.   *See* Exs. F, G, H, S.   Dr. Layne-Farrar submitted an expert report identified an inflated royalty base and damages number based in part on the previously un-accused products.   In particular, with respect to Method 1 of her damages analysis, she asserted over ▮▮▮▮▮▮ of damages based on the '086, '154, and '918 patents for the sale of TAP, even though TAP was not previously identified as an accused product for those patents. Her damages numbers for Methods 2 and 3 were inflated by over ▮▮▮▮▮ and ▮▮▮▮▮, respectively, based on newly accused products.

On October 30, 2015, Proofpoint notified Finjan in a detailed letter that its expert reports impermissibly relied on theories of infringement that were undisclosed during fact discovery, and requested a meet and confer.   Ex. I.   Finjan responded on November 9 (Ex. J), after the parties had met and conferred on the issue.

## III.     <u>LEGAL STANDARD</u>

Patent Local Rule 3-1 requires a patentee to, *inter alia*, provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality[.]"   Patent L.R. 3-1(c).   The identification of the accused instrumentality "shall be as specific as possible."   Patent L.R. 3-1(b).

The Rule requires that these contentions disclose an infringement theory with a "degree of specificity . . . to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement, and to raise a reasonable inference that all accused products infringe." *Finjan, Inc. v. Sophos, Inc.*, No. 14–cv–01197–WHO, 2015 WL 5012679, at *1 (N.D. Cal. Aug. 24, 2015) (internal quotation marks omitted) (citing *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010)).   "The purpose underlying

1  Rule 3–1 is to require the party claiming infringement to crystallize its theories of the case early in

2  the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices,*

3  *Inc.*, No. C–09–1149 MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010).

4       Given the Patent Local Rules' disclosure requirements, "a party ***may not use an expert***

5  ***report to introduce new infringement theories***[.]"    *ASUS Computer Int'l v. Round Rock*

6  *Research, LLC*, No. 12–cv–02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014)

7  (emphasis added).    Expert reports and infringement contentions are not "coextensive," but rather

8  the key question is:    "[H]as the expert permissibly specified the application of a disclosed theory,

9  or has the expert impermissibly substituted a new theory altogether?"    *Apple Inc. v. Samsung*

10  *Elecs. Co.*, No.: 5:12–cv–0630–LHK–PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014).

11       Whenever a "new theory [i]s identified for the first time after the close of fact discovery,

12  prejudice to Defendant is inherent."    *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13–cv–03999–BLF,

13  2015 WL 3640694, at *4 (N.D. Cal. June 11, 2015) (granting, in part, the defendant's motion to

14  strike Finjan's infringement theories).    Thus, expert reports that put forward new theories of

15  infringement are stricken.    *See id.; see also ASUS Computer Int'l,* 2014 WL 1463609, at *1.

16  **IV.    ARGUMENT**

17       Finjan's attempted ambush of Proofpoint with expert reports disclosing newly accused

18  products and infringement theories is improper, and these opinions must be stricken.    *See ASUS*

19  *Computer Int'l*, 2014 WL 1463609, at *1, *6.

20       **A.    Dr. Cole and Dr. Mitzenmacher's Identification of Additional Accused**

21            **Products Is Improper**

22       For the first time in its expert reports, Finjan accused Proofpoint's TAP, Enterprise

23  Protection, and Essentials products of infringing the '086, '154, and '918 patents, and has

24  attempted to use these additional allegations to inflate its damages demand.    These belated

25  assertions against new products are contrary to the Patent Local Rules, and should be stricken.

26            *1.    Finjan Never Accused TAP, Enterprise Protection, or Essentials of*
              *Infringing the '086, '154, and '918 Patents*

27

28

1    In its initial infringement contentions of April 17, 2014, Finjan did not accuse Targeted

2  Attack Protection ("TAP"), Enterprise Protection, or Essentials of infringing the '086, '918, and

3  '154 patents, and did not provide claim charts for these products with respect to those patents.

4  *See* Ex. B at 8.   Likewise, Finjan's supplemental infringement contentions of April 2014 accused

5  only HackAlert and Malvertising Protection (previously referred to as SafeImpressions) of

6  infringing the '086, '918, and '154 patents, whereas it only accused TAP, Enterprise Protection,

7  and Essentials of infringing other patents in this case.    Ex. D at 3-4.

