QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Jennifer A. Kash (Bar No. 203679)
 (jenniferkash@quinnemanuel.com)
 Sean Pak (Bar No. 219032)
 (seanpak@quinnemanuel.com)
 Iman Lordgooei (Bar No. 251320)
 (imanlordgooei@quinnemanuel.com)
 Sam Stake (Bar No. 257916)
 (samstake@quinnemanuel.com)
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for Defendants PROOFPOINT, INC.
and ARMORIZE TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>          Plaintiff,<br><br>     vs.<br><br>PROOFPOINT, INC. AND ARMORIZE<br>TECHNOLOGIES, INC.,<br><br>          Defendants. | Case No. 3:13-CV-05808-HSG<br><br>**DEFENDANTS PROOFPOINT, INC. AND ARMORIZE TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION FOR STAY OF THE CASE SCHEDULE**<br><br>**Date:     December 17, 2015**<br>**Time:    2:00 p.m.**<br>**Dep.:    Courtroom 15, 18th Floor**<br>**Judge:  Hon. Haywood S. Gilliam**<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

# NOTICE OF MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on December 17, 2015 at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-titled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Proofpoint, Inc. and Armorize Technologies, Inc. (collectively "Proofpoint") will and hereby do move the Court for an Order staying the case schedule.  This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Sam Stake, filed herewith, the pleadings and papers on file herein, and any evidence and argument presented to the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

Proofpoint seeks an Order from the Court staying the case.

## STATEMENT OF THE ISSUES

Whether the litigation should be stayed pending resolution of various motions, the construction of claims terms, and re-examinations by the Patent and Trial Appeal Board of the asserted patents.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ..........................................................................................................II

STATEMENT OF RELIEF SOUGHT ..............................................................................II

STATEMENT OF THE ISSUES ..........................................................................................II

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.       INTRODUCTION...................................................................................................... 1

II.      STATEMENT OF FACTS......................................................................................... 2

    A.   Proofpoint's Renewed Motion To Strike Finjan's Supplemental
        Infringement Contentions Is Still Pending .................................................... 3

    B.   Finjan Has Expanded Its Infringement and Damages Cases Significantly ............. 3

    C.   Important Claim Terms Have Not Been Construed .................................................... 5

    D.   Six of the Eight Patents-In-Suit, and Most of Finjan's Asserted Claims, Are
        the Subject of *Inter Partes* and *Ex Parte* Petitions That Are Pending Before
        the Patent Trial and Appeal Board ................................................................. 5

III.     LEGAL STANDARD ............................................................................................... 6

IV.      ARGUMENT ............................................................................................................. 8

    A.   Resolution of the Pending *Inter Partes* Review Petitions Will Simplify the
        Issues in the Case, Regardless of Whether the Challenged Claims Are
        Invalidated or Affirmed............................................................................... 9

    B.   Proofpoint Would Suffer Severe Hardship if It Is Required To Go Forward
        With Its Case ........................................................................................... 11

    C.   A Stay Will Not Prejudice Finjan or Work Any Potential Damage....................... 13

    D.   There Are Still Significant Proceedings That Remain in the Case ......................... 15

V.       CONCLUSION ......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## Cases

*AT&T Intellectual Prop. I v. Tivo, Inc.*,
   774 F. Supp. 2d 1049 (N.D. Cal. 2011) ...............................................................7, 9, 10, 11

*Apple Inc. v. Samsung Elecs. Co. Ltd., No. C 11-2226 SI*,
   2013 WL 3246094 (N.D. Cal. June 26, 2013) ................................................................12, 15

*Avago Techs. General IP Pte Ltd. v. Elan Microelecs. Corp.*,
   No. C04-05385 JW (HRL), 2007 WL 1449758 (N.D. Cal. May 15, 2007) ....................12, 15

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) .............................................................................................6, 8, 11

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
   No. 5:10-cv-02051 EJD, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012) ...............................8, 14

*Cypress Semiconductor Corp. v. GSI Tech., Inc.*,
   No. 13-cv-02013-JST, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014) .........................................14

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*,
   No. 14-CV-05330-HSG, 2015 WL 1967878 (N.D. Cal. May 1, 2015) ...................8, 10, 13, 14

*Delphix Corp. v. Actifio, Inc.*,
   No. 13-cv-04613-BLF, 2014 WL 6068407 (N.D. Cal. Nov. 13, 2014) ............................7, 9, 10

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988) .................................................................................................7

*Evolutionary Intelligence, LLC, v. Apple, Inc.*,
   2014 WL 93954 (N.D. Cal. Jan. 9, 2014) .................................................................................10

*Evolutionary Intelligence, LLC v. Facebook, Inc.*,
   No. C 13-4202 SI, C 13-4204 SI,
   2014 WL 261837 (N.D. Cal. Feb. 23. 2014) ....................................................7, 8, 10, 11, 14

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
   No. C-13-4513-RMW, 2014 WL 819277 (N.D. Cal. Feb. 28, 2014) ..................................8, 10

*Finjan, Inc. v. Symantec Corp*,
   No. 14-cv-02998-HSG, 2015 WL 5915369 (N.D. Cal. Oct. 9, 2015) .................7, 8, 13, 14, 15

*Gong-Chun v. AETNA, Inc.*,
   No. 1:09-cv-01995-AWI-SKO, 2010 WL 1980175 (E.D. Cal. May 17, 2010) .......................12

*Ho Keung Tse v. Apple Inc. et al.*,
   No. C 06-06573 SBA, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007) ..............................7, 9, 10

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ..................................................................................................................6

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
    Nos. 5:13-CV-01356-EJD; 5:13-CV-01358-EJD;
    5:13-CV-01359-EJD, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014)............................7, 9, 10, 15