8    Confirming that TAP, Enterprise Protection, and Essentials were not accused for these

9  patents, Finjan provided separate claim charts for TAP, Enterprise Protection, and Essentials as it

10  relates to the '844, '822, '633, '305, and '408 patents.    *Id.*   As to the '086, '154, and '918

11  patents, however, Finjan only provided claim charts relating to HackAlert and Malvertising

12  Protection.[2]   *Id.*   Finjan provided no notice that it was asserting these products against TAP,

13  Enterprise Protection, and Essentials.

14    Despite this, Dr. Mitzenmacher asserted that TAP, Enterprise Protection, and Essentials

15  infringe the '086 and '154 patents, and Dr. Cole opines that these products infringe the '918

16  patent. *See, e.g.*, Ex. G (10/14/2015 Mitzenmacher Report) ¶¶ 22-23, 24-25, 827-831, 833-35,

17  1033, 1035, 1037-39; *id.* at 837 (for the '086 patent, stating that "this element is met by Accused

18  Products including TAP"); *id.* at 838 (same); *id.* at 839 ("this element is met by Accused Products

19  including TAP and URL Defense");   *id.* at 1041 (for the '154 patent stating that "this element is

20  met by Accused Products including TAP"); *id.* at 1042-43 (same);   Ex. F (10/14/2015 Cole

21  Report) ¶¶ 22, 23, 1995, 1997, 2000-04, 2006-08, 2014-16; *id.* at 2009 ("[T]his element is met by

22  the Accused Products including Proofpoint Enterprise products and TAP.").

23    The Court should strike Finjan's assertion of these three patents against any products other

24  than HackAlert and Malvertising Protection, because these allegations were not properly disclosed

25  in Finjan's supplemental infringement contentions.   Finjan has not provided any reason why it

26  did not accuse TAP, Enterprise Protection, and Essentials in its initial and supplemental

---

27

28    [2]   These charts were also not "combination" claim charts as permitted.

infringement contentions as accused with respect to the '086, '154, and '918 patents, while Finjan did accuse TAP, Enterprise Protection, and Essentials for the other five patents in suit.   As was recently explained by another court in this District:

> The Local Rules place the burden on the patentee to specifically identify accused products for each claim. The Rule requires that ***"[t]his identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known."***   Patent Local R. 3–l(b). RR does not assert that it could not have specifically identified ASUS products it alleges contain DDR3 memory in the initial infringement contentions, which appear for the first time in Taylor and Yurkerwich's expert reports. Although RR argues that identifying the standard was sufficient to put ASUS on notice of the accused products practicing the standard, ***the Local Rules required RR to do the work of identifying those products***.

*ASUS Computer Int'l*, 2014 WL 1463609, at *6 (emphasis added).   Applying the black letter law of this District, Finjan should not be permitted to pursue infringement allegations against TAP, Enterprise Protection, or Essentials as to the '918, '086, and '154 patents.[3]

> ### 2.   *TAP, Enterprise Protection, and Essentials are Separate Products With Different Accused Functionalities From HackAlert*

Finjan's only explanation for its belated identification of TAP, Enterprise Protection, and Essentials as to the '918, '086, and '154 patents is that these products ███████████████ ███████.   Ex. J at 5-6.   This explanation is insufficient to justify Finjan's failure to earlier identify these products.   Here, Finjan points to the inclusion of certain functionalities from the legacy Armorize HackAlert product into ███████████████ TAP.   TAP, Enterprise Protection, and Essentials, however, are separate products, sold separately from HackAlert and Malvertising Protection, and ███████████████████ has evolved since the original incorporation of legacy HackAlert technologies ██████████.   Ex. V at 14-15.

Moreover, the infringement theories now put forward by Dr. Cole and Dr. Mitzenmacher for the '086, '918, and '154 patents are not directed to the Armorize-developed technologies

---

[3]   Finjan's decision to accuse new products during expert discovery is particularly egregious in light of the Court's admonishment to Finjan—in its Order striking Finjan's infringement contentions—for failing to properly identify the products accused in this case.   *See* Dkt. No. 138 at 4-9.