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
    2013 WL 322556 (N.D. Cal. Jan. 28, 2013) .......................................................12, 15

*Pragmatus AV, LLC v. Facebook, Inc.*,
    No. 11-CV-02168-EJD, 2011 WL 4802958 (N.D. Cal. Oct. 11, 2011)................................8, 10

*Radware Ltd. v. F5 Networks, Inc.*,
    No. C--13--2024 RMW, 2014 WL 3728482 (N.D. Cal. July 28, 2014) ............................12, 15

*Sec. People, Inc. v. Ojmar US, LLC*,
    No. 14-cv-04968-HSG, 2015 WL 3453780 (N.D. Cal. May 29, 2015)................................9, 10

*Smartflash LLC v. Apple Inc.*,
    Nos. 2015-1701, 2015-1707, 2015 WL 4603820 (Fed. Cir. July 30, 2015) ....................7, 9, 16

*Software Rights Archive, LLC v. Facebook, Inc.*,
    No. C-12-3970 RMW, 2013 WL 5225522 (N.D. Cal. Sept. 17, 2013) .......................8, 9, 10, 14

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014)....................................................................8, 14

## **Statutes**

35 U.S.C. § 315(c)........................................................................................11

37 C.F.R. § 42.122(b)....................................................................................11

FRCP 26 .......................................................................................................4

FRCP 26(a)(1)(A)(iii) ...................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In direct contravention of this Court's Local Rules, Finjan recently disclosed new and different infringement theories ***for the first time***, and accused new products under different patents, in its opening expert reports – all without leave of the Court and long after the close of fact discovery. These belated and improper theories are the subject of Proofpoint's motion to strike portions of Finjan's expert reports, filed concurrently with this motion to stay.  Dkt. 209.   Additionally, Proofpoint's renewed motion to strike Finjan's deficient infringement contentions remains pending. Decisions on these critical motions stand to eliminate a significant portion of Finjan's infringement case, and the outcome of these motions alone merits staying this case.

Proofpoint has already suffered substantial prejudice from the current case deadlines as a result of Finjan's improper attempts to sandbag Proofpoint with its infringement theories, and will suffer extreme prejudice if it must prepare for trial when the scope of the case is undetermined.  Once these motions are resolved, there is a strong probability that the Court will reopen fact discovery, expert discovery, prior art disclosures and/or summary judgment proceedings.  Further, dispositive motions will soon be filed without the benefit of the Court's guidance on the proper scope of this case, making it impossible for Proofpoint to address the numerous improperly disclosed infringement theories within the current page limits for dispositive motions.  The prejudice to Proofpoint caused by Finjan's violations of Local Rules is both real and unwarranted.

Further, most of the patents-in-suit and the majority of Finjan's asserted claims have been challenged by *inter partes* review petitions before the Patent and Trial Appeal Board ("PTAB") and *ex parte* reexamination proceedings.  The resolution of these petitions will significantly simplify this case in any scenario, whether the PTAB grants review, denies review, invalidates claims, or affirms them. Both the parties and the Court will save time, money, and resources if this case is stayed pending a final decision on the petitions and proceedings.  There is significant work left to be done in this case, nearly all of which will be materially affected by the PTAB's decision.

As a licensing entity, with no products that compete with Proofpoint and no products that practice any asserted patent, Finjan will not suffer prejudice from a stay.  Proofpoint thus respectfully

1  requests the Court stay this case pending the outcome of its motions to strike, claim construction in

2  this case, and the petitions filed against the patents-in-suit with the PTAB.

3  **II.     STATEMENT OF FACTS**

4          Finjan filed its initial Complaint on December 16, 2013 alleging Proofpoint's products infringe

5  eight patents:  U.S. Patent No. 6,154,844 ("the '844 Patent"), U.S. Patent No. 7,058,822 ("the '822

6  Patent"), U.S. Patent No. 7,613,918 ("the '918 Patent"), U.S. Patent No. 7,647,633 ("the '633

7  Patent"), U.S. Patent No. 7,975,305 ("the '305 Patent"), U.S. Patent No. 8,079,086 ("the '086

8  Patent"), U.S. Patent No. 8,141,154 ("the '154 Patent"), and U.S. Patent No. 8,225,408 ("the '408

9  Patent").   Dkt. No. 1.  Finjan has also filed complaints against various other software security

10 companies, some of whom have instituted *ex parte* reexamination proceedings or filed *inter partes*

11 review ("IPR") petitions.  *Finjan, Inc. v. Blue Coat Sys., Inc.* (Case No. 5:15-cv-03295); *Finjan, Inc.*

12 *v. Symantec Corp.* (Case No. 3:14-cv-02998); *Finjan, Inc. v. Palo Alto Networks, Inc.* (Case No. 4:14-

13 cv-04908-PJH); *Finjan, Inc. v. Fireeye, Inc.* (Case No. CV13-03133-SBA); *see also* Exs. L-T.[1]

14         The present motion is Proofpoint's second motion for stay of the case schedule.  Proofpoint

15 previously filed a motion for stay of the case schedule pending reexaminations of two patents asserted

16 against Proofpoint (the '822 and '633 patents).  Dkt. No. 63.  In opposition, Finjan argued that, "over

17 90 % of the claims asserted against Proofpoint are <u>not</u> subject to reexamination."  Dkt. No. 66 at 1

18 (emphasis original).  Nonetheless, Finjan withdrew the claims subject to reexamination (Dkt. No. 74),

19 and as a result, Judge Freeman denied Proofpoint's motion (Dkt. No. 77).

20          Fact discovery ended on September 2, 2015 (subject to a limited extension).  *See* Dkt. No. 139

21 at 2; Dkt. No. 179.  Expert discovery closes on November 13 for technical expert discovery and to

22 November 20 for damages expert discovery.  Dkt. No. 205.  Opening motions for summary judgment

23 are due this Friday, November 13.  Dkt. No. 179.  Trial is currently set for March 7, 2016.  Dkt. No.