alone, but instead are directed in large part to functionality not developed by Armorize.    It is too late for Finjan to accuse these functionalities, as the infringement theories were not disclosed in Finjan's supplemental infringement contentions.    For example, with respect to the '154 patent, ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████.    Ex. V at 20-21.    Indeed, diagrams cited in Dr. Mitzenmacher's report make these distinctions clear.    *See, e.g.*, Ex. G (10/14/2015 Mitzenmacher Report) ¶¶ 106-107 (describing the "██████████████████████████████████████████" adding that it has "██████████ ███████████████████████████████████████████████████████████████████ █████████████████████████████"'"); *id.* ¶ 1034 (for the '154 patent, excerpting chart which shows that █████████████████████████████████████████████████); *id.* ¶ 1084 (describing ████████ ██████████████████████ as distinct); *id.* ¶ 1087.    Nor is the Threat Dashboard, implicated by Dr. Mitzenmacher and Dr. Cole's infringement theories, part of the ███████████. Ex. V at 17-20.    Until its expert reports, Finjan acknowledged these distinctions, consistently identifying HackAlert separately from TAP, Essentials, and Proofpoint Enterprise Protection.    In particular, the products are identified as separate in Finjan's complaints, initial and supplemental infringement contentions, discovery requests, and 30(b)(6) topics.

In its order striking Finjan's infringement contentions, the Court struck Finjan's improper attempt to include products in its allegations that were not specifically identified in Finjan's infringement contentions, requiring Finjan "to amend its contentions to add products beyond those specifically identified in its initial infringement contentions."    *See* Dkt. No. 138 at 20.    In an end run around the Court's order, Finjan's experts improperly added TAP, Enterprise Protection, and Essentials to their theories of infringement where Finjan previously accused only HackAlert and Malvertising Protection.    All assertions of the '086, '154, and '086 patents relating to products other than HackAlert and Malvertising Protection should be struck.

**B.**    **Dr. Layne-Farrar Should Not Be Permitted To Rely on Previously**

**Unidentified Accused Products and Infringement Theories**

Dr. Layne-Farrar's opinion, relying on Finjan's technical experts, also includes products and functionalities that were not accused of infringement in Finjan's supplemental infringement contentions. *See, e.g.*, Ex. S (10/14/2015 Layne-Farrar Report) at ¶¶ 7, 198, Table 1, Exhibit 7, Exhibits 9-11. Relying on these expanded list of accused products, Dr. Layne-Farrar included TAP sales in her calculation of damages, even though she was only entitled to include damages based on HackAlert and Malvertising Protection sales. This resulted in millions of dollars of additional asserted damages based on the sales of products which were never identified as accused for the '086, '154, and '918 patents prior to October 14, 2015, depending on the damages model used by Dr. Layne-Farrar:

| Damages Model | Damages Based on Newly-Accused Products ($) | | | |
|---|---|---|---|---|
| | '086 Patent | '154 Patent | '918 Patent | Total |
| Method 1 | | | | |
| Method 2 | | | | |
| Method 3 (range) | | | | |

These improper opinions should be stricken. Similarly, as discussed further below in Part C.3, Dr. Layne-Farrar imputes TAP functionality to Enterprise Protection, and thus improperly includes Enterprise Protection revenue in the base for the sale of TAP. These opinions should likewise be struck. *See, e.g.*, Ex. S (Layne-Farrar Report) at ¶ 65 ███████████████ ███████████████████████████████ ██████████████████████ )

**C.    Dr. Cole and Dr. Mitzenmacher's Disclosure of Previously Undisclosed Infringement Theories in Their Expert Reports Is Improper**

   *1.    Dr. Mitzenmacher's New Infringement Theories*

In his expert report, Dr. Mitzenmacher provides infringement opinions on Finjan's '305, '086, '154, and '408 patents. These opinions include multiple previously undisclosed opinions, including that the allegation that rewriting URLs in emails meets limitations in the '154 patent; that an AFRM Report meets limitations of the '086 patent; and that a ██████████ and its disassembly of webpages meets limitations of the '408, '305, and '154 patents.

Finjan failed to properly disclose each of these theories and they should be stricken.

            (a)    <u>The '154 Patent: Finjan's Newly-Disclosed Theories Regarding<br>URL Rewriting and the DOM Parser</u>

Dr. Mitzenmacher's expert report includes the previously undisclosed theory that URL rewriting in emails and the ███████████ are a basis of infringement.

The '154 patent allegedly aids computer security through receiving content with a call including an input, modifying that content (at a gateway) and replacing the call to a function to a substitute function.  '154 patent at abstract.  For the first time in his expert report, Dr. Mitzenmacher alleges that Proofpoint's URL rewriting function forms a part of Finjan's theory of infringement, and specifically as it relates to almost every element of asserted claims 1 and 4. *See e.g.*, Ex. G (10/14/2015 Mitzenmacher Report) ¶ 1087; *see also id.* ¶¶ 1088, 1105.   Dr. Mitzenmacher's opinions relating to the rewriting of URLs contained in email messages was nowhere to be found in Finjan's infringement contentions for the '154 patent, and should be stricken.   *See id* ¶¶ 1088, 1137-39, 1177-78, 1259-60, 1271, 1303-05, 1348-51, 1381-82.