24 139 at 2.

25

26 _____

27     [1]  All references to exhibits in the instant motion are to the Declaration of Sam Stake ("Stake
   Decl.") filed herewith.

28

**A.     Proofpoint's Renewed Motion To Strike Finjan's Supplemental Infringement Contentions Is Still Pending**

On March 12, 2014, Proofpoint propounded an interrogatory seeking Finjan's infringement contentions.  Stake Decl. ¶ 5.  Finjan's April 14, 2014 response incorporated its forthcoming infringement contentions, which Finjan served on April 17, 2014.  Exs. A, B.  Proofpoint informed Finjan that these infringement contentions did not comply with this District's Patent Local Rules, but Finjan refused to clarify its infringement contentions.  *See* Dkt. No. 118 at 5.

In a discovery dispute before Magistrate Judge Lloyd, Proofpoint requested the court order Finjan to supplement its response to Proofpoint' Interrogatory No. 1 and provide its theories of infringement.  *See* Dkt. No. 115 at 1.  Magistrate Judge Lloyd found Finjan's response to be deficient and ordered it supplemented.  *Id.* at 6.  In response, Finjan merely cut and pasted its deficient infringement contentions in its January 15, 2015 supplemental response.  Dkt. No. 118 at 6; Ex. C.  As a result, Proofpoint was forced to move to strike Finjan's infringement contentions.  *See generally id.*

The Court found Finjan's infringement contentions failed to comply with the Patent Local Rules and did not sufficiently disclose Finjan's theories of infringement.  Dkt. No. 138 at 10.  Finjan was ordered to supplement its infringement contentions, and the Court specifically ordered Finjan to provide different infringement charts for <u>each product</u> it accuses of infringement in this action.  Dkt. No. 138.  *Id.* at 20.  Finjan served supplemental infringement contentions on April 23, 2015 and a supplemental response to Proofpoint's Interrogatory No. 1 on April 29, 2015, merely incorporating its supplemental infringement contentions.  Exs. D and E.  Finjan's supplemental infringement contentions are now the subject of Defendant's Renewed Motion to Strike.  *See* Dkt. No. 149.  Proofpoint filed a renewed motion to strike Finjan's supplemental infringement contentions on May 18, 2015, and the Court held a hearing on July 9.  Dkts. 144, 171.  The Court has taken this motion under submission (Dkt. No. 171), but has not yet issued an order.

**B.     Finjan Has Expanded Its Infringement and Damages Cases Significantly**

On October 14, 2015, Finjan unexpectedly served five expert reports spanning ***over 3800 pages***, including a damages expert report from Dr. Layne-Farrar, two infringement expert reports from Dr. Cole and Dr. Mitzenmacher (each covering a different group of four patents), a "technology

tutorial" expert report from Dr. Bims, and a duplicative expert report, on the nature of the patented technology, from Dr. Medvidovic. Stake Decl. ¶ 11. Given the tight window for expert discovery, and the experts' schedules, the parties were forced to schedule eleven expert depositions to be taken over only two weeks. The current deadline for dispositive motions is this Friday, November 13, and four of the eleven expert depositions are scheduled to occur on or after that deadline. Dkt. 179 at 5.

The reports from Dr. Cole and Dr. Mitzenmacher assert and accuse new infringement theories under every asserted patent, ***never before disclosed*** in either Finjan's infringement contentions or its response to Defendant's Interrogatory No. 1. Dkt. 209. These expert reports also accuse ***new products*** of infringing certain patents for the first time, accusing Targeted Attack Protection, Essentials, and Enterprise Protection of infringing the '086, '154, and '918 patents. Dkt. 209. Finjan also included these newly accused products in its damages expert report. Ex. J. Finjan did not properly disclose its infringement theories when it served its initial infringement contentions (Dkt. 138), and it did not properly disclose infringement theories in its supplemental contentions (Dkt. 149). Now, long after fact discovery was completed, Finjan improperly attempts to amend its infringement theories and the accused products through its experts, without the leave of this Court. Proofpoint is moving to strike these new, belatedly-disclosed infringement theories today, along with the instant motion. Dkt. 209.

Finjan's damages case has also greatly expanded. Finjan served its initial disclosures on March 26, 2014, but it did not indicate the amount of damages it was seeking. Ex. F. The Court then issued a Case Management Conference Order on April 3, 2014, ordering the parties to complete all initial disclosures under FRCP 26 by April 15, 2014, "***on pain of preclusion***, including full and faithful compliance with FRCP 26(a)(1)(A)(iii)." Dkt. 42 (emphasis added). Finjan thus served supplemental initial disclosures on April 15, disclosing that it sought approximately $13,500,000 in damages in this case. Ex. G at 7. Finjan amended those disclosures again on August 18, 2015, two weeks before the close of fact discovery, and on September 2, 2015, the close of fact discovery. Exs. H and I. In its belated disclosures, Finjan replaced its previously disclosed damages number with a placeholder, stating it was "not possible at this time for Finjan to make any computation of damages[.]" Ex. H at 9; Ex. I at 10.