Separately, Dr. Mitzenmacher's expert report repeatedly accuses an "████████████████" of performing a variety of functions, such as "███████████████████████████████████████████████████████████████████" and "██████████████████████████████████████████████████████████████████" *See, e.g., id.* ¶ 1071, 1072; *see also id.* ¶¶ 1068-69, 1071-73, 1136, 1243, 1244, 1246-48, 1302.   Essentially, Dr. Mitzenmacher's report for the first time asserts that the specific HTML web page analysis and █████████████████████████ forms part of the allegedly infringing HackAlert product.   In its response to Proofpoint's discovery letter, Finjan pointed generally to its infringement contentions for HackAlert, but these contentions say **nothing of the sort**, which likely explains why Finjan had to resort to a "*See generally*" citation.   Ex. J.

Finjan's belated allegations relating to the rewriting of emails and the █████████████ were not previously disclosed, and should be struck.

(b)     The '086 Patent: Finjan's New Infringement Theories Involving AFRM and █████

In his expert report, Dr. Mitzenmacher alleges for the first time that: (1) the Armorize Forensic Reporting Methodology ("AFRM") reports, a file generated in Proofpoint's products, meets limitations of the '086 patent because it includes both a Downloadable *and* a representation of the Downloadable security profile; and (2) a static code analysis engine, ████████████, generates a list of suspicious operations.   These are new, previously-undisclosed theories, and should be stricken.

(i)     Dr. Mitzenmacher's New Opinions Regarding AFRM Reports

The '086 patent is directed to receiving an incoming Downloadable; deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable; and transmitting the Downloadable and a representation of the Downloadable security profile data to a destination computer, via a transport protocol transmission.   *See* '086 patent at abstract, claims 17 & 24.   Asserted claims 17 and 24 of the '086 patent include limitations regarding "transmitting the Downloadable and a representation of the Downloadable security profile data to a destination computer, via a transport protocol transmission."   *Id*. at claims 17 & 24.

AFRM is a format for presenting in a human-readable format the ████████████████ ███████████████████████.   *See* Ex. T at 53:5-19.   In his report, Dr. Mitzenmacher provides the previously undisclosed opinion that the AFRM Reports include ██████ ████████████████████████████████████████████████████████.   These Reports allegedly do so because, according to Dr. Mitzenmacher, "the███████████████████ ███████████████████████████████████   Ex. G (10/14/2015 Mitzenmacher Report) at ¶ 862; *see also id.* ¶¶ 864, 939, 941, 972, 974 ("████████████████████ ████████████████████████").

Finjan's supplemental infringement contentions, however, describes the theory of infringement for the '086 patent differently.   In its claim charts, Finjan alleges that the AFRM

1  ██████) report is generated *on* the Downloadable, that the Downloadable is not part of the report,

2  and that the two are transmitted together:

3      HackAlert^{TM} transmits a █████████████████████████



5      HackAlert^{TM} identifies the suspicious behavior (such as a drive-by

   download) of the downloadable and creates a report ███████████████

11  Ex. K at 16 (emphasis added).   Finjan does not reference the AFRM report in its supplemental

12  infringement contentions as including both the received Downloadable *and* a representation of the

13  Downloadable security profile data.   This improper opinion must be stricken.

14                    (ii)    Dr. Mitzenmacher's Opinions Regarding the ████████████

15       The asserted claims of the '086 patent further require "deriving security profile data for the

16  Downloadable, including a list of suspicious computer operations that may be attempted by the

17  Downloadable[.]"   '086 patent at claims 17 & 24.   In his report, Dr. Mitzenmacher points for

18  the first time to an alleged code analysis engine, █████████████████████████

19  ████████ which "█████████████████████████████████████████

20  ████████"  *See, e.g.*, Ex. G (10/14/2015 Mitzenmacher Report) ¶¶ 875-77; 889; 977-79.   Dr.