Finjan served its opening damages report a few weeks ago, on October 14.  Stake Decl. ¶ 11.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

### C. Important Claim Terms Have Not Been Construed

Finjan filed its opening claim construction brief on May 1, 2015 and their reply on May 22. Dkt. Nos. 142, 145.  Proofpoint filed its opposition on May 15, 2015.  Dkt. No. 143.  The Court held a claim construction hearing on June 25 (Dkt. No. 163), and supplemental briefing was submitted (*see* Dkt. Nos. 166-169).  The Court has not yet issued a claim construction order.  There are seven terms to be construed for the claims Finjan has elected in its final election.  *Compare* Dkt. 143 with Ex. K; *see also infra.*

### D. Six of the Eight Patents-In-Suit, and Most of Finjan's Asserted Claims, Are the Subject of *Inter Partes* and *Ex Parte* Petitions That Are Pending Before the Patent Trial and Appeal Board

Finjan has filed several patent infringement cases in the Northern District of California against a variety of software security companies.[2]  Defendants in these actions, including Symantec, Inc. ("Symantec") and Palo Alto Networks ("PAN"), have filed IPR petitions that cover almost all of the asserted patents and the majority of the asserted claims in this action.  Exs. L – T.

On September 9, 2015, Finjan made its final election of asserted claims.  Ex. K.  It elected to assert claims 1, 7, 15, 16, 32, and 42 of the '844 patent; claims 8, 12, and 14 of the '633 patent; claim 9 of the '822 patent; claims 1, 4, 9, and 21 of the '408 patent; claims 1 and 4 of the '154 patent; claims 12 and 21 of the '918 patent; claims 1, 2, 5, and 13 of the '305 patent; and claims 17 and 24 of the '086 patent.  Ex. K.  Symantec and PAN have filed the below IPR petitions requesting cancellation of the following claims:

| Petitions (Party) | Filing Date | Challenged Claims |
|---|---|---|

---

[2]  *Finjan, Inc. v. Blue Coat Sys., Inc.* (Case No. 5:15-cv-03295); *Finjan, Inc. v. Symantec Corp.* (Case No. 3:14-cv-02998); *Finjan, Inc. v. Palo Alto Networks, Inc.* (Case No. 4:14-cv-04908-PJH); *Finjan, Inc. v. Fireeye, Inc.* (Case No. CV13-03133-SBA).

| IPR2015-01894 (Symantec) | Sept. 11, 2015 | '844 Patent: 1, 7, 11, 15, 16, 41, 43 |
|---|---|---|
| IPR2015-01974 (PAN) | Sept. 30, 2015 | '633 Patent: 1-4, 6-8, 13, 14, 19, 28, 34 |
| IPR2015-01999 (PAN) | Sept. 30, 2015 | '822 Patent: 1, 4-6, 8-9, 12, 16-20, 22, 24, 27 |
| IPR2015-02001 (PAN) | Sept. 30, 2015 | '408 Patent: 1, 9, 22-23, 29, 35 |
| IPR2016-00157 (PAN) | Nov. 6, 2015 | '408 Patent: 3-7, 12-16, 18-21 |
| IPR2015-01547 (Symantec) | July 3, 2015 | '154 Patent: 1-12 |
| IPR2015-01979 (PAN) | Sept. 25, 2015 | '154 Patent: 1-8, 10, 11 |
| IPR2016-00151 (PAN) | Nov. 5, 2015 | '154 Patent: 1-12 |
| IPR2016-00164 (PAN) | Nov. 6, 2015 | '918 Patent: 1-10, 12-19, 21, 34-36 |

Exs. L-T.  Thus, IPR petitions have been filed against six of the patents-in-suit, challenging fifteen of the twenty-four claims asserted in this case.  In addition, several claims of the '822 and the '633 patents have been reexamined and finally rejected during *ex parte* re-examination proceedings, pending an ongoing appeal.  Control Nos. 90/013,016 and 90/013,017.  Although Finjan does not assert these rejected claims in this case – claims 1-8, 16-27, and 36-40 of the '822 patent and claims 1–7 and 28–33 of the '633 patent – Proofpoint soon expects to file *ex parte* petitions on the four remaining asserted claims from these patents.

## III.    LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).   The district court must weigh the competing interests affected by the granting or refusal to grant a stay, including (1) any possible damage that may result from a stay; (2) the hardship or inequity a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplification or complication of the issues expected to result from a stay.  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  A plaintiff does not suffer damage or a miscarriage of justice where it seeks only money damages, for a delay in a trial will simply delay any such recovery.  *Id.* at 268-69.  Further, where discovery has concluded, "there is presumably no problem of preserving evidence."  *Id.* at 269.

1    Courts stay litigations pending reexamination proceedings. *Ethicon, Inc. v. Quigg*, 849 F.2d

2    1422, 1426-27 (Fed. Cir. 1988). Indeed, there is a "liberal policy in favor of granting motions to stay

3    proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *AT&T*

4    *Intellectual Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011) (internal citation

5    omitted). In determining whether to stay a case, courts consider similar factors to those weighed in

6    considering a stay for other reasons, including "(1) whether discovery is complete and whether a trial

7    date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3)

8    whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving

9    party." *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. C 13-4202 SI, C 13-4204 SI, 2014 WL

10   261837, at *1 (N.D. Cal. Feb. 23. 2014) (internal citation omitted).

11   In deciding whether "discovery is complete and whether a trial date has been set," the true

12   inquiry is the stage of the case; the question is "whether the litigation has progressed significantly

13   enough for a stay to be disfavored." *Finjan v. Symantec Corp*, No. 14-cv-02998-HSG, 2015 WL

14   5915369, at *2 (N.D. Cal. Oct. 9, 2015) (citing *AT&T*, 774 F.Supp. 2d at 1052). A stay pending IPRs

15   simplifies the case regardless of the Patent and Trial Appeal Board's ("PTAB's") decision, whether it

16   invalidates asserted claims, affirms asserted claims, or denies review of the IPR petitions entirely. If

17   the PTAB invalidates challenged claims, a stay pending IPRs will "spare the parties and the district

18   court the expense of [] further litigation, including a trial." *Smartflash LLC v. Apple Inc.*, Nos. 2015-

19   1701, 2015-1707, 2015 WL 4603820, at *10 (Fed. Cir. July 30, 2015). If the PTAB affirms