21  Mitzenmacher also cites to source code files related to the ███████████.   *See, e.g.*, *id.* ¶¶ 875, 977.

22       In its supplemental infringement contentions, Finjan does not identify the ███████████, and

23  also does not suggest that a ███████████████ could be used to derive security profile data

24  for the Downloadable, including a list of suspicious computer operations that may be attempted by

25  the Downloadable.   Instead, Finjan points only to █████████████████ broadly, and alleges

26  that any security profile data for the Downloadable is generated using ██████████████████

27  ████████ analysis. *See, e.g.*, Ex. L at 7- 13, 20; Ex. K at 23-27.   Proofpoint did not have notice of

this infringement theory, and would have considered different prior art in relation to the '086 patent had they been provided sufficient notice.

Finjan's belated disclosure of these infringement theories has unfairly prejudiced Proofpoint and should be struck.

(c)    <u>Finjan's New Theories for the '305 and '408 Patents</u>

Dr. Mitzenmacher's expert report discloses the new theory that a ████████ in Proofpoint's systems tokenizes patterns and that ████████, which is a code analysis module, is a database of parser and analyzer rules.   In addition, Dr. Mitzenmacher alleges the AFRM report is itself a parse tree—another new theory.   These opinions must also be stricken.

The '305 patent and '408 patent are related, sharing the same specification.   Ex. G (10/14/2015 Mitzenmacher Report) ¶ 67.   The asserted patent claims require a database of parser and analyzer rules ('305 patent at claim 1 & 13; '408 patent at claim 1 & 9); the parser and analyzer rules describing computer exploits as patterns of types of tokens (*see* '305 patent at claim 1 & 13); the parser rules defining certain patters in terms of tokens (*see* '408 patent at claims 1 & 13); and dynamically building a parse tree while receiving incoming content, a parse tree whose nodes represent tokens and patterns accordance with the parser rules (*see* '408 patent at claims 1 & 9).

In his report Dr. Mitzenmacher points to a ████████████████ and allegedly generates tokens which are then used to detect patterns of tokens, and also points to the ████████ as generating the parse tree:

████████████████████████████████████████

Ex. G (10/14/2015) Mitzenmacher Report ¶ 232; 328 339; 703, 1567, 1630 ("████████████████ ████████████████████████████████ ████████████████████████████████ ████████"); *id.* at 1691-93, 1698; 1707; 1722 ("█████████████████████████

1  ██████████████████████████████████████████████████████████

2  ████████████████████"); *id.* at 1783.   Dr. Mitzenmacher adds that the newly accused ████

3  ████ uses "████████████████████████████████████████████████

4  ████████████████████."   *See, e.g. id.* ¶¶ 270, 1562.   This theory that the ████

5  ████ tokenizes elements of the parse tree is undisclosed in Finjan's infringement contentions,

6  and must be struck.   *See, e.g.*, Ex. M at 6-20; Ex. N at 5-18.

7          Dr. Mitzenmacher's expert report for the first time also alleges that the ████████

8  meets limitations of the '305 patent, stating that it "includes a database of parser and analyzer

9  rules." *See, e.g.*, G (10/14/2015 Mitzenmacher Report) ¶¶ 227, 699. The ██████████ was not

10  disclosed in Finjan's supplemental infringement contentions as meeting this limitation, which

11  instead made general allegations regarding use of Proofpoint's products to store a database of

12  rules.   Ex. M at 6-13.

13         Finally, Dr. Mitzenmacher alleges that the AFRM Reports is ***themselves*** a parse tree.

14  *See, e.g.*, Ex. G. (10/14/2015 Mitzenmacher Report) ¶¶ 1699-1700; Ex. V at 92-93.   Finjan's

15  supplemental infringement contentions, however, point only to ████ and ████ parse trees, and

16  do not disclose the theory that the AFRM report is itself a parse tree.   *See* Ex. N at 62.

17         These newly-disclosed theories of infringement regarding the '305 and '408 patents, which

18  were not disclosed in Finjan's infringement contentions, should be struck.

19              2.   <u>Dr. Cole's New Infringement Theories</u>

20         Dr. Cole's expert report addresses the alleged infringement of the '844, '822, '633, and

21  '918 patents.   *See* Stake Decl. Ex. F.   Dr. Cole's report contains numerous infringement theories

22  that were never previously disclosed to Proofpoint.   These opinions should be struck.

23              (a)   <u>The '918 Patent: Finjan New Infringement Theory Related to the</u>

24         <u>████████████████████████</u>

25         Dr. Cole's expert opinions on the '918 patent include the theory that Proofpoint's ████

26  ████ is the claimed "client computer" and that this ██████████ manages a plurality of computer

27  accounts for logging in to the client computer, which Dr. Cole identifies as ████████████

28

1 ██████████████████████████ These opinions, which in effect have caused a complete

2 reconfiguration in Finjan's infringement case for the '918 patent, should be struck.