20   challenged claims, a stay pending IPRs would "assist in streamlining the presentation of evidence and

21   benefit the trier of fact by providing the expert opinion of the PTO." *PersonalWeb Techs., LLC v.*

22   *Facebook, Inc.*, Nos. 5:13-CV-01356-EJD; 5:13-CV-01358-EJD; 5:13-CV-01359-EJD, 2014 WL

23   116340, at *4 (N.D. Cal. Jan. 13, 2014). Finally, "[i]n light of the 'liberal policy' favoring stays

24   pending reexamination, a court can grant a stay even if the Patent Office is still considering whether

25   to grant a party's reexamination request." *Ho Keung Tse v. Apple Inc. et al.*, No. C 06-06573 SBA,

26   2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007); *see also Delphix Corp. v. Actifio, Inc.*, No. 13-cv-

27   04613-BLF, 2014 WL 6068407, at *2 (N.D. Cal. Nov. 13, 2014); *Evolutionary Intelligence*, 2014 WL

28

261837 at *3; *PersonalWeb Techs.*, 2014 WL 116340, at *4; *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-02168-EJD, 2011 WL 4802958, at *2 (N.D. Cal. Oct. 11, 2011).

Courts consistently find that a plaintiff-patent licensor will not be prejudiced by a stay, because monetary damages are adequate to compensate for infringement. *Evolutionary Intelligence*, 2014 WL 261837, at *3 (citing *Pragmatus AV*, 2011 U.S. Dist. LEXIS 117147, at *11); *see also Symantec*, 2015 WL 5915369, at *4 (citing *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14–CV–05330–HSG, 2015 WL 1967878, at *4 (N.D. Cal. May 1, 2015)); *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-4513-RMW, 2014 WL 819277, at *5 (N.D. Cal. Feb. 28, 2014); *Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 5:10-cv-02051 EJD, 2012 WL 1232187, at *2-3 (N.D. Cal. Apr. 12, 2012). In addition, delayed recovery of a money judgment does not constitute undue prejudice or "damage" for purposes of a stay. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014); *CMAX*, 300 F.2d at 268-69; *see also Convergence*, 2012 WL 1232187, at *2 (listing cases); *Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-3970 RMW, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013).

This Court has already found that Finjan will not suffer prejudice from a stay to patent litigation pending the outcome of petitions to the PTAB. *Symantec*, 2015 WL 5915369, at *4. There, the Court has previously specifically found that a stay would not affect Finjan's primary business, its patent licensing activities. *Id.*

## IV.   ARGUMENT

Proofpoint faces severe prejudice in its pre-trial preparation given the status of the case. Proofpoint's renewed motion to strike Finjan's deficient infringement contentions remains pending, and Proofpoint has now been forced to move to strike new and undisclosed infringement theories and accused products in Finjan's opening expert reports. Because the outcome of these motions stands to shift Finjan's operable infringement theories, a stay is necessary to avoid wasted resources and efforts on behalf of Proofpoint, in pursuing a case against *any* infringement theories that may be struck and thus not be presented at trial.

Further, Finjan would not be prejudiced by a stay to this case, as it does not compete with Proofpoint nor make any products that practice the asserted patents. In addition, a stay is justified

1    where there are current IPRs pending for nearly all patents-in-suit and the majority of the asserted

2    claims, which would simplify the issues in the case.  Finally, although fact discovery is complete and

3    a trial date set, this litigation has not progressed significantly enough to disfavor a stay, where

4    resolution of pending disputes stands to reopen discovery and necessitate rounds of supplemental

5    expert reports and depositions.  A stay is thus the only appropriate solution to properly narrow issues

6    for pre-trial preparation and trial.

7          A.    **Resolution of the Pending *Inter Partes* Review Petitions Will Simplify the**
            **Issues in the Case, Regardless of Whether the Challenged Claims Are**
8            **Invalidated or Affirmed**

9          The PTAB's decisions on the pending IPRs against Finjan's patents will substantially simplify

10   the issues in this case, and this factor weighs heavily in favor of a stay.  There are pending IPR

11   petitions on six of the eight patents-in-suit, and 15 of the 24 asserted claims have been challenged.

12   *Compare* Exs. L-T *with* Ex. K.

13         A decision by the PTAB that asserted claims are invalid "will spare the parties and the district

14   court the expense of [] further litigation, including a trial."  *Smartflash*, 2015 WL 4603820, at *10.  If

15   the PTAB cancels claims, infringement and validity issues would be resolved.  *AT&T*, 774 F. Supp. 2d

16   at 1053.  A stay would thus avoid the litigation of claims that are ultimately cancelled.  *Delphix*, 2014

17   WL 6068407, at *2.  In addition, the Court will have wasted resources, and the parties will have

18   wasted money, litigating invalid claims if this case goes to trial before reexamination is complete.  *Ho*

19   *Keung Tse*, 2007 WL 2904279, at *4.

20         Even if some or all of the claims survive, it would "assist in streamlining the presentation of

21   evidence and benefit the trier of fact by providing the expert opinion of the PTO."  *Sec. People, Inc. v.*

22   *Ojmar US, LLC*, No. 14-cv-04968-HSG, 2015 WL 3453780, at *3 (N.D. Cal. May 29, 2015) (citing

23   *PersonalWeb Techs.*, 2014 WL 116340, at *4).  In this case, the Court would "have a richer

24   prosecution history upon which to base necessary claim construction determinations or

25   reconsideration."  *AT&T*, 774 F. Supp. at 1053.  In addition, "the IPR could encourage settlement or

26   lead to amendments to the claims, which could create intervening rights and limit potential damages."

27   *Software Rights Archive*, 2013 WL 5225522, at *5.