3     At a high level, the '918 patent relates to a system which processes content including

4 potentially malicious executable code which is intended for downloading at a client computer, and

5 for scanning and packaging the content using a variety of parameters before the packaged code,

6 which includes the original content including potentially malicious executable code, is forwarded

7 to the client computer for processing.   Relevant to this motion, asserted claims 12 and 21 both

8 require "a client computer, wherein the client computer manages a plurality of computer accounts

9 for logging in to the client computer, and wherein each computer account of the plurality of

10 computer accounts has associated therewith a security context within which an executable running

11 on the client computer under such account is processed." *Id.* at claims 12 & 21.

12     Finjan's supplemental infringement contentions do not disclose much regarding the

13 claimed client computer and plurality of computer accounts.   Finjan alleged only that

14 "████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████████ Ex. O at 18.   Finjan's infringement contentions just

19 point to HackAlert generally as the client computer, with no further specificity.

20     Until the service of opening expert reports, the above is all that Finjan had provided in

21 regards to what it would be targeting with respect to the '918 patent.   In his expert report,

22 however, Dr. Cole provides the previously undisclosed theory that "████████████████████

23 ████████████████████████████████████████████████████████."

24 Ex. F (10/14/2015 Cole Report) ¶¶ 2033; *id.* at 2034 ("████████████████████

25 ████████████████████████████████████████████████████████

26 ████"); *id.* at 2307 ████████████████████████████████

27 ████████████████████████."); *id.* at 2308.

28

1    Indeed, Dr. Cole's new infringement theories are plainly inconsistent with whatever

2   infringement theory Finjan did provide in its supplemental infringement contentions.

3   Specifically, whereas the plurality of computer accounts in Dr. Cole's expert report consist of the

4   ██████████████████████████████████████████████████████), the

5   computer accounts in Finjan's supplemental infringement contentions were ████████████

6   ████████████████████████████, or "████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████"   *See* Stake Decl. Ex. O at 18.

9    Finjan's undisclosed theory regarding ████████ and the ██████████ should be

10  struck as it was undisclosed in Finjan's infringement contentions.

11         (b)   '844 Patent: Finjan's New Theories of Infringement Related to
                  Generating and Linking

13   Finjan's expert reports identify new theories of how Proofpoint's products allegedly

14  generate a Downloadable security profile and link a Downloadable security profile to the

15  Downloadable.   These previously undisclosed opinions should be struck.

16   Each of asserted claims 1, 7, 15, 16, 32, and 42 of the '844 patent requires generation of a

17  Downloadable security profile and linking of the accused Downloadable security profile to the

18  Downloadable before a web server makes the Downloadable available to web clients.

19   Dr. Cole alleges that the ██████████ generates a security profile.   Dr. Cole's theory for

20  infringement includes reference to ████████, its generation of a "████████," and the use of

21  "████████████████."   *See* Ex. F (10/14/2015 Cole Report)¶¶ 199-201, 227, 673,

22  884, 887, 1212, 1215.   Dr. Cole opines that this forms a basis for alleging that Proofpoint's

23  products generate a security profile as required by claim limitations of the '844 patent.   *See id.*

24  Dr. Cole also alleges the ██████████ links a representation of the downloadable to a

25  downloadable   *See id.* ¶ 673 ("████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████.");  *id.* ¶ 674.   Dr. Cole also identifies for the first

28  time the Threat Dashboard, which effectively allows viewing of portions of the forensics reports,

1    as part of Finjan's theory relating to the linking and generating steps. *See, e.g.*, *id.* ¶¶ 306, 309,

2    588, 591, 854, 855, 856 ("███████████████████████████████████████████████████

3    ██████████████████████████████████████████ Dr. Cole alleges that

4    these instrumentalities link a representation of the downloadable.   *See id.*

5            Finjan failed to disclose these infringement theories in its infringement contentions

6    Although Finjan generally identified "analysis engines" as meeting the claim limitation of

7    generating a security profile (Ex. P at 10), such disclosures are not sufficient to put Proofpoint on

8    notice.   *See* Patent L.R. 3-1(b); *see also ASUS Computer Int'l*, 2014 WL 1463609, at *1.