28

1    Where six of the patents-in-suit have been challenged, and fifteen of the twenty-four asserted

2    claims, this factor weighs in favor of a stay. *AT&T*, 774 F. Supp. 2d at 1053. The IPRs need not

3    eliminate the need for litigation entirely. *Evolutionary Intelligence, LLC, v. Apple, Inc.*, No. C 13-

4    04201 WHA, 2014 WL 819277, at *4 (N.D. Cal. Jan. 9, 2014). If the reexamination petitions "narrow

5    *any* of the asserted claims," they will simplify the scope of the litigation considerably. *AT&T*, 774 F.

6    Supp. 2d at 1053 (emphasis in original) (citing *Ho Keung Tse*, 2007 WL 2904279 at *8); *see also Sec.*

7    *People, Inc.*, 2015 WL 3453780, at *3; *DSS Tech.*, 2015 WL 1967878, at *3. "[T]he patents subject to

8    IPR are a *significant* portion of this action, and '[t]here is also little benefit to be gained from having

9    two forums review the validity of the same claims at the same time.'" *Delphix*, 2014 WL 6068407, at

10   *2 (emphasis in original) (quoting *Evolutionary Intelligence*, 2014 WL 93954, at *3).

11   Statistics indicate a likelihood that the PTO will grant the IPR petitions. *See Software Rights*

12   *Archive*, 2013 WL 5225522, at *5. Approximately 70% of all IPRs filed are instituted. Ex. X at 7.

13   For petitions that proceed to a final decision, 84% of those decisions invalidate some or all of the

14   challenged claims. *Id.* at 9. Thus, it is highly probable that staying this action will avoid substantial

15   time and resources, as the PTAB is likely to reject or alter the challenged, asserted claims. The

16   simplification realized by a stay outweighs the procedural posture of the IPR petitions, especially in

17   light of the "liberal policy" in favor of stays. *PersonalWeb Techs.*, 2014 WL 116340, at *4.

18   "[A] limited stay of approximately five months to see whether and how the PTAB will act

19   on [] IPR petitions will conserve judicial resources and avoid inconsistent results." *Delphix*, 2014

20   WL 6068407, at *2; *see also Evolutionary Intelligence*, 2014 WL 261837, at *2-3; *Pragmatus*,

21   2011 WL 4802958, at *2. Five of the asserted patents were challenged in IPR last September (the

22   '844, '633, '822, '408, and '154 patents). Exs. L, M, N, O, and R. The '918 patent was

23   challenged last week, and two more petitions were filed against the '154 and '408 patents. Exs. P,

24   S, and T. "The PTO must issue its decision on whether to grant the petitions within six months

25   after the date they were filed." *Evolutionary Intelligence*, 2014 WL 261837, at *3 (citing 35

26   U.S.C. §§ 313–14). Therefore, the PTO must issue its decision on the majority of the pending

27   petitions by March 2016, or only four months from now.

28

1    Finally, that Proofpoint is not yet a party to these petitions is irrelevant.  Proofpoint has up to

2    one month after the PTAB grants review on IPR petitions to join the proceedings.  35 U.S.C. § 315(c);

3    37 C.F.R. § 42.122(b).  Even if Proofpoint does *not* join the petitions, simplification of the issues

4    would still occur in the event review is granted.  "[T]he PTO's upholding of the claims 'is strong

5    evidence that the court must consider in assessing whether the party asserting invalidity has met its

6    burden of clear and convincing evidence.'"  *Evolutionary Intelligence*, 2014 WL 261837, at * 2

7    (quoting *Internet Patents Corp. v. eBags, Inc.*, 2013 U.S. Dist. LEXIS 122868, at *11 (N.D. Cal. Aug.

8    28, 2013)).  Further, "[t]here are no issues in the case unrelated to patent infringement for which the

9    PTO's expertise resulting from the reexamination would not be helpful."  *AT&T*, 774 F. Supp. 2d at

10   1053.  Thus, the fact that Proofpoint itself did not file the pending IPR petitions does not affect this

11   factor.

12       For the few remaining claims not covered by the current IPR petitions, Proofpoint will be

13   filing *ex parte* re-examinations based, in part, on similar prior art and invalidity theories already

14   presented in the IPR petitions, and further expect to include the prior art that led to the final rejection

15   of claims of '633 and '822 patents during *ex parte* re-examination.  Stake Decl. ¶ 4; Control Nos.

16   90/013,016 and 90/013,017.  Accordingly, by the time this motion is fully briefed for this Court's

17   consideration, all of the asserted claims will be subject to either PTO re-examination proceedings or

18   petitions for *inter partes* review.  *Id.*  Accordingly, all of the asserted claims will be subject to either

19   PTO or PTAB proceedings by the time this motion is fully briefed for this Court's consideration.  *Id.*

20       A stay pending both the Court's claim constructions, and its resolution of the parties' disputes,

21   will also simplify the issues for *Daubert* motion practice, pre-trial preparation, and trial.  *See CMAX*,

22   300 F.2d at 268-69.  For the foregoing reasons, this factor weighs strongly in favor of a stay.

23   **B.    Proofpoint Would Suffer Severe Hardship if It Is Required To Go Forward
         With Its Case**

24       The Court should stay the current deadlines in this case given its status alone.  Nearly every

25   issue will be affected by the outcome of Proofpoint's pending motions and the Court's forthcoming

26   claim constructions.  Proofpoint faces severe prejudice in the face of the current case schedule given

27   that the scope of Finjan's infringement case is virtually unknown.  Proofpoint stands to waste both

28

-11-

1    time and money pursuing theories of the case that are either struck, as per the motions, or irrelevant, as

2    per the forthcoming claim constructions.  Inefficient or pointless litigation, including that which

3    unnecessarily drives up the cost of litigation, is a potential hardship weighing in favor of a stay.