9    Furthermore, Finjan never identified ██████ a static analysis engine, as relevant to either generating

10   a Downloadable security profile or linking, but instead focused on behavioral analysis in its

11   contentions.   In addition, Finjan failed to allege the Threat Dashboard, which displays

12   information related to threats detected by the accused products, would be relevant to the

13   limitations of the '844 patent.   *See generally* Ex. P.

14           Because Finjan failed to disclose these theories, they too should be struck.

15                           (c)      The '822 and '633 Patents: New Infringement Theories

16           The '822 and '633 patents allegedly disclose an invention for protecting computers

17   through the use of "mobile protection code."   *See* '633 patent at abstract; '822 patent at abstract.

18   Dr. Cole's report includes numerous new infringement theories relating to the '822 and '633

19   patents.   These theories must be struck.

20                           (i)      New Theories Relating to Mobile Protection Code

21           Each of the asserted claims includes limitations related to mobile protection code

22   ("MPC").   In his report, Dr. Cole for the first time alleges that static data such as file-type

23   information and ██████████ is the accused mobile protection code and "██████████████████

24   ██████████████████████████████████████████████████████████████████████████████

25   ██████████."   Ex. F (10/14/2015 Cole Report) ¶¶ 1477, 1478, 1703, 1704, 1922.   Finjan's

26   supplemental infringement contentions did not disclose any type of static data such as file-type

27   information or ██████████ as constituting mobile protection code.   These opinions must be

28   struck.

Dr. Cole's report also provides the entirely new opinion that the limitation "causing mobile protection code to be communicated . . . to at least one information-destination of the downloadable-information" ('822 patent claim 9; '633 patent claim 8) is satisfied by transferring components such as ███████████████████████████████████████." *See* Ex. F (10/14/2015 Cole Report) ¶¶ 1481, 1482, 1484, 1707, 1708, 1710, 1923, 1924, 1926. Finjan has not previously alleged that ████████████████████████████████████ ████████ can constitute communicating mobile protection code. *See, e.g.*, Ex. R.   These opinions should be struck.

        (ii)    <u>New Theories Relating to Determining Whether Downloadable-Information Includes Executable Code</u>

Asserted claim 9 of the '822 patent and asserted claims 8 and 12 of the '633 patent include a limitation of determining whether downloadable-information includes executable code.   Dr. Cole opines for the first time that the █████████████████████████████████ help satisfy this limitation.   *See, e.g.*, Ex. F (10/14/2015 Cole Report) ¶¶ 1433-35, 1546, 1659-61. Dr. Cole alleges that Proofpoint's products use these components to determine whether incoming content has executable code.   *See id.*   Finjan did not identify these new theories of infringement in its supplemental infringement contentions.   For example, Finjan never identified ████████ ████████████████████████████ as practicing these claim limitations.   Finjan's supplemental contentions do not describe these components, or allege that ████████████ ████████████████████████, as Finjan now contends, but rather just repeat the asserted claim language by stating that the accused product "meets the recited claim element because it inspects the received web and email content to determine if there is executable code, such as JavaScript."   *See, e.g.*, Ex. Q at 6; Ex R at 6.

These undisclosed theories, which were not identified in Finjan's supplemental infringement contentions, should be struck.

3.    *Dr. Cole's and Dr. Mitzenmacher's Infringement Theories for Proofpoint Enterprise Protection and the Threat Dashboard Are Improper.*

As a principal basis for their opinions on infringement by Proofpoint's Enterprise Protection, Dr. Cole's and Dr. Mitzenmacher's reports point to the following:   "Proofpoint Enterprise Protection is the name for the Proofpoint system ███████████████████ ████████████" and that "████████████████████████████████████████████ ███████████████████████████████." *See, e.g.*, Ex. F (10/14/2015 Cole Report) ¶¶ 97, 99 *et seq.*, 113; Ex. G (10/14/2015 Mitzenmacher Report) ¶¶ 106 *et seq.*, 127-128.   In fact, Enterprise Protection and TAP are distinct products, and a customer can buy one without the other.   Ex. V at 41-45 ("██████████████████████████████████████████ ██████████████████████████"); Ex. U at 13-16 ("Q. █████████████████ ███████████████████████████████████████████████████████ ████████████████████") (objections omitted).   Finjan, by its supplemental infringement contentions or otherwise, do not disclose any theory imputing TAP functionality to Enterprise Protection.