4    *Gong-Chun v. AETNA, Inc.*, No. 1:09-cv-01995-AWI-SKO, 2010 WL 1980175, at *3-4 (E.D. Cal.

5    May 17, 2010).

6          Proofpoint's renewed motion to strike Finjan's supplemental infringement contentions remains

7    pending.  This motion was heard on July 9, and an order on the same stands not only to narrow

8    Finjan's operable infringement case, but will likely necessitate supplemental expert reports.  Further

9    rounds of expert reports will require further expert depositions on the same.

10         In addition, Finjan submitted expert reports that have attempted to greatly expand its

11   infringement case to assert new theories and accuse new products never before disclosed.  Dkt. 209.

12   Dispositive motions will be heard on December 17.  Dkt. 139.  There are only two months between

13   the summary judgment hearing and the pre-trial conference (Dkt. 139), and Proofpoint will soon be

14   preparing for a trial against undefined infringement theories and unknown scope of the case.

15         Further, the Court has yet to issue a claim construction order in this case.  Once claim terms

16   are construed, the parties may be allowed to amend their infringement or invalidity contentions, if the

17   Court does not adopt a party's own construction.  Patent L.R. 3-6; *Radware Ltd. v. F5 Networks, Inc.*,

18   No. C--13--2024 RMW 2014 WL 3728482, at *2-3 (N.D. Cal. July 28, 2014); *Apple Inc. v. Samsung

19   Elecs. Co. Ltd.*, No. C 11-2226 SI, 2013 WL 3246094, at *4-9 (N.D. Cal. June 26, 2013); *Positive

20   Techs., Inc. v. Sony Elecs., Inc.*, 2013 WL 322556 (N.D. Cal. Jan. 28, 2013); *Avago Techs. General IP

21   Pte Ltd. v. Elan Microelecs. Corp.*, No. C04-05385 JW (HRL), 2007 WL 1449758, at *1 (N.D. Cal.

22   May 15, 2007).  Further amendments to contentions will make further supplemental expert reports and

23   depositions unavoidable.  Amended contentions asserting new or different theories, and supplemental

24   expert reports on the same, also stand to change the nature of this case entirely.  The current schedule

25   is simply unworkable.

26         Finjan unexpectedly served five opening expert reports, totally more than 3800 pages, to which

27   Proofpoint had only three weeks to respond.  Dkts. 204-05.  The parties' rebuttal reports were served

28

1   last week, and eleven expert depositions are scheduled to occur over only two weeks.  Proofpoint has

2   already suffered grave prejudice as a result of the expert deposition schedule.

3          This case is not ready for dispositive motions.  Dispositive motions are currently due this

4   Friday, November 13.  Dkts. 139, 179.  At this point, the parties wildly disagree on the scope of this

5   case.  Supplemental expert reports and depositions are almost inevitable, and upon the issuance of a

6   claim construction order, the amendment of contentions highly likely.  In the event the case schedule

7   progresses unchanged, Proofpoint will need, at the very least, a second round of briefing on

8   dispositive motions.  There is a very real risk that both fact and expert discovery will reopen once

9   some or all of the pending orders come down.

10  ███████████████████████████████████████████████████████████

11  ███████████████████  Proofpoint stands to suffer incurable prejudice if this case is not

12  stayed prior to pre-trial preparation pending the outcome of its motions to strike and claim

13  construction.  This Court should intervene to prevent the parties, and namely Proofpoint, from wasting

14  additional effort and resources litigating issues that may be struck and thus are irrelevant for trial,

15  especially when this case now claims five times more in damages disclosed only a few weeks ago.

16  Given the multitude of infringement theories Proofpoint seeks to strike, it is highly likely that the

17  Court will strike at least some of the same.  It is simply unrealistic to expect this case to go to trial on

18  the currently scheduled date, and because Proofpoint faces severe hardship, a stay should be granted.

19  **C.     A Stay Will Not Prejudice Finjan or Work Any Potential Damage**

20          Finjan is primarily in the business of licensing its patents.  Ex. U at  5, 11, 29, 33, and 35.

21  There is no evidence that a stay of this litigation would have any effect on Finjan's licensing activities.

22  Finjan has reached out to many entities to discuss a potential patent license.  Ex. V at 257299. ████

23  ███████████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████████

25  ███████████████████████████████████████████████████████████

26  ███████████████████████████████  In addition, this Court has already found that a

27  stay pending IPR will not harm Finjan's licensing activities.  *See Symantec*, 2015 WL 5915369, at *4.

28

1    Further, any potential harm to non-parties, namely Finjan's licensees, is irrelevant to Finjan's

2    prejudice. *See Evolutionary Intelligence*, 2014 WL 261837, at *3.

3         A stay of the case will not prejudice Finjan's position in the marketplace either. Where the

4    parties are not competitors, this factor strongly favors granting a stay. *Software Rights*, 2013 WL

5    5225522, at *5. Courts require specific evidence showing direct competition results in prejudice to

6    the non-moving party. *Symantec*, 2015 WL 5915369, at *4 (internal quotation marks omitted) (citing

7    *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-cv-02013-JST, 2014 WL 5021100, at *5

8    (N.D. Cal. Oct. 7, 2014)). Because Finjan is a non-practicing entity whose business is the licensing

9    and enforcement of patents, it "does not risk irreparable harm by [Proofpoint's] continued use of the

10   accused technology and can be fully restored to the status quo ante with monetary relief." *DSS Tech.*,

11   2015 WL 1967878 at *4 (citing *Software Rights*, 2013 WL 5225522, at *6). Finally, Finjan waited to

12   bring this suit until December 2013, even though in this case it accuses functionality of infringing

13   asserted patents issued years ago. Dkts. 1, 104. Regardless, "the stay issued by the Court will be

14   subject to reconsideration in a few months pending the PTO's decision on whether to institute IPR

15   proceedings[,]" and thus the short length of the stay "strongly militates against a finding of undue

16   prejudice." *Symantec*, 2015 WL 5915369, at *4.