Finjan's supplemental infringement contentions also provided no theories of infringement identifying the Threat Dashboard, which allows a user to view the results from scans of content, as an infringing functionality.   Finjan never previously explained how viewing results within the Threat Dashboard could be considered relevant to any of the asserted claims.   Dr. Cole and Dr. Mitzenmacher, however, appear to rely on Threat Dashboard in support of several of their infringement theories. *See, e.g.*, Ex. F (10/14/2015 Cole Report) ¶¶ 306, 393, 588, 749, 826, 864, 867, 939, 1157; Ex. G (10/14/2015 Mitzenmacher Report) ¶¶ 177, 617, 904, 963, 1048.

Accordingly, Finjan's imputation of TAP functionality to Enterprise Protection, and its reliance on the Threat Dashboard in proving infringement, should be struck.

**D.    Dr. Medvidovic's Should Not Be Permitted To Rely on Previously Undisclosed Infringement Theories**

Dr. Medvidovic relies on the improper and belatedly-disclosed theories of infringement propounded by Dr. Cole and Dr. Mitzenmacher described above.   For example, Dr. Medvidovic

relies on Dr. Cole and Mitzenmacher's improper list of accused products and functionalities.    For the same reasons that the portions of Dr. Cole's and Mitzenmacher's reports should be struck, the portions of Dr. Medvidovic's report relying on these improper opinions should be struck.    *See, e.g.*, Ex. H (10/14/2015 Medvidovic Report) ¶¶ 48, 61, 72-74, 78-81, 84-85, 88-90, 93-95, 98-100.

### E.      Proofpoint Has Been Unfairly Prejudiced by Finjan's Late Disclosure of Infringement Theories

Finjan's late disclosure of infringement theories and accused products has unfairly prejudiced Proofpoint.    *See Finjan, Inc.*, 2015 WL 3640694, at *2 (granting in part Defendant Blue Coat's motion to strike and noting that, for theories disclosed "after the close of fact discovery, prejudice is inherent").    First, Proofpoint proposed claim terms for the Court's construction based, in part, on Finjan's apparent interpretations of its patents.    Adding new infringement theories and proffering new interpretations of its claims would change which terms Proofpoint identified for construction.    It may have also altered how Proofpoint briefed or opposed Finjan's proposed constructions.

Second, Proofpoint has prepared its invalidity case based on Finjan's infringement contentions.    This includes the search for prior art and the charting of prior art in Proofpoint's invalidity contentions.    Proofpoint also made elections of this prior art based on the theories of infringement discernible in Finjan's contentions.    Finjan's decision to change and/or expand its infringement theories for the first time through its expert reports has unfairly prejudiced Proofpoint's preparation of its entire invalidity case.

Proofpoint also conducted extensive depositions without the benefit of these new theories. Proofpoint conducted Rule 30(b)(6) depositions on Finjan's basis for alleging infringement based on the disclosed infringement theories.    Stake Decl. ¶ 14.    Proofpoint also flew to Israel and took depositions of named inventors Shlomo Touboul and Yuval Ben-Itzhak.    *Id.*    The preparation for the depositions and the depositions themselves were necessarily informed by the infringement theories Finjan had failed to disclose.

Finally, Proofpoint has been prejudiced in their preparation of key case materials. Proofpoint's non-infringement and damages rebuttal experts had a limited amount of time to

1  digest and interpret Finjan's belatedly disclosed infringement theories in their preparation of

2  expert reports.   Such late disclosure has also unfairly prejudiced Proofpoint's preparation of

3  summary judgment briefing, due this Friday, November 13, and has hindered its preparation for

4  trial.   The prejudice to Proofpoint from Finjan's late disclosure of its theories—well past the time

5  for disclosure under this Districts' local rules—is widespread and unjustified.   Finjan's

6  undisclosed infringement theories should be struck.

7  **V.      <u>CONCLUSION</u>**

8         For the foregoing reasons, Proofpoint respectfully request that the Court strike portions of

9  Finjan's expert reports that rely on infringement theories undisclosed in Finjan's initial and

10  supplemental infringement contentions.

11

12  DATED: November 11, 2015             Respectfully submitted,
                                         QUINN EMANUEL URQUHART &
13                                       SULLIVAN, LLP

14                                       By_____*/s/ Jennifer A. Kash*_____
15                                          Jennifer A. Kash
                                            Sean Pak
16                                          Iman Lordgooei
                                            Sam Stake
17
18                                          Attorneys for Defendants PROOFPOINT, INC.
                                            and ARMORIZE TECHNOLOGIES, INC.
19

20

21

22

23

24

25

26

27

28