17        Delayed recovery of a money judgment does not constitute undue prejudice for purposes of a

18   stay. *VirtualAgility*, 759 F.3d at 1318. Delay is "an unavoidable consequence to any stay, and

19   numerous courts have determined that a general claim of delay is not enough on its own to constitute

20   undue prejudice." *Convergence*, 2012 WL 1232187, at *2 (listing cases); *see also Software Rights*,

21   2013 WL 5225522, at *5. On the meet and confer, Finjan expressed that it was prejudiced because it

22   is entitled to have its day in court and see its case go to trial. Stake Decl. ¶ 12. Delay itself, however,

23   is not prejudicial. *DSS Tech.*, 2015 WL 1967878 at *4 (where the plaintiff asserted a "strong interest

24   in the timely enforcement of its patent rights[,] the Court was "not persuaded: the plaintiff in every

25   patent infringement action asserts such an interest").

26        There is no specific evidence suggesting a stay will affect Finjan's licensing activities nor its

27   position in the marketplace. As such, there is no evidence that suggests a stay will cause Finjan any

28   prejudice. This consideration weighs strongly in favor of a stay.

**D.      There Are Still Significant Proceedings That Remain in the Case**

The parties still have substantial work left at this stage in the case, which weighs in favor of a stay.  When determining the stage of the case for purposes of a stay pending resolution of IPRs, the proper question is "whether the litigation has progressed significantly enough for a stay to be disfavored." *Symantec*, 2015 WL 5915369, at *2.  Although fact discovery is complete, and expert reports have been exchanged, there is a strong likelihood that either fact discovery will reopen, the parties will supplement expert reports and take further expert depositions, or both.  Where "a substantial portion of the work—expert discovery, summary judgment, pre-trial preparation, and trial itself—lies ahead[,]" this factor weighs in favor of a stay. *PersonalWeb Techs.*, 2014 WL 116340, at *3.

As set forth above, Proofpoint has a pending motion to strike Finjan's supplemental contentions and is filing a motion to strike new theories in expert reports today, in addition to the instant motion.  Dkts.149, 209.  If the Court strikes these new theories, its decision will affect dispositive motions and pre-trial preparation.  If the Court does not strike these new theories, it is likely that fact discovery will reopen for Proofpoint to take discovery on those infringement theories not disclosed before fact discovery was complete.  The decisions on these motions will likely lead to additional rounds of supplemental expert reports and depositions and additional disclosures of prior art based on the newly asserted infringement theories.  Dispositive motions will be filed this Friday, November 13, and given the volume and scope of Finjan's expert reports, there will likely be a second round of dispositive motion practice, out of necessity.  In addition, the Court's forthcoming claim constructions will affect many material events in the case.  The issuance of a claim construction order is traditionally good cause to amend contentions where the Court does not adopt a party's proposed construction.  Patent L.R. 3-6; *Radware Ltd.*, 2014 WL 3728482, at *2-3; *Apple Inc.*, 2013 WL 3246094, at *4-9; *Positive Techs.,* 2013 WL 322556 at *3; *Avago Techs.*, 2007 WL 1449758, at *1.  Upon amendment of contentions, the parties would then have to amend their expert reports and take additional expert depositions on those amendments, and thus further expert discovery is all-but unavoidable.

1    Notably, the parties have yet to go to trial.  "Despite the substantial time and effort already

2    spent in this case, ***the most burdensome task is yet to come***."  *Smartflash*, 2015 WL 4603820, at

3    *10(emphasis added).  In *SmartFlash*, Samsung filed covered business method ("CBM") petitions

4    "mere months away from its trial date."  *Id.* at *9.  Months before those petitions were granted in

5    March and April 2015, the Court had "held hearings on claim construction, dispositive motions, and

6    the parties' *Daubert* challenges during 2014, conducted a joint pretrial conference in January 2015,

7    and denied [] defendants' motions for summary judgment of invalidity under § 101."  *Id.* at *2.  The

8    instant case is in a much earlier stage than the *SmartFlash* case.  Although the Court has held a claim

9    construction hearing, it has yet to issue a claim construction order.  Dispositive motions, as of yet,

10   have not been filed, much less heard.  The parties have no deadline for *Daubert* motions, and the joint

11   pretrial conference is over three months away.  Dkt. 139.  Now is the time to stay this case.

12   There are a multitude of pending issues, hearings, and orders, and the reopening of at least

13   expert discovery is virtually inevitable due to Finjan's improper expansion of its infringement

14   theories.  The first round of dispositive motions, as of the date of this motion, have not been filed, and

15   will not be heard for over one month.  The parties have not set a deadline for *Daubert* motions, and

16   pre-trial preparation has not yet begun.  Where the most burdensome tasks are yet to come, the stage

17   of the case weighs in favor of a stay.

18   **V.    CONCLUSION**

19   For the foregoing reasons, Proofpoint respectfully requests that the Court stay the case  until

20   Proofpoint's pending motions to strike have been resolved, the Court has issued its claim construction

21   order, and the PTAB has resolved the IPRs that have been filed on Finjan's patents.

22

23

24

25

26

27

28

1   DATED: November 11, 2015      Respectfully submitted,

                                                    QUINN EMANUEL URQUHART &
2                                                    SULLIVAN, LLP

3                              By   */s/ Jennifer A. Kash*

4                                 Jennifer A. Kash

                                 Sean Pak
5                                 Iman Lordgooei

                                 Sam Stake
6

7                                 Attorneys for Defendants PROOFPOINT, INC.

                                 and ARMORIZE TECHNOLOGIES, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28