# EXHIBIT A

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Jennifer A. Kash (Bar No. 203679)
2     (jenniferkash@quinnemanuel.com)
    Sean Pak (Bar No. 219032)
3     (seanpak@quinnemanuel.com)
    Iman Lordgooei (Bar No. 251320)
4     (imanlordgooei@quinnemanuel.com)
    Sam Stake (Bar No. 257916)
5     (samstake@quinnemanuel.com)
  50 California Street, 22nd Floor
6   San Francisco, California  94111-4788
  Telephone:    (415) 875-6600
7   Facsimile:    (415) 875-6700

8   Attorneys for Defendants PROOFPOINT, INC.
  and ARMORIZE TECHNOLOGIES, INC.

9

10              UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

| | |
|---|---|
| 13  FINJAN, INC., | Case No. 3:13-CV-05808-HSG |
| 14        Plaintiff, | **PROOFPOINT, INC. AND ARMORIZE TECHNOLOGIES, INC.'S SUPPLEMENTAL INVALIDITY CONTENTIONS PURSUANT TO PATENT LOCAL RULE 3-3** |
| 15     vs. | |
| 16  PROOFPOINT, INC. AND ARMORIZE TECHNOLOGIES, INC., | |
| 17       Defendants. | Trial Date:  March 7, 2016 |
| 18 | |

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

Pursuant to the Local Patent Rules for the Northern District of California, Proofpoint, Inc. ("Proofpoint") and Armorize Technologies, Inc. ("Armorize") (collectively, "Defendants") hereby provide their Supplemental Invalidity Contentions to Plaintiff Finjan, Inc. ("Finjan") with respect to the asserted claims identified by Plaintiff in its Supplemental Disclosure of Asserted Claims and Infringement Contentions, which are as follows:

    a.  Claims 1, 7, 15, 16, 32, 42, and 43 of U.S. Patent No. 6,154,844 ("the '844 Patent");

    b.  Claims 9, 12, and 28 of U.S. Patent No. 7,052,822 ("the '822 Patent");

    c.  Claims 1, 12, and 21 of U.S. Patent No. 7,613,918 ("the '918 Patent");

    d.  Claims 8, 10, 12, and 14 of U.S. Patent No. 7,647,633 ("the '633 Patent");

    e.  Claims 1, 2, 3, 5, 13, and 17 of U.S. Patent No. 7,975,305 ("the '305 Patent");

    f.  Claims 1, 17, 24, 35, 37, and 42 of U.S. Patent No. 8,079,086 ("the '086 Patent");

    g.  Claims 1, 2, 4, 5, 6, and 10 of U.S. Patent No. 8,141,154 ("the '154 Patent"); and

    h.  Claims 1, 4, 9, 21, and 23 of U.S. Patent No. 8,225,408 ("the '408 Patent").

With respect to each asserted claim, and based on their investigation to date, Defendants hereby:  (1) identify each currently known item of prior art that either anticipates or renders obvious each asserted claim pursuant to Patent L.R. 3-3(a); (2) specify whether each item of prior art identified pursuant to Patent L.R. 3-3(a) anticipates or renders obvious (either alone or in combination) each asserted claim pursuant to Patent L.R. 3-3(b); (3) submit charts identifying where specifically in each item of prior art each limitation of each asserted claim is found pursuant to Patent L.R. 3-3(c); and (4) identify the grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2), and lack of enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims pursuant to Patent L.R. 3-3(d).

Defendants submit these Invalidity Contentions without waiving or contradicting any position that Finjan's April 23, 2015 Supplemental Disclosure of Asserted Claims and Infringement Contentions are deficient and do not comply with the Patent Local Rules.  For example, Finjan's Infringement Contentions do not adequately point out any accused

1  instrumentalities with the specificity required by the Patent Local Rules.  Further, Finjan has failed

2  to present specific Infringement Contentions for indirect infringement under either inducement or

3  contributory infringement.

4  **II.    GENERAL RESERVATIONS**

5       The following contentions are subject to the reservations stated above and subject to

6  amendment pursuant to at least Patent L.R. 3-6, Rule 26(e) of the Federal Rules of Civil Procedure

7  to the extent appropriate in light of, for example, ongoing investigation and discovery regarding

8  the defenses asserted by Defendants, any Court ordered claim construction related to any asserted

9  claim, and the review and analysis of expert discovery.

10      The information and documents that Defendants produce are provisional and subject to

11  further revision as follows: Defendants expressly reserve the right to amend the disclosures and

12  document production herein should Finjan provide any information that it failed to provide in its

13  Disclosure of Infringement Contentions, Supplemental Infringement Contentions, or should Finjan

14  amend its Infringement Contentions (collectively "Infringement Contentions").  Further, because

15  discovery is not yet complete and because Defendants' search for, and analysis of, relevant prior

16  art is ongoing, Defendants reserve the right to amend the information provided herein, including

17  identifying, charting, and relying on additional prior art should Defendants' further search and

18  analysis yield additional information or references, consistent with the Patent Local Rules for the

19  Northern District of California and the Federal Rules of Civil Procedure.  Moreover, Defendants

20  reserve the right to revise any contentions concerning the invalidity of the asserted claims, which

21  may change depending upon any findings as to the priority or invention date of the asserted

22  claims, and/or positions that Finjan or its expert witness(es) may take concerning claim

23  construction, infringement, and/or invalidity issues.

24      Prior art not included in these contentions, whether known or not known to Defendants,

25  may become relevant.  In particular, Defendants are currently unaware of the extent, if any, to

26  which Finjan will contend that limitations of the asserted claims are not disclosed in the prior art

27  identified by Defendants.  To the extent that such an issue arises, Defendants reserve the right to

28  identify other prior art that would render obvious the allegedly missing limitation(s) of the cited

1   prior art reference.

2         To the extent the following contentions reflect constructions of claim limitations consistent

3   with or implicit in Finjan's Infringement Contentions, no inference is intended nor should any be

4   drawn that Defendants agree with Finjan's interpretation or understanding of any claim limitation

5   accused of being present literally or under the doctrine of equivalents, and Defendants expressly

6   reserve the right to contest Finjan's understanding or interpretation of such claim limitations.

7   Defendants offer the following invalidity contentions in response to Finjan's Infringement

8   Contentions.  Defendants offer the following invalidity contentions without prejudice as to (a) any

9   position Defendants may ultimately take regarding any claim construction issues, and (b)

10  Defendants' understanding or interpretation of any claim limitation accused of being present

11  literally or under the doctrine of equivalents.

12         Defendants further intend to rely on inventor admissions concerning the scope of the prior

13  art relevant to the asserted patents found in, *inter alia*:  the patent prosecution history

14  corresponding to each of the asserted patents and any patents or patent applications related to the

15  asserted patents; any deposition testimony of any named inventor on any of the asserted patents

16  and any patents or patent applications related to the asserted patents in this action or any other

17  action; and the papers filed and any evidence submitted by Finjan in connection with this action.

18         Defendants' claim charts in Exhibits A-1-A-16, B-1-B-10, C-1-C-8, D-1-D-10, E-1-E-13,

19  F-1-F-16, G-1-G-21, and H-1-H-13 cite to particular teachings and disclosures of the prior art as

20  applied to features of the asserted claims.  However, persons having ordinary skill in the art

21  generally may view an item of prior art in the context of other publications, literature, products,

22  and understanding.  As such, the cited portions are only examples, and Defendants reserve the

23  right to rely on un-cited portions of the prior art (including any information incorporated by

24  reference) and on other publications, expert testimony, and other evidence as aids in understanding

25  and interpreting the cited portions, as providing context thereto, and as additional evidence that the

26  prior art discloses a claim limitation or an asserted claim as a whole.  Defendants further reserve

27  the right to rely on un-cited portions of the prior art references (including any information

28  incorporated by reference), other publications, and testimony (including expert testimony) to

establish that an item of prior art discloses a claim limitation or an asserted claim as a whole, and to establish bases for combinations of certain items of prior art that render the asserted claims obvious.  Where Defendants cite to a particular figure in prior art, the citation should be understood to encompass the caption and description of the figure and any text relating to or discussing the figure.  Conversely, where Defendants cite to particular text referring to a figure, the citation should be understood to include the figure as well.

The items of prior art disclosed in the claim charts in Exhibits A-1-A-16, B-1-B-10, C-1-C-8, D-1-D-10, E-1-E-13, F-1-F-16, G-1-G-21, and H-1-H-13 may disclose the limitations of the asserted claims explicitly and/or inherently, and they may be relied upon to show the state of the art in the relevant time frame.  The suggested obviousness combinations are provided in the alternative to Defendants' anticipation contentions and are not to be construed to suggest that any item of prior art included in the combinations is not by itself anticipatory.

Where Defendants cite to a particular system as prior art to any limitation or asserted claim, Defendants intend and hereby do include any further document or thing that embodies, expresses, or explains the prior art system.  Where Defendants cite to a particular patent or publication as prior art to any limitation or asserted claim, Defendants intend and hereby do include any further system or apparatus that embodies, expresses, or explains the prior art publication.  Defendants reserve the right to rely on any third party prior art documents that have been or will be produced in this litigation, including prior art documents produced bearing Bates labels TFS00000001 – TFS00005934, PP-ARM00137856 - PP-ARM00137880, and CA_MEDIA_0000001 – CA_MEDIA_0003906.

Defendants reserve the right to assert that the asserted claims are invalid under 35 U.S.C. § 102(f) in the event that Defendants obtains evidence that the inventors named in any of the asserted patents did not invent (either alone or in conjunction with others) the subject matter claimed in the asserted patents.  If Defendants obtain such evidence, they will provide the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived.

Defendants also reserve the right to challenge any of the claim terms herein under 35

1   U.S.C. § 112, including by arguing that they are indefinite, not supported by the written

2   description, not enabled, or fail to disclose the best mode contemplated by the inventor(s).

3   Accordingly, nothing stated herein shall be construed as a waiver of any argument available under

4   35 U.S.C. §§ 101, 102, and 112.

5        Defendants reserve the right to modify, amend, or further supplement these contentions to

6   show the invalidity of any additional claims that the Court may allow Plaintiff to later assert.

7   Defendants further reserve the right to supplement their Patent L.R. 3-4 document production

8   should they later find additional responsive documents.

9   **III.    PATENT L.R. 3-3(a)**

10        Pursuant to Patent L.R. 3-3(a) and subject to Defendants' reservation of rights herein,

11   Defendants identify each currently known item of prior art that they know to either anticipate or

12   render obvious each asserted claim of each asserted patent in Appendices 1-3.  Appendix 1

13   identifies each prior art patent and publication by its number, country of origin, and issue date.

14   Appendix 2 identifies each prior art publication by its title, publication date, and where feasible,

15   author and publisher.  Appendix 3 identifies prior art items, such as products or systems, which

16   Defendants believe qualify as prior art and expect to receive additional documentation through

17   discovery.  Appendix 3 identifies the prior art item offered for sale or publicly used or known in

18   the "Prior Art Item" column, the date the offer or use took place or the information became known

19   in the "Date" column, and the identity of the person or entity which made the use or which made

20   and received the offer, or the person or entity which made the information known or to whom it

21   was made known in the "Identity" column.  Whether any item of prior art anticipates or renders

22   obvious any asserted claim may depend upon claim construction.

23        Discovery is ongoing, and Defendants' prior art investigation and third-party discovery is

24   therefore not yet complete.  The tables of prior art provided herein are not exclusive, and

25   Defendants' production pursuant to Patent L.R. 3-4 and supplemental production may contain

26   additional items of prior art that render one or more of the asserted claims invalid.  Defendants

27   reserve the right to rely on both the listed and unlisted items of prior art produced pursuant to

28   Patent L.R. 3-4, as well as other prior art that may become known and/or relevant during the

course of this action.  Defendants reserve the right to present additional items of prior art under 35 U.S.C. §§ 102 and 103 that are located during the course of discovery or further investigation.  For example, Defendants expect to receive documents from third parties (either through informal requests or under subpoena) that are believed to have knowledge, documentation, or corroborating evidence concerning any prior art listed in Appendices 1-3 and any additional prior art.  In addition, Defendants reserve the right to assert invalidity under 35 U.S.C. § 102(c), (d), or (f) to the extent that discovery or further investigation yield information forming the basis for such invalidity.

In addition, Defendants intend to rely upon all prior art references listed and/or asserted as invalidating prior art by any alleged infringers in any other litigation (past, present/ongoing, or future) and/or re-examination involving the patents-in-suit and other related patents, including but not limited to:

- *Finjan, Inc. v. Palo Alto Networks, Inc.*, Civil Action No. 14-cv-04908 in the Northern District of California;

- *Finjan, Inc. v. Symantec Corp.*, Civil Action No. 14-cv-02998 in the Northern District of California;

- *Finjan, Inc. v. FireEye, Inc.*, Civil Action No. 13-cv-3133 in the Northern District of California;

- *Finjan, Inc. v. Websense, Inc.*, Civil Action No. 13-cv-04398 in the Northern District of California;

- *Finjan, Inc. v. Websense, Inc.*, Civil Action No. 14-cv-01353 in the Northern District of California;

- *Finjan, Inc. v. Blue Coat Systems, Inc.*, Civil Action No. 13-cv-03999 in the Northern District of California;

- *Finjan, Inc. v. Sophos, Inc.*, Civil Action No. 14-cv-01197 in the Northern District of California;

- *Finjan Software Ltd. v. Aladdin Knowledge Systems Inc. et al*, Civil Action No. 08-cv-00300 in the District of Delaware; and

1  • *Finjan, Inc. v. McAfee Inc. et al.*, Civil Action No. 10-cv-00593 in the District of

2  Delaware.

3  Defendants further incorporate by reference all invalidity contentions and any

4  supplemental or amended invalidity contentions served on Finjan by any defendant in other

5  litigation (past, present/ongoing, or future), including the cases listed above.  Defendants intend to

6  rely upon any additional prior art references discussed or disclosed in any expert report on the

7  invalidity of the patents-in-suit, in this action or any other litigation (past, present/ongoing, or

8  future) and/or reexamination involving the patents-in-suit and any related patents.  Defendants

9  also intend to rely on references identified in the file histories of the patents-in-suit, any related

10  applications or issued patents (e.g., continuations, continuations-in-part, divisional etc.)[1], as well

11  as any reexaminations of the patents-in-suit or related patents.  Defendants incorporate by

12  reference those prior art references herein.

13  **IV.    PATENT L.R. 3-3(b)**

14  Pursuant to Patent L.R. 3-3(b) and subject to Defendants' reservation of rights herein,

15  Defendants specify whether each item of prior art identified pursuant to Patent L.R. 3-3(a)

16  anticipates or renders obvious (either alone or in combination) each asserted claim.

17  **A.    U.S. Patent No. 6,154,844**

18  Finjan contends in its Infringement Contentions that the priority date for each of the

19  asserted claims of the '844 patent is November 8, 1996.  Defendants allege that the priority date

20  for each of the asserted claims of the '844 patent is December 22, 1997.

21  *i.    Anticipation*

22  The asserted claims of the '844 patent (1, 7, 15, 16, 32, 42, and 43) are anticipated and/or

23  rendered obvious by at least the items of prior art identified in Exhibits A-1-A-16:

24  The prior art cited in Exhibits A-1-A-16 is illustrative and not exhaustive.  Though these

25  claim charts provide illustrative citations to where each claim limitation may be found in the prior

26  art, the charted prior art may contain other disclosures of each claim limitation as well, and

27  _____

28  [1]  Including any foreign or non-foreign counterpart applications or patents.

1   Defendants reserve the right to argue any claim limitation of the asserted claims of the '844 patent

2   is disclosed in non-cited portions of these items of prior art.  If Finjan asserts that any of these

3   items of prior art fail to disclose one or more claim limitations of an asserted claim, Defendants

4   reserve the right to use one or more of these items of prior art as prior art under 35 U.S.C. § 103.

5                    *ii.       Obviousness*

6       To the extent a finder of fact finds that a limitation of any asserted claim was not disclosed

7   by one of the items of prior art identified in Exhibits A-1-A-16 such claims are nevertheless un-

8   patentable due to being obvious because they contain nothing that constitutes patentable

9   innovation.  To the extent not anticipated, no asserted claim goes beyond combining familiar

10  elements according to known methods to achieve predictable results or does more than choose

11  between clear alternatives known to those of ordinary skill in the art.

12      Each anticipatory item of prior art identified in Exhibits A-1-A-16, either alone or in

13  combination with one or more items of prior art identified in Exhibits A-1-A-16 and Table A,

14  renders the asserted claims invalid as obvious.  These obviousness combinations are not exclusive,

15  and Defendants reserve the right to supplement these combinations using any items of prior art

16  that may become known or their relevance become known to Defendants during the course of

17  discovery.

18      In addition to the specific combinations of prior art disclosed herein, Defendants reserve

19  the right to rely on any other combination of any items of prior art disclosed herein.  Defendants

20  further reserve the right to rely upon combinations disclosed within the prosecution history of the

21  prior art references cited herein or the asserted patents.  These obviousness combinations reflect

22  Defendants' present understanding of the potential scope of the asserted claims of each of the

23  asserted patents that Finjan appears to be advocating, and should not be seen as Defendants'

24  acquiescence to Finjan's interpretation of any asserted claim.

25      Defendants believe that no showing of a specific motivation to combine prior art is

26  required to combine any item of prior art identified in Exhibits A-1-A-16 and Table A, as each

27  combination of art would have no unexpected results, and at most would simply represent a

28  known alternative to one of ordinary skill in the art.  *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct.

1727, 1739-40 (2007) (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle."  Id. at 1742.  Nevertheless, in keeping with the Patent Rules, and in addition to the information contained in the section above and elsewhere in these contentions, Defendants hereby identify additional motivations and reasons to combine the items of prior art.

One or more combinations of the items of prior art identified in Exhibits A-1 through A-16 and Table A would have been obvious because these items of prior art would have been combined using: known methods to yield predictable results; known techniques in the same way; a simple substitution of on known, equivalent element for another to obtain predictable results; and/or a teaching, suggestion, or motivation in the prior art generally.  In addition, it would have been obvious to try combining the items of prior art identified in Exhibits A-1 through A-16 and Table A because there were only a finite number of predictable solutions and/or because known work in one field of endeavor prompted variations based on predictable design incentives and/or market forces either in the same field or a different one.  In addition, the combination of the items of prior art identified in Exhibits would have been obvious because the combination represents the known potential options with a reasonable expectation of success.

Additional evidence that there would have been a motivation to combine the items of prior art identified in Exhibits A-1 through A-16 and Table A includes the interrelated teachings of multiple items of prior art; the effects of demands known to the design community or present in the marketplace; the existence of a known problem for which there was an obvious solution encompassed by the asserted claims; the existence of a known need or problem in the field of the endeavor at the time of the invention(s); and the background knowledge that would have been possessed by a person having ordinary skill in the art.  For example, the items of prior art are generally directed to the same problems: computer and/or network security, such as, and without limitation, creating a profile for a Downloadable and linking the profile to the Downloadable.

1   Thus, a skilled artisan seeking to solve this problem would look to these items of prior art in

2   combination.

3        Thus, the motivation to combine the teachings of the items of prior art identified in

4   Exhibits A-1 through A-16 and Table A is found in the items of prior art themselves and in: (1) the

5   nature of the problem being solved; (2) the express, implied and inherent teachings of the prior art;

6   (3) the knowledge of persons of ordinary skill in the art; (4) the fact that the prior art is generally

7   directed towards computer and/or network security, such as, and without limitation, methods and

8   systems for creating a profile for an executable and verifying said profile and/or (5) the predictable

9   results obtained in combining the different elements of the prior art.  Accordingly, Defendants

10  contend that each asserted claim would have been obvious not only by the combinations explicitly

11  defined in these contentions, but also by any combination of items of prior art that renders obvious

12  an asserted claim.

13        Numerous items of prior art, including those identified in Exhibits A-1 through A-16 and

14  Table A, reflect common knowledge and the state of the prior art before the priority date of the

15  '844 patent.  As it would be unduly burdensome to create detailed claim charts for every

16  invalidating combination, for at least the reasons described throughout these contentions, it would

17  have been obvious to one of ordinary skill in the art to combine any of a number of items of prior

18  art, including any combination of those identified in the attached Exhibits to meet the limitations

19  of the asserted claims.  As such, Defendants' inclusion of exemplary combinations, in view of the

20  factors and motivations identified in the preceding paragraphs, does not preclude Defendants from

21  identifying other invalidating combinations as appropriate.

22        Defendants assert that abundant motivation to combine would exist for any items of prior

23  art that discuss computer and/or network security, such as, and without limitation, creating a

24  profile for a Downloadable and linking the profile to the Downloadable.  A person of ordinary

25  skill in the art at the relevant time period would have understood that systems and methods for

26  creating a profile for an executable, and linking the profile to the executable, were in widespread

27  use and that such systems could have been readily combined with other systems and methods that

28  could generate a profile and/or create an association to an executable.  For these reasons, there

would have been abundant motivation to combine these items of prior art as described above.

**B.     U.S. Patent No. 7,058,822**

Finjan contends in its Infringement Contentions that the priority date for each of the asserted claims of the '822 patent is January 29, 1997.  Defendants allege that the priority date for each of the asserted claims of the '822 patent is May 17, 2001.  Defendants also intend to rely on any argument made in ongoing reexamination proceedings before the U.S. Patent and Trademarks Office, including without limitation the arguments made by the examiner in its Final Rejection of certain claims of this patent.

*i.     Anticipation*

The asserted claims of the '822 patent (claims 9, 12, and 28) are anticipated and/or rendered obvious by at least the items of prior art identified in Appendices 1-3, *supra*, including those charted in Exhibits B-1 – B-10.  The prior art cited in Exhibits B-1 – B-10 is illustrative and not exhaustive.  Though these claim charts provide illustrative citations to where each claim limitation may be found in the prior art, the charted prior art may contain other disclosures of each claim limitation as well, and Defendants reserve the right to argue any claim limitation of the asserted claims of the '822 patent is disclosed in non-cited portions of these items of prior art.  If Finjan asserts that any of these items of prior art fail to disclose one or more claim limitations of an asserted claim, Defendants reserve the right to use one or more of these items of prior art as prior art under 35 U.S.C. § 103.

*i.     Obviousness*

To the extent a finder of fact finds that a limitation of any asserted claim was not disclosed by one of the items of prior art identified in Exhibits B-1 – B-10 such claims are nevertheless un-patentable due to being obvious because they contain nothing that constitutes patentable innovation.  To the extent not anticipated, no asserted claim goes beyond combining familiar elements according to known methods to achieve predictable results or does more than choose between clear alternatives known to those of ordinary skill in the art.  Each anticipatory item of prior art identified in Exhibits B-1 – B-10, either alone or in combination with one or more items of prior art identified in Table B, renders the asserted claims invalid as obvious.  These

1  obviousness combinations are not exclusive, and Defendants reserve the right to supplement these

2  combinations using any items of prior art that may become known or their relevance become

3  known to Defendants during the course of discovery.

4         In addition to the specific combinations of prior art disclosed herein, Defendants reserve

5  the right to rely on any other combination of any items of prior art disclosed herein.  Defendants

6  further reserve the right to rely upon combinations disclosed within the prosecution history of the

7  prior art references cited herein or the asserted patents.  These obviousness combinations reflect

8  Defendants' present understanding of the potential scope of the asserted claims of each of the

9  asserted patents that Finjan appears to be advocating, and should not be seen as Defendants'

10  acquiescence to Finjan's interpretation of any asserted claim.

11         Defendants believe that no showing of a specific motivation to combine prior art is

12  required to combine any item of prior art as each combination of art would have no unexpected

13  results, and at most would simply represent a known alternative to one of ordinary skill in the art.

14  *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739-40 (2007) (rejecting the Federal Circuit's

15  "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an

16  "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary

17  skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person

18  of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces

19  of a puzzle."  *Id.* at 1742.  Nevertheless, in keeping with the Patent Rules, and in addition to the

20  information contained in the section above and elsewhere in these contentions, Defendants hereby

21  identify additional motivations and reasons to combine the items of prior art.

22         One or more combinations of the items of prior art identified in Exhibits B-1 – B-10 and

23  Table B would have been obvious because these items of prior art would have been combined

24  using: known methods to yield predictable results; known techniques in the same way; a simple

25  substitution of one known, equivalent element for another to obtain predictable results; and/or a

26  teaching, suggestion, or motivation in the prior art generally.  In addition, it would have been

27  obvious to try combining the items of prior art identified in Exhibits B-1 – B-10 and Table B

28  because there were only a finite number of predictable solutions and/or because known work in

1  one field of endeavor prompted variations based on predictable design incentives and/or market

2  forces either in the same field or a different one.  In addition, the combination of the items of prior

3  art identified in Exhibits B-1 – B-10 and Table B would have been obvious because the

4  combination represents the known potential options with a reasonable expectation of success.

5        Additional evidence that there would have been a motivation to combine the items of prior

6  art identified in Exhibits B-1 – B-10 and Table B includes the interrelated teachings of multiple

7  items of prior art; the effects of demands known to the design community or present in the

8  marketplace; the existence of a known problem for which there was an obvious solution

9  encompassed by the asserted claims; the existence of a known need or problem in the field of the

10  endeavor at the time of the invention(s); and the background knowledge that would have been

11  possessed by a person having ordinary skill in the art.  For example, the items of prior art are

12  generally directed to the same problems: computer and/or network security, such as, and without

13  limitation, protecting a computer from potentially malicious content, determining whether

14  incoming code is executable, generating mobile protection code, and sandboxing.  Thus, a skilled

15  artisan seeking to solve this problem would look to these items of prior art in combination.  Thus,

16  the motivation to combine the teachings of the items of prior art identified in Exhibits B-1 – B-10

17  and Table B is found in the items of prior art themselves and in: (1) the nature of the problem

18  being solved; (2) the express, implied and inherent teachings of the prior art; (3) the knowledge of

19  persons of ordinary skill in the art; (4) the fact that the prior art is generally directed towards

20  computer and/or network security, such as, and without limitation, detecting potential exploits

21  within an incoming stream of program code and/or (5) the predictable results obtained in

22  combining the different elements of the prior art.  Accordingly, Defendants contend that each

23  asserted claim would have been obvious not only by the combinations explicitly defined in these

24  contentions, but also by any combination of items of prior art that renders obvious an asserted

25  claim.

26        Numerous items of prior art, including those identified in Exhibits B-1 – B-10 and Tables

27  A and B, reflect common knowledge and the state of the prior art before the priority date of the

28  '822 patent.  As it would be unduly burdensome to create detailed claim charts for every

invalidating combination, for at least the reasons described throughout these contentions, it would have been obvious to one of ordinary skill in the art to combine any of a number of items of prior art, including any combination of those identified in the attached Exhibits to meet the limitations of the asserted claims.  As such, Defendants' inclusion of exemplary combinations, in view of the factors and motivations identified in the preceding paragraphs, does not preclude Defendants from identifying other invalidating combinations as appropriate.

Defendants assert that abundant motivation to combine would exist for any items of prior art that discuss computer and/or network security, such as, and without limitation, protecting a computer from potentially malicious content, determining whether incoming code is executable, generating mobile protection code, and sandboxing.  A person of ordinary skill in the art at the relevant time period would have understood that such systems and methods for were in widespread use and that such systems could have been readily combined with other systems and methods that could protecting a computer from potentially malicious content.

### C.     U.S. Patent No. 7,613,918

Finjan contends in its Infringement Contentions that the priority date for each of the asserted claims of the '918 patent is February 16, 2006.

#### i.     Anticipation

The asserted claims of the '918 patent (claims 1, 12, and 21) are anticipated and/or rendered obvious by at least the items of prior art identified in Appendices 1-3, *supra*, including those charted in Exhibits C-1 – C-8.  The prior art cited in Exhibits C-1 – C-8 are illustrative and not exhaustive.  Though these claim charts provide illustrative citations to where each claim limitation may be found in the prior art, the charted prior art may contain other disclosures of each claim limitation as well, and Defendants reserve the right to argue any claim limitation of the asserted claims of the '918 patent is disclosed in non-cited portions of these items of prior art.  If Finjan asserts that any of these items of prior art fail to disclose one or more claim limitations of an asserted claim, Defendants reserve the right to use one or more of these items of prior art as prior art under 35 U.S.C. § 103.

#### ii.     Obviousness

To the extent a finder of fact finds that a limitation of any asserted claim was not disclosed by one of the items of prior art identified in Exhibits C-1 – C-8, such claims are nevertheless un-patentable due to being obvious because they contain nothing that constitutes patentable innovation.  To the extent not anticipated, no asserted claim goes beyond combining familiar elements according to known methods to achieve predictable results or does more than choose between clear alternatives known to those of ordinary skill in the art.  Each anticipatory item of prior art identified in Exhibits C-1 – C-8, either alone or in combination with one or more items of prior art identified in Table C, renders the asserted claims invalid as obvious.  These obviousness combinations are not exclusive, and Defendants reserve the right to supplement these combinations using any items of prior art that may become known or their relevance become known to Defendants during the course of discovery.

In addition to the specific combinations of prior art disclosed herein, Defendants reserve the right to rely on any other combination of any items of prior art disclosed herein.  Defendants further reserve the right to rely upon combinations disclosed within the prosecution history of the prior art references cited herein or the asserted patents.  These obviousness combinations reflect Defendants' present understanding of the potential scope of the asserted claims of each of the asserted patents that Finjan appears to be advocating, and should not be seen as Defendants' acquiescence to Finjan's interpretation of any asserted claim.

Defendants believe that no showing of a specific motivation to combine prior art is required to combine any item of prior art as each combination of art would have no unexpected results, and at most would simply represent a known alternative to one of ordinary skill in the art.  *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739-40 (2007) (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle."  *Id.* at 1742.  Nevertheless, in keeping with the Patent Rules, and in addition to the information contained in the section above and elsewhere in these contentions, Defendants hereby

1  identify additional motivations and reasons to combine the items of prior art.

2        One or more combinations of the items of prior art identified in Exhibits C-1 – C-8 and

3  Table C would have been obvious because these items of prior art would have been combined

4  using: known methods to yield predictable results; known techniques in the same way; a simple

5  substitution of on known, equivalent element for another to obtain predictable results; and/or a

6  teaching, suggestion, or motivation in the prior art generally.  In addition, it would have been

7  obvious to try combining the items of prior art identified in Exhibits C-1 – C-8 and Table C

8  because there were only a finite number of predictable solutions and/or because known work in

9  one field of endeavor prompted variations based on predictable design incentives and/or market

10  forces either in the same field or a different one.  In addition, the combination of the items of prior

11  art identified in Exhibits C-1 – C-8 and Table C would have been obvious because the

12  combination represents the known potential options with a reasonable expectation of success.

13        Additional evidence that there would have been a motivation to combine the items of prior

14  art identified in Exhibits C-1 – C-8 and Table C includes the interrelated teachings of multiple

15  items of prior art; the effects of demands known to the design community or present in the

16  marketplace; the existence of a known problem for which there was an obvious solution

17  encompassed by the asserted claims; the existence of a known need or problem in the field of the

18  endeavor at the time of the invention(s); and the background knowledge that would have been

19  possessed by a person having ordinary skill in the art.  For example, the items of prior art are

20  generally directed to the same problems: computer and/or network security, such as, and without

21  limitation, protecting a computer from potentially malicious content and selecting an account best

22  suited to processing incoming content.  Thus, a skilled artisan seeking to solve this problem would

23  look to these items of prior art in combination.  Thus, the motivation to combine the teachings of

24  the items of prior art identified in Exhibits C-1 – C-8 and Table C is found in the items of prior art

25  themselves and in: (1) the nature of the problem being solved; (2) the express, implied and

26  inherent teachings of the prior art; (3) the knowledge of persons of ordinary skill in the art; (4) the

27  fact that the prior art is generally directed towards computer and/or network security, such as, and

28  without limitation, detecting potential exploits within an incoming stream of program code and/or

PROOFPOINT'S SUPPLEMENTAL INVALIDITY CONTENTIONS

1  (5) the predictable results obtained in combining the different elements of the prior art.

2  Accordingly, Defendants contend that each asserted claim would have been obvious not only by

3  the combinations explicitly defined in these contentions, but also by any combination of items of

4  prior art that renders obvious an asserted claim.

5       Numerous items of prior art, including those identified in Exhibits C-1 – C-8 and Tables A

6  - C, reflect common knowledge and the state of the prior art before the priority date of the '918

7  patent.  As it would be unduly burdensome to create detailed claim charts for every invalidating

8  combination, for at least the reasons described throughout these contentions, it would have been

9  obvious to one of ordinary skill in the art to combine any of a number of items of prior art,

10  including any combination of those identified in the attached Exhibits to meet the limitations of

11  the asserted claims.  As such, Defendants' inclusion of exemplary combinations, in view of the

12  factors and motivations identified in the preceding paragraphs, does not preclude Defendants from

13  identifying other invalidating combinations as appropriate.

14       Defendants assert that abundant motivation to combine would exist for any items of prior

15  art that discuss computer and/or network security, such as, and without limitation, protecting a

16  computer from potentially malicious content and selecting an account best suited to processing

17  incoming content.  A person of ordinary skill in the art at the relevant time period would have

18  understood that such systems and methods were in widespread use and that such systems could

19  have been readily combined with other systems and methods that could protecting a computer

20  from potentially malicious content.

21      **D.**    **U.S. Patent No. 7,647,633**

22       Finjan contends in its Infringement Contentions that the priority date for each of the

23  asserted claims of the '633 patent is January 29, 1997.  Defendants allege that the priority date for

24  each of the asserted claims of the '633 patent is June 22, 2005.  Defendants also intend to rely on

25  any argument made in reexamination proceedings before the U.S. Patent and Trademarks Office,

26  including without limitation the arguments made by the examiner in its Final Rejection of certain

27  claims of this patent.

28      *i.*    *Anticipation*

The asserted claims of the '633 patent (claims 8, 10, 12, and 14) are anticipated and/or rendered obvious by at least the items of prior art identified in Tables A-B, *supra*, including those charted in Exhibits D-1 – D-10.  The prior art cited in Exhibits D-1 –D-10 is illustrative and not exhaustive.  Though these claim charts provide illustrative citations to where each claim limitation may be found in the prior art, the charted prior art may contain other disclosures of each claim limitation as well, and Defendants reserve the right to argue any claim limitation of the asserted claims of the '633 patent is disclosed in non-cited portions of these items of prior art.  If Finjan asserts that any of these items of prior art fail to disclose one or more claim limitations of an asserted claim, Defendants reserve the right to use one or more of these items of prior art as prior art under 35 U.S.C. § 103.

ii.     *Obviousness*

To the extent a finder of fact finds that a limitation of any asserted claim was not disclosed by one of the items of prior art identified in Exhibits D-1 – D-10 such claims are nevertheless un-patentable due to being obvious because they contain nothing that constitutes patentable innovation.  To the extent not anticipated, no asserted claim goes beyond combining familiar elements according to known methods to achieve predictable results or does more than choose between clear alternatives known to those of ordinary skill in the art.  Each anticipatory item of prior art identified in Exhibits D-1 – D-10, either alone or in combination with one or more items of prior art identified in Table B, renders the asserted claims invalid as obvious.  These obviousness combinations are not exclusive, and Defendants reserve the right to supplement these combinations using any items of prior art that may become known or their relevance become known to Defendants during the course of discovery.

In addition to the specific combinations of prior art disclosed herein, Defendants reserve the right to rely on any other combination of any items of prior art disclosed herein.  Defendants further reserve their right to rely upon combinations disclosed within the prosecution history of the prior art references cited herein or the asserted patents.  These obviousness combinations reflect Defendants' present understanding of the potential scope of the asserted claims of each of the asserted patents that Finjan appears to be advocating, and should not be seen as Defendants'

1  acquiescence to Finjan's interpretation of any asserted claim.

2      Defendants believe that no showing of a specific motivation to combine prior art is

3  required to combine any item of prior art as each combination of art would have no unexpected

4  results, and at most would simply represent a known alternative to one of ordinary skill in the art.

5  *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739-40 (2007) (rejecting the Federal Circuit's

6  "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an

7  "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary

8  skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person

9  of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces

10  of a puzzle."  *Id*. at 1742.  Nevertheless, in keeping with the Patent Rules, and in addition to the

11  information contained in the section above and elsewhere in these contentions, Defendants hereby

12  identify additional motivations and reasons to combine the items of prior art.

13      One or more combinations of the items of prior art identified in Exhibits D-1 – D-10 and

14  Table B would have been obvious because these items of prior art would have been combined

15  using: known methods to yield predictable results; known techniques in the same way; a simple

16  substitution of one known, equivalent element for another to obtain predictable results; and/or a

17  teaching, suggestion, or motivation in the prior art generally.  In addition, it would have been

18  obvious to try combining the items of prior art identified in Exhibits D-1 – D-10 and Table B

19  because there were only a finite number of predictable solutions and/or because known work in

20  one field of endeavor prompted variations based on predictable design incentives and/or market

21  forces either in the same field or a different one.  In addition, the combination of the items of prior

22  art identified in Exhibits D-1 – D-10 and Table B would have been obvious because the

23  combination represents the known potential options with a reasonable expectation of success.

24      Additional evidence that there would have been a motivation to combine the items of prior

25  art identified in Exhibits D-1 – D-10 and Table B includes the interrelated teachings of multiple

26  items of prior art; the effects of demands known to the design community or present in the

27  marketplace; the existence of a known problem for which there was an obvious solution

28  encompassed by the asserted claims; the existence of a known need or problem in the field of the

1    endeavor at the time of the invention(s); and the background knowledge that would have been

2    possessed by a person having ordinary skill in the art.  For example, the items of prior art are

3    generally directed to the same problems: computer and/or network security, such as, and without

4    limitation, protecting a computer from potentially malicious content, determining whether

5    incoming code is executable, generating mobile protection code, and sandboxing.  Thus, a skilled

6    artisan seeking to solve this problem would look to these items of prior art in combination.  Thus,

7    the motivation to combine the teachings of the items of prior art identified in Exhibits D-1 – D-10

8    and Table B is found in the items of prior art themselves and in: (1) the nature of the problem

9    being solved; (2) the express, implied and inherent teachings of the prior art; (3) the knowledge of

10   persons of ordinary skill in the art; (4) the fact that the prior art is generally directed towards

11   computer and/or network security, such as, and without limitation, detecting potential exploits

12   within an incoming stream of program code and/or (5) the predictable results obtained in

13   combining the different elements of the prior art.  Accordingly, Defendants contend that each

14   asserted claim would have been obvious not only by the combinations explicitly defined in these

15   contentions, but also by any combination of items of prior art that renders obvious an asserted

16   claim.

17        Numerous items of prior art, including those identified in Exhibits D-1 – D-10 and Tables

18   A-B, reflect common knowledge and the state of the prior art before the priority date of the '633

19   patent.  As it would be unduly burdensome to create detailed claim charts for every invalidating

20   combination, for at least the reasons described throughout these contentions, it would have been

21   obvious to one of ordinary skill in the art to combine any of a number of items of prior art,

22   including any combination of those identified in the attached Exhibits to meet the limitations of

23   the asserted claims.  As such, Defendants' inclusion of exemplary combinations, in view of the

24   factors and motivations identified in the preceding paragraphs, does not preclude Defendants from

25   identifying other invalidating combinations as appropriate.

26        Defendants assert that abundant motivation to combine would exist for any items of prior

27   art that discuss computer and/or network security, such as, and without limitation, protecting a

28   computer from potentially malicious content, determining whether incoming code is executable,

generating mobile protection code, and sandboxing.  A person of ordinary skill in the art at the relevant time period would have understood that such systems and methods for were in widespread use and that such systems could have been readily combined with other systems and methods that could protecting a computer from potentially malicious content.

### E.     U.S. Patent No. 7,975,305

Finjan contends in its Infringement Contentions that the priority date for each of the asserted claims (1, 2, 3, 5, 13, and 17) of the '305 patent is August 30, 2004.  Defendants allege that the priority date for each of the asserted claims of the '305 patent is December 9, 2004.

#### i.     Anticipation

The asserted claims of the '305 patent are anticipated and/or rendered obvious by at least those charted in Exhibits E-1-E-13.

The prior art cited in Exhibits E-1-E-13 is illustrative and not exhaustive.  Though these claim charts provide illustrative citations to where each claim limitation may be found in the prior art, the charted prior art may contain other disclosures of each claim limitation as well, and Defendants reserve the right to argue any claim limitation of the asserted claims of the '305 patent is disclosed in non-cited portions of these items of prior art.  If Finjan asserts that any of these items of prior art fail to disclose one or more claim limitations of an asserted claim, Defendants reserve the right to use one or more of these items of prior art as prior art under 35 U.S.C. § 103.

#### ii.     Obviousness

To the extent a finder of fact finds that a limitation of any asserted claim was not disclosed by one of the items of prior art identified in Exhibits E-1-E-13 and Table D such claims are nevertheless un-patentable due to being obvious because they contain nothing that constitutes patentable innovation.  To the extent not anticipated, no asserted claim goes beyond combining familiar elements according to known methods to achieve predictable results or does more than choose between clear alternatives known to those of ordinary skill in the art.  Each anticipatory item of prior art identified in Exhibits E-1-E-13 and Table D, either alone or in combination with one or more items of prior art identified in Exhibits E-1-E-13 and Table D, renders the asserted claims invalid as obvious.

In addition to the specific combinations of prior art disclosed herein, Defendants reserve the right to rely on any other combination of any items of prior art disclosed herein. Defendants further reserve the right to rely upon combinations disclosed within the prosecution history of the prior art references cited herein or the asserted patents. These obviousness combinations reflect Defendants' present understanding of the potential scope of the asserted claims of each of the asserted patents that Finjan appears to be advocating, and should not be seen as Defendants' acquiescence to Finjan's interpretation of any asserted claim.

Defendants believe that no showing of a specific motivation to combine prior art is required to combine any item of prior art identified in Exhibits E-1-E-13 and Table D, as each combination of art would have no unexpected results, and at most would simply represent a known alternative to one of ordinary skill in the art. *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739-40 (2007) (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an "expansive and flexible" approach). Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." Id. at 1742. Nevertheless, in keeping with the Patent Rules, and in addition to the information contained in the section above and elsewhere in these contentions, Defendants hereby identify additional motivations and reasons to combine the items of prior art.

One or more combinations of the items of prior art identified in Exhibits E-1-E-13 and Table D would have been obvious because these items of prior art would have been combined using: known methods to yield predictable results; known techniques in the same way; a simple substitution of on known, equivalent element for another to obtain predictable results; and/or a teaching, suggestion, or motivation in the prior art generally. In addition, it would have been obvious to try combining the items of prior art identified in Exhibits E-1-E-13 and Table D because there were only a finite number of predictable solutions and/or because known work in one field of endeavor prompted variations based on predictable design incentives and/or market forces either in the same field or a different one. In addition, the combination of the items of prior

1  art identified in Exhibits E-1-E-13 and Table D would have been obvious because the combination

2  represents the known potential options with a reasonable expectation of success.

3       Additional evidence that there would have been a motivation to combine the items of prior

4  art identified in Exhibits E-1-E-13 and Table D includes the interrelated teachings of multiple

5  items of prior art; the effects of demands known to the design community or present in the

6  marketplace; the existence of a known problem for which there was an obvious solution

7  encompassed by the asserted claims; the existence of a known need or problem in the field of the

8  endeavor at the time of the invention(s); and the background knowledge that would have been

9  possessed by a person having ordinary skill in the art.  For example, the items of prior art are

10 generally directed to the same problems: computer and/or network security, such as, and without

11 limitation, tokenizing Downloadables and analyzing incoming code for potentially malicious

12 content.  Thus, a skilled artisan seeking to solve this problem would look to these items of prior art

13 in combination.

14      Thus, the motivation to combine the teachings of the items of prior art identified in

15 Exhibits E-1-E-13 and Table D is found in the items of prior art themselves and in: (1) the nature

16 of the problem being solved; (2) the express, implied and inherent teachings of the prior art; (3)

17 the knowledge of persons of ordinary skill in the art; (4) the fact that the prior art is generally

18 directed towards computer and/or network security, such as, and without limitation, methods and

19 systems for tokenizing Downloadables and/or (5) the predictable results obtained in combining the

20 different elements of the prior art.  Accordingly, Defendants contend that each asserted claim

21 would have been obvious not only by the combinations explicitly defined in these contentions, but

22 also by any combination of items of prior art that renders obvious an asserted claim.

23      Numerous items of prior art, including those identified in Exhibits E-1-E-13 and Table D,

24 reflect common knowledge and the state of the prior art before the priority date of the '305 patent.

25 As it would be unduly burdensome to create detailed claim charts for every invalidating

26 combination, for at least the reasons described throughout these contentions, it would have been

27 obvious to one of ordinary skill in the art to combine any of a number of items of prior art,

28 including any combination of those identified in the attached Exhibits to meet the limitations of

1  the asserted claims.  As such, Defendants' inclusion of exemplary combinations, in view of the

2  factors and motivations identified in the preceding paragraphs, does not preclude Defendants from

3  identifying other invalidating combinations as appropriate.

4        Defendants assert that abundant motivation to combine would exist for any items of prior

5  art that discuss computer and/or network security, such as, and without limitation, tokenizing

6  Downloadables and analyzing incoming code for potentially malicious content.  A person of

7  ordinary skill in the art at the relevant time period would have understood that systems and

8  methods for tokenizing Downloadables and analyzing incoming code were in widespread use and

9  that such systems could have been readily combined with other systems and methods that

10  tokenized Downloadables and analyzed incoming code differently.  For example, tokenization has

11  long been a method used to uniquely identify files.  And combining classes and/or modules of

12  software into an executable file was also a well-known and common technique.  It would have

13  been obvious for one of ordinary skill in the art to a) apply different methods of tokenization and

14  then to b) use those different methods of tokenization to detect potential computer exploits.

15      **F.**     **U.S. Patent No. 8,079,086**

16        Finjan contends in its Infringement Contentions that the priority date for each of the

17  asserted claims of the '086 patent is November 6, 1997.  Defendants allege that the priority date

18  for each of the asserted claims of the '086 patent is May 26, 2009.

19          *i.*     *Anticipation*

20        The asserted claims of the '086 patent (claims 1, 17, 24, 35, 37, and 42) are anticipated

21  and/or rendered obvious by at least the items of prior art identified in Tables A and B, *supra*,

22  including those charted in Exhibits F-1 – F-16.  The prior art cited in Exhibits F-1 – F-16 is

23  illustrative and not exhaustive.  Though these claim charts provide illustrative citations to where

24  each claim limitation may be found in the prior art, the charted prior art may contain other

25  disclosures of each claim limitation as well, and Defendants reserve the right to argue any claim

26  limitation of the asserted claims of the '086 patent is disclosed in non-cited portions of these items

27  of prior art.  If Finjan asserts that any of these items of prior art fail to disclose one or more claim

28  limitations of an asserted claim, Defendants reserve the right to use one or more of these items of

1    prior art as prior art under 35 U.S.C. § 103.

2                    *ii.     Obviousness*

3          To the extent a finder of fact finds that a limitation of any asserted claim was not disclosed

4    by one of the items of prior art identified in Exhibits F-1 – F-16, such claims are nevertheless un-

5    patentable due to being obvious because they contain nothing that constitutes patentable

6    innovation.   To the extent not anticipated, no asserted claim goes beyond combining familiar

7    elements according to known methods to achieve predictable results or does more than choose

8    between clear alternatives known to those of ordinary skill in the art.   Each anticipatory item of

9    prior art identified in Exhibits F-1 – F-16, either alone or in combination with one or more items

10   of prior art identified in Table A, renders the asserted claims invalid as obvious.   These

11   obviousness combinations are not exclusive, and Defendants reserve the right to supplement these

12   combinations using any items of prior art that may become known or their relevance become

13   known to Defendants during the course of discovery.

14         In addition to the specific combinations of prior art disclosed herein, Defendants reserve

15   the right to rely on any other combination of any items of prior art disclosed herein.   Defendants

16   further reserve the right to rely upon combinations disclosed within the prosecution history of the

17   prior art references cited herein or the asserted patents.   These obviousness combinations reflect

18   Defendants' present understanding of the potential scope of the asserted claims of each of the

19   asserted patents that Finjan appears to be advocating, and should not be seen as Defendants'

20   acquiescence to Finjan's interpretation of any asserted claim.

21         Defendants believe that no showing of a specific motivation to combine prior art is

22   required to combine any item of prior art as each combination of art would have no unexpected

23   results, and at most would simply represent a known alternative to one of ordinary skill in the art.

24   *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739-40 (2007) (rejecting the Federal Circuit's

25   "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an

26   "expansive and flexible" approach).   Indeed, the Supreme Court held that a person of ordinary

27   skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person

28   of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces

of a puzzle." *IF.* at 1742.  Nevertheless, in keeping with the Patent Rules, and in addition to the information contained in the section above and elsewhere in these contentions, Defendants hereby identify additional motivations and reasons to combine the items of prior art.

One or more combinations of the items of prior art identified in Exhibits F-1 – F-16 and Table A would have been obvious because these items of prior art would have been combined using: known methods to yield predictable results; known techniques in the same way; a simple substitution of on known, equivalent element for another to obtain predictable results; and/or a teaching, suggestion, or motivation in the prior art generally.  In addition, it would have been obvious to try combining the items of prior art identified in Exhibits F-1 – F-16 and Table A because there were only a finite number of predictable solutions and/or because known work in one field of endeavor prompted variations based on predictable design incentives and/or market forces either in the same field or a different one.  In addition, the combination of the items of prior art identified in Exhibits F-1 – F-16 and Table A would have been obvious because the combination represents the known potential options with a reasonable expectation of success.

Additional evidence that there would have been a motivation to combine the items of prior art identified in Exhibits F-1 – F-16 and Table A includes the interrelated teachings of multiple items of prior art; the effects of demands known to the design community or present in the marketplace; the existence of a known problem for which there was an obvious solution encompassed by the asserted claims; the existence of a known need or problem in the field of the endeavor at the time of the invention(s); and the background knowledge that would have been possessed by a person having ordinary skill in the art.  For example, the items of prior art are generally directed to the same problems: computer and/or network security, such as, and without limitation, creating a profile for a Downloadable and linking the profile to the Downloadable. Thus, a skilled artisan seeking to solve this problem would look to these items of prior art in combination.  Thus, the motivation to combine the teachings of the items of prior art identified in Exhibits F-1 – F-16 and Table A is found in the items of prior art themselves and in: (1) the nature of the problem being solved; (2) the express, implied and inherent teachings of the prior art; (3) the knowledge of persons of ordinary skill in the art; (4) the fact that the prior art is generally

directed towards computer and/or network security, such as, and without limitation, detecting potential exploits within an incoming stream of program code and/or (5) the predictable results obtained in combining the different elements of the prior art.  Accordingly, Defendants contend that each asserted claim would have been obvious not only by the combinations explicitly defined in these contentions, but also by any combination of items of prior art that renders obvious an asserted claim.

Numerous items of prior art, including those identified in Exhibits F-1 – F-16 and Tables A and B, reflect common knowledge and the state of the prior art before the priority date of the '086 patent.  As it would be unduly burdensome to create detailed claim charts for every invalidating combination, for at least the reasons described throughout these contentions, it would have been obvious to one of ordinary skill in the art to combine any of a number of items of prior art, including any combination of those identified in the attached Exhibits to meet the limitations of the asserted claims.  As such, Defendants' inclusion of exemplary combinations, in view of the factors and motivations identified in the preceding paragraphs, does not preclude Defendants from identifying other invalidating combinations as appropriate.

Defendants assert that abundant motivation to combine would exist for any items of prior art that discuss computer and/or network security, such as, and without limitation, creating a profile for a Downloadable and linking the profile to the Downloadable.  A person of ordinary skill in the art at the relevant time period would have understood that systems and methods for creating a profile for an executable, and linking the profile to the executable, were in widespread use and that such systems could have been readily combined with other systems and methods that could generate a profile and/or create an association to an executable.  For these reasons, there would have been abundant motivation to combine these items of prior art as described above.

### G.    U.S. Patent No. 8,141,154

Finjan contends in its Infringement Contentions that the priority date for each of the asserted claims of the '154 patent is December 12, 2005.

#### i.    Anticipation

The asserted claims of the '154 patent (claims 1, 2, 4, 5, 6, and 10 ) are anticipated and/or

1    rendered obvious by at least the items of prior art identified in Tables A, B and D, *supra*, including

2    those charted in Exhibits G-1 – G-21.  The prior art cited in Exhibits G-1 – G-21 is illustrative and

3    not exhaustive.  Though these claim charts provide illustrative citations to where each claim

4    limitation may be found in the prior art, the charted prior art may contain other disclosures of each

5    claim limitation as well, and Defendants reserve the right to argue any claim limitation of the

6    asserted claims of the '154 patent is disclosed in non-cited portions of these items of prior art.  If

7    Finjan asserts that any of these items of prior art fail to disclose one or more claim limitations of

8    an asserted claim, Defendants reserve the right to use one or more of these items of prior art as

9    prior art under 35 U.S.C. § 103.

10            *ii.*      *Obviousness*

11       To the extent a finder of fact finds that a limitation of any asserted claim was not disclosed

12    by one of the items of prior art identified in Exhibits G-1 – G-21, such claims are nevertheless un-

13    patentable due to being obvious because they contain nothing that constitutes patentable

14    innovation.  To the extent not anticipated, no asserted claim goes beyond combining familiar

15    elements according to known methods to achieve predictable results or does more than choose

16    between clear alternatives known to those of ordinary skill in the art.  Each anticipatory item of

17    prior art identified in Exhibits G-1 – G-21, either alone or in combination with one or more items

18    of prior art identified in Table E, renders the asserted claims invalid as obvious.  These

19    obviousness combinations are not exclusive, and Defendants reserve the right to supplement these

20    combinations using any items of prior art that may become known or their relevance become

21    known to Defendants during the course of discovery.

22       In addition to the specific combinations of prior art disclosed herein, Defendants reserve

23    the right to rely on any other combination of any items of prior art disclosed herein.  Defendants

24    further reserve the right to rely upon combinations disclosed within the prosecution history of the

25    prior art references cited herein or the asserted patents.  These obviousness combinations reflect

26    Defendants' present understanding of the potential scope of the asserted claims of each of the

27    asserted patents that Finjan appears to be advocating, and should not be seen as Defendants'

28    acquiescence to Finjan's interpretation of any asserted claim.

1   Defendants believe that no showing of a specific motivation to combine prior art is

2   required to combine any item of prior art as each combination of art would have no unexpected

3   results, and at most would simply represent a known alternative to one of ordinary skill in the art.

4   *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739-40 (2007) (rejecting the Federal Circuit's

5   "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an

6   "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary

7   skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person

8   of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces

9   of a puzzle."  *Id*. at 1742.  Nevertheless, in keeping with the Patent Rules, and in addition to the

10   information contained in the section above and elsewhere in these contentions, Defendants hereby

11   identify additional motivations and reasons to combine the items of prior art.

12   One or more combinations of the items of prior art identified in Exhibits G-1 – G-21 and

13   Table E would have been obvious because these items of prior art would have been combined

14   using: known methods to yield predictable results; known techniques in the same way; a simple

15   substitution of on known, equivalent element for another to obtain predictable results; and/or a

16   teaching, suggestion, or motivation in the prior art generally.  In addition, it would have been

17   obvious to try combining the items of prior art identified in Exhibits G-1 – G-21 and Table E

18   because there were only a finite number of predictable solutions and/or because known work in

19   one field of endeavor prompted variations based on predictable design incentives and/or market

20   forces either in the same field or a different one.  In addition, the combination of the items of prior

21   art identified in Exhibits G-1 – G-21 and Table E would have been obvious because the

22   combination represents the known potential options with a reasonable expectation of success.

23   Additional evidence that there would have been a motivation to combine the items of prior

24   art identified in Exhibits G-1 – G-21 and Tables E includes the interrelated teachings of multiple

25   items of prior art; the effects of demands known to the design community or present in the

26   marketplace; the existence of a known problem for which there was an obvious solution

27   encompassed by the asserted claims; the existence of a known need or problem in the field of the

28   endeavor at the time of the invention(s); and the background knowledge that would have been

possessed by a person having ordinary skill in the art.  For example, the items of prior art are generally directed to the same problems: computer and/or network security, such as, and without limitation, protecting a computer from dynamically generated malicious content and analyzing incoming code at a security computer.  Thus, a skilled artisan seeking to solve this problem would look to these items of prior art in combination.  Thus, the motivation to combine the teachings of the items of prior art identified in Exhibits G-1 – G-21 and Table E is found in the items of prior art themselves and in: (1) the nature of the problem being solved; (2) the express, implied and inherent teachings of the prior art; (3) the knowledge of persons of ordinary skill in the art; (4) the fact that the prior art is generally directed towards computer and/or network security, such as, and without limitation, detecting potential exploits within an incoming stream of program code and/or (5) the predictable results obtained in combining the different elements of the prior art. Accordingly, Defendants contend that each asserted claim would have been obvious not only by the combinations explicitly defined in these contentions, but also by any combination of items of prior art that renders obvious an asserted claim.

Numerous items of prior art, including those identified in Exhibits G-1 – G-21 and Tables A, B, D, and E reflect common knowledge and the state of the prior art before the priority date of the '154 patent.  As it would be unduly burdensome to create detailed claim charts for every invalidating combination, for at least the reasons described throughout these contentions, it would have been obvious to one of ordinary skill in the art to combine any of a number of items of prior art, including any combination of those identified in the attached Exhibits to meet the limitations of the asserted claims.  As such, Defendants' inclusion of exemplary combinations, in view of the factors and motivations identified in the preceding paragraphs, does not preclude Defendants from identifying other invalidating combinations as appropriate.

Defendants assert that abundant motivation to combine would exist for any items of prior art that discuss computer and/or network security, such as, and without limitation, protecting a computer from dynamically generated malicious content and analyzing incoming code at a security computer.  A person of ordinary skill in the art at the relevant time period would have understood that systems and methods for protecting a computer from dynamically generated

malicious content were in widespread use and that such systems could have been readily combined with other systems and methods that could protecting a computer from dynamically generated malicious content.

### H.      U.S. Patent No. 8,225,408

Finjan contends in its Infringement Contentions that the priority date for each of the asserted claims of the '408 patent is August 30, 2004.

#### i.      Anticipation

The asserted claims of the '408 patent (claims 1, 4, 9, 21, and 23 ) are anticipated and/or rendered obvious by at least the items of prior art identified in those charted in Exhibits H-1-H-30 and referred to below in Table D

The prior art cited in Exhibits H-1-H-13 is illustrative and not exhaustive.  Though these claim charts provide illustrative citations to where each claim limitation may be found in the prior art, the charted prior art may contain other disclosures of each claim limitation as well, and Defendants reserve the right to argue any claim limitation of the asserted claims of the '408 patent is disclosed in non-cited portions of these items of prior art.  If Finjan asserts that any of these items of prior art fail to disclose one or more claim limitations of an asserted claim, Defendants reserve the right to use one or more of these items of prior art as prior art under 35 U.S.C. § 103.

#### ii.      Obviousness

To the extent a finder of fact finds that a limitation of any asserted claim was not disclosed by one of the items of prior art identified in Exhibits H-1-H-13 , such claims are nevertheless un-patentable due to being obvious because they contain nothing that constitutes patentable innovation.  To the extent not anticipated, no asserted claim goes beyond combining familiar elements according to known methods to achieve predictable results or does more than choose between clear alternatives known to those of ordinary skill in the art.

Each anticipatory item of prior art identified in Exhibits H-1-H-13, either alone or in combination with one or more items of prior art identified in Table D, renders the asserted claims invalid as obvious.  These obviousness combinations are not exclusive, and Defendants reserve the right to supplement these combinations using any items of prior art that may become known or

1    their relevance become known to Defendants during the course of discovery.

2         In addition to the specific combinations of prior art disclosed herein, Defendants reserve

3    the right to rely on any other combination of any items of prior art disclosed herein. Defendants

4    further reserve the right to rely upon combinations disclosed within the prosecution history of the

5    prior art references cited herein or the asserted patents. These obviousness combinations reflect

6    Defendants' present understanding of the potential scope of the asserted claims of each of the

7    asserted patents that Finjan appears to be advocating, and should not be seen as Defendants'

8    acquiescence to Finjan's interpretation of any asserted claim.

9         Defendants believe that no showing of a specific motivation to combine prior art is

10   required to combine any item of prior art as each combination of art would have no unexpected

11   results, and at most would simply represent a known alternative to one of ordinary skill in the art.

12   *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739-40 (2007) (rejecting the Federal Circuit's

13   "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an

14   "expansive and flexible" approach). Indeed, the Supreme Court held that a person of ordinary

15   skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person

16   of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces

17   of a puzzle." Id. at 1742. Nevertheless, in keeping with the Patent Rules, and in addition to the

18   information contained in the section above and elsewhere in these contentions, Defendants hereby

19   identify additional motivations and reasons to combine the items of prior art.

20        One or more combinations of the items of prior art identified in Exhibits H-1-H-13 and

21   Table D would have been obvious because these items of prior art would have been combined

22   using: known methods to yield predictable results; known techniques in the same way; a simple

23   substitution of on known, equivalent element for another to obtain predictable results; and/or a

24   teaching, suggestion, or motivation in the prior art generally. In addition, it would have been

25   obvious to try combining the items of prior art identified in Exhibits H-1-H-13 and Table D

26   because there were only a finite number of predictable solutions and/or because known work in

27   one field of endeavor prompted variations based on predictable design incentives and/or market

28   forces either in the same field or a different one. In addition, the combination of the items of prior

1  art identified in Exhibits H-1-H-13  and Table D would have been obvious because the

2  combination represents the known potential options with a reasonable expectation of success.

3         Additional evidence that there would have been a motivation to combine the items of prior

4  art identified in Exhibits H-1-H-13  and Table D includes the interrelated teachings of multiple

5  items of prior art; the effects of demands known to the design community or present in the

6  marketplace; the existence of a known problem for which there was an obvious solution

7  encompassed by the asserted claims; the existence of a known need or problem in the field of the

8  endeavor at the time of the invention(s); and the background knowledge that would have been

9  possessed by a person having ordinary skill in the art.  For example, the items of prior art are

10  generally directed to the same problems: computer and/or network security, such as, and without

11  limitation, tokenizing Downloadables and analyzing incoming code for potentially malicious

12  content.  Thus, a skilled artisan seeking to solve this problem would look to these items of prior art

13  in combination.

14         Thus, the motivation to combine the teachings of the items of prior art identified in

15  Exhibits H-1-H-13 and Table D is found in the items of prior art themselves and in: (1) the nature

16  of the problem being solved; (2) the express, implied and inherent teachings of the prior art; (3)

17  the knowledge of persons of ordinary skill in the art; (4) the fact that the prior art is generally

18  directed towards computer and/or network security, such as, and without limitation, detecting

19  potential exploits within an incoming stream of program code and/or (5) the predictable results

20  obtained in combining the different elements of the prior art.  Accordingly, Defendants contend

21  that each asserted claim would have been obvious not only by the combinations explicitly defined

22  in these contentions, but also by any combination of items of prior art that renders obvious an

23  asserted claim.

24         Numerous items of prior art, including those identified in Exhibits H-1-H-13 and Table D

25  reflect common knowledge and the state of the prior art before the priority date of the '408 patent.

26  As it would be unduly burdensome to create detailed claim charts for every invalidating

27  combination, for at least the reasons described throughout these contentions, it would have been

28  obvious to one of ordinary skill in the art to combine any of a number of items of prior art,

1   including any combination of those identified in the attached Exhibits to meet the limitations of

2   the asserted claims.  As such, Defendants' inclusion of exemplary combinations, in view of the

3   factors and motivations identified in the preceding paragraphs, does not preclude Defendants from

4   identifying other invalidating combinations as appropriate.

5        Defendants assert that abundant motivation to combine would exist for any items of prior

6   art that discuss computer and/or network security, such as, and without limitation, tokenizing

7   Downloadables and analyzing incoming code for potentially malicious content.  A person of

8   ordinary skill in the art at the relevant time period would have understood that systems and

9   methods for tokenizing Downloadables and analyzing incoming code were in widespread use and

10  that such systems could have been readily combined with other systems and methods that

11  tokenized Downloadables and analyzed incoming code differently.  For example, tokenization has

12  long been a method used to uniquely identify files.  And combining classes and/or modules of

13  software into an executable file was also a well-known and common technique.  It would have

14  been obvious for one of ordinary skill in the art to a) apply different methods of tokenization and

15  then to b) use those different methods of tokenization to detect potential computer exploits.

16  **V.      PATENT L.R. 3-3(c)**

17       Pursuant to Patent L.R. 3-3(c) and subject to Defendants reservation of rights herein,

18  Defendants submit claim charts in Exhibits A-1-A-16, B-1-B-10, C-1-C-8, D-1-D-10, E-1-E-13,

19  F-1-F-16, G-1-G-21, H-1-H-13 identifying where specifically in each item of prior art each

20  limitation of each asserted claim is found.

21  **VI.     PATENT L.R. 3-3(d)**

22       Pursuant to Patent L.R. 3-3(d) and subject to Defendants' reservation of rights herein,

23  Defendants identify the grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35

24  U.S.C. § 112(2), and lack of enablement and/or written description under 35 U.S.C. § 112(1) of

25  any of the asserted claims.

26       With respect to 35 U.S.C. §101, claims are invalid for failing to meet the patent eligible

27  requirements of § 101 as interpreted by the courts. Section 101 of the Patent Act states: "Whoever

28  invents or discovers any new and useful process, machine, manufacture, or composition of matter,

or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title."  Defendants identify below the asserted claims of each asserted patent that fail to satisfy the requirements of 35 U.S.C. §101.

With respect to 35 U.S.C. § 112(2), "[t]he statutory requirement of particularity and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise." *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942).  "Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005).  Defendants identify below the asserted claims and any corresponding claim limitations of each asserted patent that fail to satisfy the requirements of 35 U.S.C. § 112(2).

With respect to 35 U.S.C. § 112(1), the patentee is required to, among other things, "describe the invention in such terms that any person skilled in the art to which it appertains may construct and use it after the expiration of the patent." *LizardTech, Inc. v. Regents of the U. of Cal.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005) (quoting *Permutit Co. v. Graver Corp.*, 284 U.S. 52, 60 (1931)).  Stated differently, a patent specification must contain a full, clear, concise, and exact description that enables a person of ordinary skill in the art to make and use the invention to the full scope of each patent claim.  *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2009); *Automotive Techs. Int'l, Inc. v. BMW of N. Am.*, 501 F.3d 1274, 1282 (Fed. Cir. 2007).  Further, the specification "must describe the invention sufficiently to convey to a person of ordinary skill in the art that the patentee had possession of the claimed invention at the time of the application." *LizardTech*, 424 F.3d at 1345.  It is the specification, not the knowledge of one skilled in the art, that must supply novel aspects of an invention in order to satisfy § 112(1). *Automotive Techs.*, 501 F.3d at 1283 (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997)).  Defendants identify below the asserted claims and any corresponding claim limitations of each asserted patent that fail to satisfy the requirements of 35 U.S.C. § 112(1) because the specification fails to provide an adequate written description and/or enabling disclosure.

1            *i.*       *Contentions Under 35. U.S.C. § 101*

2       Defendants identify below the grounds upon which Defendants currently contend the

3 asserted claims are invalid under 35 U.S.C. § 101.

4       Section 101 precludes the patenting of mental processes and abstract ideas. *See Mayo*

5 *Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quotation omitted).

6 First, if a claim can be performed entirely in the human mind, it is an unpatentable abstract idea.

7 *See Mayo*, 132 S. Ct. at 1293. Second, if a claim neither requires a specialized machine nor results

8 in a transformation of the claimed subject matter, it is unpatentable. *See Bilski v. Kappos,* 130 S.

9 Ct. 3218, 3224, 27 (2010). Third, a claim that recites a law of nature, physical phenomena, or

10 abstract idea is unpatentable unless, after isolating these non-patent-eligible elements, the

11 remaining elements recite an inventive concept. *See Mayo*, 132 S. Ct. at 1293. Indeed, courts

12 have recently struck software patents—like those at issue in this case—because the patentee

13 attempted to claim unpatentable subject matter. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134

14 S.Ct. 2347 (2014); *Digitech Image Techs. LLC v. Elecs. for Imaging Inc.* (Fed. Cir. 2014); *Planet*

15 *Bingo LLC v. VKGS LLC* (Fed. Cir. 2014).

16       Recent decisions confirm that software patents like Finjan's can be invalidated under

17 Section 101. *See Intellectual Ventures I LLC vs. Symantec Corp.*, C.A. No. 10–1067–LPS, C.A.

18 No. 12–1581–LPS, 2015 WL 1843528, at *8-12 (D. Del. April 22 2015) (invalidating asserted

19 claims as patent-ineligible, where patent described "receiving information related to a file (an

20 identifier) from a querying computer, characterizing the file based on the identifier and other

21 stored identifiers, and communicating a result of the characterization back to a querying

22 computer"); *Allvoice Developments U.S., LLC vs. Microsoft Corp.*, No. 2014-1258, slip op. at 13-

23 17 (Fed. Cir. May 22, 2015) (finding patent claims directed to software for receiving and

24 recognizing speech, then outputting "recognized words into a computer-related application[,]" did

25 not recite a process or tangible or physical object and, thus, were not patent eligible); *Enfish, LLC*

26 *v. Microsoft Corp.*, No. 2:12-CV-07360-MRP-MRW, 56 F.Supp.3d 1167, 1175 (C.D. Cal. Nov. 3,

27 2014) (finding that patents directed at "storing, organizing, and retrieving memory in a logical

28 table" were unpatentable because they "are addressed to abstract ideas").

### 1.     U.S. Patent No. 6,154,844

Although failing even one of the above tests is sufficient to render subject matter unpatentable, at least Claims 1, 7, 15, 16, 32, 42, and 43 of the '844 patent fail each of the three tests for patentability under § 101 recited above.  The claims are unpatentable because they cover abstract ideas, including the abstract idea of linking a security profile to a deliverable.  The claims are further unpatentable because they encompass purely mental processes.  To the extent that claims 1, 7, 15, 16, 32, 42, and 43  recite limitations that cannot be performed in the mind, these limitations add only well-understood, routine, conventional activity to a mental process.  The mere fact that the asserted claims are directed to one or more generic computers performing the claimed steps does not transform these abstract ideas into patentable subject matter.  *See Alice Corp.*, 134 S.Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").  In addition, Claims 1, 7, 15, 16, 32, 42, and 43 fail the Supreme Court's "machine-or-transformation" test because they do not require the use of a specialized machine or result in any transformation of the claimed subject matter.  Finally, Claims 1, 7, 15, 16, 32, 42, and 43 do not add additional, patent-eligible "inventive concepts" to avoid preempting all uses of the abstract idea they recite.

### 2.     U.S. Patent No. 7,058,822

Although failing even one of the above tests is sufficient to render subject matter unpatentable, at least Claims 9, 12, and 28 of the '822 patent fail each of the three tests for patentability under § 101 recited above.  The claims are unpatentable because they claim only abstract ideas, including the abstract idea of sending a deliverable along with a security monitor for the deliverable.  Additionally, the claims could be performed as purely mental processes.  Claims 9, 12, and 28 are unpatentable for the additional reason that, to the extent fewer than all claims could be performed in the mind, the other recited limitations add only well-understood, routine, conventional activity to a mental process.  The mere fact that the asserted claims are directed to one or more generic computers performing the claimed steps does not transform these abstract ideas into patentable subject matter.  *See Alice Corp.*, 134 S.Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-

eligible invention."). In addition, Claims 9, 12, and 28 fail the Supreme Court's "machine-or-transformation" test because they do not require the use of a specialized machine or result in any transformation of the claimed subject matter. Finally, Claims 9, 12, and 28 do not add additional, patent-eligible "inventive concepts" to avoid preempting all uses of the abstract idea they recite.

### 3.   U.S. Patent No. 7,613,918

Although failing even one of the above tests is sufficient to render subject matter unpatentable, at least Claims 1, 12, and 21 of the '918 patent fail each of the three tests for patentability under § 101 recited above. The claims are unpatentable because they claim only abstract ideas, including the abstract idea of selecting a recipient best suited to processing a deliverable. Additionally, the claims could be performed as purely mental processes. Claims 1, 12, and 21 are unpatentable for the additional reason that, to the extent fewer than all claims could be performed in the mind, the other recited limitations add only well-understood, routine, conventional activity to a mental process. The mere fact that the asserted claims are directed to one or more generic computers performing the claimed steps does not transform these abstract ideas into patentable subject matter. *See Alice Corp.*, 134 S.Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."). In addition, Claims 1, 12, and 21 fail the Supreme Court's "machine-or-transformation" test because they do not require the use of a specialized machine or result in any transformation of the claimed subject matter. Finally, Claims 1, 12, and 21 do not add additional, patent-eligible "inventive concepts" to avoid preempting all uses of the abstract idea they recite.

### 4.   U.S. Patent No. 7,647,633

Although failing even one of the above tests is sufficient to render subject matter unpatentable, at least Claims 8, 10, 12, and 14 of the '633 patent fail each of the three tests for patentability under § 101 recited above. The claims are unpatentable because they claim only abstract ideas, including the abstract idea of sending a deliverable along with a security monitor for the deliverable. Additionally, the claims could be performed as purely mental processes. Claims 8, 10, 12, and 14 are unpatentable for the additional reason that, to the extent fewer than all claims could be performed in the mind, the other recited limitations add only well-understood,

routine, conventional activity to a mental process.  The mere fact that the asserted claims are directed to one or more generic computers performing the claimed steps does not transform these abstract ideas into patentable subject matter.  *See Alice Corp.*, 134 S.Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."). In addition, Claims 8, 10, 12, and 14 fail the Supreme Court's "machine-or-transformation" test because they do not require the use of a specialized machine or result in any transformation of the claimed subject matter.  Finally, Claims 8, 10, 12, and 14 do not add additional, patent-eligible "inventive concepts" to avoid preempting all uses of the abstract idea they recite.

### 5.   U.S. Patent No. 7,975,305

Although failing even one of the above tests is sufficient to render subject matter unpatentable, at least Claims 13 and 17 of the '305 patent fail each of the three tests for patentability under § 101 recited above.  The claims are unpatentable because they claim only abstract ideas, including the abstract idea of parsing incoming information and then analyzing the parsed information for potentially malicious content.  Additionally, the claims could be performed as purely mental processes.  Claims 1, 13 and 17 are unpatentable for the additional reason that, to the extent fewer than all claims could be performed in the mind, the other recited limitations add only well-understood, routine, conventional activity to a mental process.  The mere fact that the asserted claims are directed to one or more generic computers performing the claimed steps does not transform these abstract ideas into patentable subject matter.  *See Alice Corp.*, 134 S.Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."). In addition, Claims 13 and 17 fail the Supreme Court's "machine-or-transformation" test because they do not require the use of a specialized machine or result in any transformation of the claimed subject matter.  Finally, Claims 13 and 17 do not add additional, patent-eligible "inventive concepts" to avoid preempting all uses of the abstract idea they recite.

### 6.   U.S. Patent No. 8,079,086

Although failing even one of the above tests is sufficient to render subject matter

1   unpatentable, at least Claims 35, 37, and 42 of the '086 patent fail each of the three tests for

2   patentability under § 101 recited above.  The claims are unpatentable because they claim only

3   abstract ideas, including the abstract idea of linking a security profile to a deliverable.

4   Additionally, the claims could be performed as purely mental processes.  Claims 35, 37, and 42

5   are unpatentable for the additional reason that, to the extent fewer than all claims could be

6   performed in the mind, the other recited limitations add only well-understood, routine,

7   conventional activity to a mental process.  The mere fact that the asserted claims are directed to

8   one or more generic computers performing the claimed steps does not transform these abstract

9   ideas into patentable subject matter.  *See Alice Corp.*, 134 S.Ct. at 2358 ("[T]he mere recitation of

10  a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible

11  invention.").  In addition, Claims 35, 37, and 42 fail the Supreme Court's "machine-or-

12  transformation" test because they do not require the use of a specialized machine or result in any

13  transformation of the claimed subject matter.  Finally, Claims 35, 37, and 42 do not add additional,

14  patent-eligible "inventive concepts" to avoid preempting all uses of the abstract idea they recite.

### 7.   U.S. Patent No. 8,141,154

16       Although failing even one of the above tests is sufficient to render subject matter

17  unpatentable, at least Claims 1, 2, 4, 5, 6, and 10 of the '154 patent fail each of the three tests for

18  patentability under § 101 recited above.  The claims are unpatentable because they claim only

19  abstract ideas, including the abstract idea of processing suspicious incoming content at a secure

20  destination.  Additionally, the claims could be performed as purely mental processes.  Claims 1, 2,

21  4, 5, 6, and 10 are unpatentable for the additional reason that, to the extent fewer than all claims

22  could be performed in the mind, the other recited limitations add only well-understood, routine,

23  conventional activity to a mental process.  The mere fact that the asserted claims are directed to

24  one or more generic computers performing the claimed steps does not transform these abstract

25  ideas into patentable subject matter.  *See Alice Corp.*, 134 S.Ct. at 2358 ("[T]he mere recitation of

26  a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible

27  invention.").  In addition, Claims 1, 2, 4, 5, 6, and 10 fail the Supreme Court's "machine-or-

28  transformation" test because they do not require the use of a specialized machine or result in any

1  transformation of the claimed subject matter.  Finally, Claims 1, 2, 4, 5, 6, and 10  do not add

2  additional, patent-eligible "inventive concepts" to avoid preempting all uses of the abstract idea

3  they recite.

4                        **8.       U.S. Patent No. 8,225,408**

5          Although  failing  even  one  of  the  above  tests  is  sufficient  to  render  subject  matter

6  unpatentable, at least Claims 1, 4, and 23 of the '408 patent fail each of the three tests for

7  patentability under § 101 recited above.   The claims are unpatentable because they claim only

8  abstract ideas, including the abstract idea of parsing incoming information and then analyzing the

9  parsed information for potentially malicious content.  Additionally, the claims could be performed

10  as purely mental processes.  Claims 1, 4, and 23 are unpatentable for the additional reason that, to

11  the extent fewer than all claims could be performed in the mind, the other recited limitations add

12  only well-understood, routine, conventional activity to a mental process.   The mere fact that the

13  asserted claims are directed to one or more generic computers performing the claimed steps does

14  not transform these abstract ideas into patentable subject matter.  *See Alice Corp.*, 134 S.Ct. at

15  2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract

16  idea into a patent-eligible invention.").  In addition, Claims 1, 4, and 23 fail the Supreme Court's

17  "machine-or-transformation" test because they do not require the use of a specialized machine or

18  result in any transformation of the claimed subject matter.  Finally, Claims 1, 4, and 23 do not add

19  additional, patent-eligible "inventive concepts" to avoid preempting all uses of the abstract idea

20  they recite.

21                    *ii.       Contentions Under 35 U.S.C. § 112(2)*

22          Subject to Defendants' reservation of rights provided herein and based on Defendants'

23  present understanding of the asserted claims of the asserted patent, at least the following asserted

24  claims fail to satisfy the requirements of 35 U.S.C. § 112(2) due to the identified terms being

25  indefinite.  To the extent an asserted claim is invalid for any reason under 35 U.S.C. § 112(2), all

26  claims depending therefrom are invalid for at least the same reasons. Accordingly, each of the

27  asserted dependent claims incorporates by reference all § 112(2) invalidity contentions of the

28  parent claim(s).

### 1.     U.S. Patent No. 6,154,844

Bases for indefiniteness include but are not limited to the following:

- "suspicious code [patterns]" (Claims 1, 7, 15, 16, 32, 42, 43)
- "suspicious operations" (Claim 16)
- "determining whether to trust" (Claims 42)
- "trustworthy" (Claims 42)
- "means for receiving a Downloadable" (Claim 43)
- "means for generating a first Downloadable security profile that identifies suspicious code in the received Downloadable" (Claim 43)
- "means for linking the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients" (Claim 43)

### 2.     U.S. Patent No. 7,058,822

Bases for indefiniteness include but are not limited to the following:

- Claim 9 is indefinite under *IPXL* because it impermissibly combines a system (e.g., "[a] processor-based system . . .") and a method (e.g., "each analyzer producing therefrom a detection indicator . . .") in a single claim.
- "downloadable-information" (Claims 9, 12, and 28)
- "receiving downloadable-information" (Claims 9 and 28)
- "executable code" (Claims 9 and 28)
- "determining whether the downloadable-information includes executable code" (Claim 9)
- "mobile protection code" (Claims 9 and 28)
- "information-destination" (Claims  9 and 28)
- "information-destination of the downloadable-information" (Claims 9 and 28)
- "causing mobile protection code to be communicated to at least one information-destination of the downloadable-information" (Claim 9)
- "detection indicator(s)" (Claim 9)
- "downloadable-information characteristic" (Claim 9)

- "executable code characteristic" (Claims 9)
- "an information monitor" (Claim 9)
- "a content inspection engine" (Claims 9 and 12)
- "a packaging engine" (Claims 9 and 12)
- "downloadable-information analyzers" (Claim 9)
- "analyzing the downloadable-information" (Claim 9)
- "corresponds" (Claim 9)
- "an inspection controller" (Claim 9)
- "sandbox" (Claim 12)
- "sandboxed package (Claim 28)

### 3.    U.S. Patent No. 7,613,918

Bases for indefiniteness include but are not limited to the following:

- "potentially malicious executable code" (Claims 1, 12, and 21)
- "intended for downloading at a client computer" (Claims 1, 12, and 21)
- "the client computer manages a plurality of computer accounts for logging in to the client computer" (Claims 1, 12, and 21)
- "each computer account of the plurality of computer accounts has associated therewith a security context within which an executable running on the client computer under such account is processed" (Claims 1, 12, and 21)
- "scanning CODE-A to derive a profile thereof" (Claim 1)
- "a code profiler, coupled with said receiver, for scanning CODE-A and deriving a profile thereof" (Claim 12)
- "scan CODE-A to derive a profile thereof" (Claim 21)
- "determining, based on the derived profile of CODE-A, an appropriate computer account from among the plurality of computer accounts, under which CODE-A may be processed by the client computer" (Claim 1)
- "a security context generator, coupled with said code profiler, for determining, based on the profile of CODE-A derived by said profiler, an appropriate computer

1    account from among the plurality of computer accounts, under which CODE-A
2    may be processed by the client computer" (Claim 12)

3    ▪ "determine, based on the derived profile of CODE-A, an appropriate computer
4    account from among the plurality of computer accounts, under which CODE-A
5    may be processed by the client computer" (Claim 21)

6    ▪ "combining" (Claims 1-5, 9, 11) / "combine" (Claim 21)

7    ▪ "a code packager, coupled with said security context generator, for packaging"
8    (Claim 12)

9    ▪ "information about the determined computer account name" (Claims 1, 12, and 21)

10   ▪ "executable wrapper code" (Claims 1, 12, and 21)

11   ▪ "combined code" (Claims 1, 12, and 21)

12   ▪ "forwarding CODE-C to the client computer for processing" (Claim 1)

13   ▪ "a transmitter, coupled with said code packager, for forwarding CODE-C to the
14   client computer for processing" (Claim 12)

15   ▪ "forward CODE-C to the client computer for processing" (Claim 21)

16   ▪ "CODE-A is a member of the group consisting of JavaScript, VBScript, PerScript,
17   Java applet, Active X, and a standalone executable" (Claim 9)

18   ### 4.      U.S. Patent No. 7,647,633

19   Bases for indefiniteness include but are not limited to the following:

20   ▪ Claim 10 is indefinite under *IPXL* because it depends from claim 9, which
21   improperly combines a system and a method in a single claim.

22   ▪ "downloadable-information" (Claims 8, 10, 12, and 14)

23   ▪ "receiving, at the information re-communicator, downloadable-information" (Claim
24   14)

25   ▪ "executable code" (Claims 8, 10, 12, and 14)

26   ▪ "determining, by the computer, whether the downloadable-information includes
27   executable code" (Claims 8, 10, and 12)

28   ▪ "mobile protection code" (Claims 8, 10, and 12)

1    ▪ "information-destination" (Claims 8, 10, and 12)

2    ▪ "information-destination of the downloadable-information" (Claims 8, 10, and 12)

3    ▪ "transmitting from the computer mobile protection code to at least one information-

4    destination of the downloadable-information" (Claims 8, 10, and 12)

5    ▪ "information re-communicator" (Claims 8 and 10)

6    ▪ "an information monitor" (Claims 8, 10, and 12)

7    ▪ "receiving downloadable-information by a computer" (Claims 8, 10, and 12)

8    ▪ "a content inspection engine" (Claims 8, 10, and 12)

9    ▪ "a protection agent engine" (Claims 8, 10, and 12)

10   ▪ "causing mobile protection code ("MPC") to be communicated by the computer to

11   at least one information-destination of the downloadable-information" (Claims 8,

12   10, and 12)

13   ▪ "the information monitor intercepts received information received by an

14   information re-communicator" (Claim 10)

15   ▪ "a parser" (Claim 12)

16   ▪ "parsing the downloadable-information" (Claim 12)

17   ▪ "a content analyzer" (Claim 12)

18   ▪ "downloadable-information elements" (Claim 12):

19   ▪ "downloadable-information elements of the downloadable-information" (Claim 12)

20   ▪ "correspond" (Claim 12)

21   ▪ "executable code elements" (Claim 12)

22   ▪ "determining whether one or more downloadable-information elements of the

23   downloadable-information correspond with executable code elements" (Claim 12)

24        **5.    U.S. Patent No. 7,975,305**

25   Bases for indefiniteness include but are not limited to the following:

26   ▪ "network interface" (Claim 1)

27   ▪ "database of parser and analyzer rules" (Claims 1, 13)

28   ▪ "computer exploits" (Claims 1, 13)

- "patterns of types of token" (Claims 1, 13)
- "types of token comprising a punctuation type, an identifier type and a function type" (Claims 1, 13)
- "rule-based content scanner" (Claim 1)
- "potential computer exploits" (Claims 1, 13)
- "network traffic probe" (Claim 1)
- "selectively diverting" (Claims 1, 13)
- "program code constructs" (Claims 1, 13)
- "rule update manager" (Claim 1)
- "periodically" (Claims 1, 13)
- "pattern-matching engines" (Claim 2)
- "content blocker" (Claim 5)

### 6.    U.S. Patent No. 8,079,086

Bases for indefiniteness include but are not limited to the following:

- Claim 42 is indefinite under *IPXL* because it impermissibly combines a system (e.g., A system for managing Downloadables") and a method (e.g., "the security profile data including a list of suspicious computer operations that may be attempted . . .") in a single claim.
- "Downloadble" (Claims 1, 17, 24, 35, 37, and 42)
- "deriving security profile data" (Claims 1, 17, and 24)
- "security profile" (Claims 1, 17, 24, 35, 37, and 42)
- "list of suspicious operations that may be attempted by the Downloadable (Claims 1, 24, 35, 37, and 42)
- "appending a representation" (Claim 1)
- "appended Downloadable" (Claim 1)
- "representation" (Claims 1, 17, 24, 35, 37, and 42)
- "Downloadable scanner" (Claim 24)
- "transport protocol transmission (Claims 17, 24, 35, and 42)

- "retrieving security profile data for the incoming Downloadable from a database of Downloadable security profiles indeed according to Downloadable IDs, based on ID of the incoming Downloadable" (Claim 42)

### 7.    U.S. Patent No. 8,141,154

Bases for indefiniteness include but are not limited to the following:

- Claim 2 is indefinite under *IPXL* because it impermissibly combines a system (e.g., "[t]he system of claim 1" and "[t]he system of claim 6") and a method (e.g., "content processor (i) suspends processing . . . and (ii) resumes processing . . .") in a single claim.
- "dynamically" / "dynamically generate(d)" (Claims 1, 2, 5, and 6)
- "content processor" (Claims 1, 2, and 6)
- "invoking a second function with the input" (Claims 1 and 2) / "calling a second function with a modified input variable" (Claims 6 and 10)
- "if a security computer indicates that such invocation is safe" (Claims 1 and 2) / "if the security computer determines that calling a function with the input variable may not be safe" (Claim 6)
- "a transmitter for transmitting the input to the security computer for inspection" (Claims 1 and 2) / "a transmitter for transmitting the input variable to a security computer for inspection" (Claim 6)
- "a receiver for receiving an indicator from the security computer" (Claims 1 and 2) / "a receiver for receiving the modified input variable from the security computer" (Claim 6)
- "suspends processing of the content after said transmitter transmits the input to the security computer" (Claim 2)
- "resumes processing of the content after said receiver receives the indicator from the security computer" (Claim 2)
- "process content received over a network" (Claims 4, 5, and 10)
- "transmit the input for inspection, when the first function is invoked" (Claims 4 and

5) / "transmit the input variable for inspection, when the first function is called" (Claim 10)

- "suspend processing of the content" (Claims 4, 5, and 10)
- "receive an indicator of whether it is safe to invoke a second function with the input" (Claims 4 and 5)
- "receive a modified input variable" (Claim 10)
- "resume processing of the content after receiving the indicator" (Claims 4 and 5) / "resume processing of the content after receiving the modified input variable" (Claim 10)
- "invoke the second function with the input" (Claims 4 and 5) / "calling a second function with the modified input variable" (Claim 10)
- "if the indicator indicates that such invocation is safe" (Claims 4 and 5)
- "wherein the modified input variable is obtained by modifying the input variable if the inspection of the input variable indicates that calling a function with the input variable may not be safe" (Claim 10)
- "the program code causes the computer device to dynamically generate the input prior to transmitting the input for inspection" (Claim 5)
- "input" (Claims 1-5) / "input variable" (Claims 6 and 10)
- "the call including an input" (Claims 1, 2, 4, and 5) / "the first function including an input variable" (Claims 6 and 10)
- "modified input variable" (Claims 6 and 10)

**8.     U.S. Patent No. 8,225,408**

Bases for indefiniteness include but are not limited to the following:

- "receiving, by a computer, an incoming stream of program code" (Claims 1, 4, and 23)
- "a receiver, stored on the medium and executed by the computer, for receiving an incoming stream of program code;" (Claims 9 and 21)
- "instantiating, by the computer, a scanner for the specific programming language,

in response to said determining" (Claims 1 and 4)

- "a scanner instantiator, stored on the medium and executed by the computer, operatively coupled to said receiver and said multi-lingual language detector for instantiating a scanner for the specific programming language, in response to said determining;" (Claims 9 and 21)

- "parser rules" (Claims 1, 4, 9, and 21)

- "certain patterns in terms of tokens" (Claims 1, 4 9, and 21)

- "tokens" (Claims 1, 4, 9, 21, and 23)

- "lexical constructs for the specific programming language" (Claims 1, 4, 9, and 21)

- "analyzer rules" (Claims 1, 4, 9, and 21)

- "certain combinations of tokens and patterns as being indicators of potential exploits" (Claims 1, 4, 9, and 21)

- "identifying, by the computer, individual tokens within the incoming stream" (Claims 1 and 4)

- "a tokenizer, for identifying individual tokens within the incoming" (Claims 9 and 21)

- "dynamically" (Claims 1, 4, 9, 2,1 and 23)

- "dynamically building" (Claims 1, 4, 9, 21, and 23)

- "a parse tree whose nodes represent tokens and patterns in accordance with the parser rules" (Claims 1, 4, 9, and 21)

- "dynamically detecting" (Claims 1, 4, 9, 21, and 23)

- "combinations of nodes in the parse tree which are indicators of potential exploits, based on the analyzer rules" (Claims 1, 4, 9, and 21)

- "indicating, by the computer, the presence of potential exploits within the incoming stream, based on said dynamically detecting" (Claims 1, 4, and 23)

- "a notifier, stored on the medium and executed by the computer, operatively coupled to said scanner instantiator for indicating the presence of potential exploits within the incoming stream, based on results of said analyze" (Claims 9 and 21)

1    ▪ "wherein the specific programming language is Uniform Resource Identifier
2    (URI)" (Claim 21)

3    ▪ "lexical constructs of a specific programming language" (Claim 23)

4    ▪ "certain patterns of tokens as forming programmatical constructs" (Claim 23)

5    ▪ "a parse tree whose nodes represent tokens and rules vis-à-vis the specific
6    programming language" (Claim 23)

7    ▪ "patterns of nodes in the parse tree which are indicators of potential exploits, based
8    on said expressing vis-à-vis the specific programming language" (Claim 23)

9        *iii.*    *Contentions Under 35 U.S.C. § 112(1)*

10    Subject to the Defendants' reservation of rights provided herein and based on Defendants'

11    present understanding of the asserted claims of the asserted patents, at least the following asserted

12    claims fail to satisfy one or more requirements of 35 U.S.C. § 112(1) because the specification

13    fails to provide an adequate written description and/or enabling disclosure of the identified terms.

14    To the extent an asserted claim is invalid for any reason under 35 U.S.C. § 112(1), all claims

15    depending therefrom are invalid for at least the same reasons.  Accordingly, each of the asserted

16    dependent claims incorporates by reference all § 112(1) invalidity contentions of the parent

17    claim(s).

18    **1.  U.S. Patent No. 6,154,844**

19    Defendants contend that the specification of the '844 patent does not provide sufficient

20    disclosure of the following limitations as broadly as those limitations are apparently being applied

21    by Finjan in its infringement contentions:

22    ▪ "inspector" (Claims 1, 7, 15, 16, and 43)

23    ▪ "first rule set" (Claims 15 and 16)

24    ▪ "content inspection engine" (Claims 15 and 16)

25    ▪ "determining whether to trust" (Claim 42)

26    ▪ "generating by the inspector a first Downloadable security profile" (Claims 1 and 7)

27    **2.  U.S. Patent No. 7,058,822**

28    Defendants contend that the specification of the '822 patent does not provide sufficient

disclosure of the following limitations as broadly as those limitations are apparently being applied by Finjan in its infringement contentions:

- "receiving downloadable-information" (Claims 9 and 12)
- "determining whether the downloadable-information includes executable code" (Claims 9 and 12)
- "causing mobile protection code to be communicated to at least one information-destination of the downloadable-information, if the downloadable-information is determined to include executable code" (Claims 9 and 12)
- "an information monitor for receiving downloadable-information" (Claims 9 and 12)
- "a content inspection engine communicatively coupled to the information monitor for determining whether the downloadable-information includes executable code" (Claims 9 and 12)
- "a packaging engine communicatively coupled to the content inspection engine for causing mobile protection code ("MPC") to be communicated to at least one information-destination of the downloadable-information, if the downloadable-information is determined to include executable code" (Claims 9 and 12)
- "wherein the content inspection engine comprises one or more downloadable-information analyzers for analyzing the downloadable-information" (Claim 9)
- "each analyzer producing therefrom a detection indicator indicating whether a downloadable-information characteristic corresponds with an executable code characteristic" (Claim 9)
- "an inspection controller communicatively coupled to the analyzers for determining whether the indicators indicate that the downloadable-information includes executable code" (Claim 9)
- "receiving means for receiving, at an information re-communicator, downloadable-information" (Claim 28)
- causing mobile protection code to be executed by a mobile code executor at a downloadable-information destination such that one or more operations of the

executable code at the destination, if attempted, will be processed by the mobile protection code" (Claim 28)

- "wherein the causing is accomplished by forming a sandboxed package including the mobile protection code and the downloadable information" (Claim 28)

- "wherein the packaging engine comprises an MPC generator for providing the MPC, a linking engine coupled to the MPC generator for forming a sandbox package including the MPC and the downloadable-information, and a transfer engine for causing the sandbox package to be communicated to the at least one information-destination" (Claim 12)

### 3. U.S. Patent No. 7,613,918

Defendants contend that the specification of the '918 patent does not provide sufficient disclosure of the following limitations as broadly as those limitations are apparently being applied by Finjan in its infringement contentions:

- "the client computer manages a plurality of computer accounts for logging in to the client computer" (Claims 1, 12, and 21)

- "each computer account of the plurality of computer accounts has associated therewith a security context within which an executable running on the client computer under such account is processed" (Claims 1, 12, and 21)

- "scanning CODE-A to derive a profile thereof" (Claim 1)

- "a code profiler, coupled with said receiver, for scanning CODE-A and deriving a profile thereof" (Claim 12)

- "scan CODE-A to derive a profile thereof" (Claim 21)

- "determining, based on the derived profile of CODE-A, an appropriate computer account from among the plurality of computer accounts, under which CODE-A may be processed by the client computer" (Claim 1)

- "a security context generator, coupled with said code profiler, for determining, based on the profile of CODE-A derived by said profiler, an appropriate computer account from among the plurality of computer accounts, under which CODE-A may be

processed by the client computer" (Claim 12)

- ▪ "determine, based on the derived profile of CODE-A, an appropriate computer account from among the plurality of computer accounts, under which CODE-A may be processed by the client computer" (Claim 21)

- ▪ "a code packager, coupled with said security context generator, for packaging" (Claim 12)

- ▪ "executable wrapper code" (Claims 1, 12, and 21)

- ▪ "a transmitter, coupled with said code packager, for forwarding CODE-C to the client computer for processing" (Claim 12)

### 4.    U.S. Patent No. 7,647,633

Defendants contend that the specification of the '633 patent does not provide sufficient disclosure of the following limitations as broadly as those limitations are apparently being applied by Finjan in its infringement contentions:

- ▪ "receiving downloadable-information by a computer" (Claim 8)

- ▪ "A computer program product, comprising a computer usable medium having a computer readable program code therein, the computer useable program code therein, the computer reasonable program code adapted to be executed for computer security" (Claim 14)

- ▪ "providing a system, wherein the system comprises distinct software modules, and wherein the distinct software modules comprise an information re-communicator and a mobile code executor" (Claim 14)

- ▪ "determining, by the computer, whether the downloadable-information includes executable code" (Claim 8)

- ▪ "wherein the information re-communicator is a network server" (Claim 10)

- ▪ "an information monitor for receiving downloadable-information by a computer" (Claims 8, 10, and 12)

- ▪ "a content inspection engine communicatively coupled to the information monitor for determining, by the computer, whether the downloadable-information includes

executable code" (Claims 8, 10, and 12)

▪ "a protection agent engine communicatively coupled to the content inspection engine for causing mobile protection code ("MPC") to be communicated by the computer to at least one information-destination of the downloadable-information, if the downloadable-information is determined to include executable code" (Claims 8,10, and 12)

▪ "wherein the information monitor intercepts received information received by an information re-communicator" (Claim 10)

▪ "wherein the content inspection engine comprises a parser for parsing the downloadable-information and a content analyzer communicatively coupled to the parser for determining whether one or more downloadable-information elements of the downloadable-information correspond with executable code elements" (Claim 12)

### 5. U.S. Patent No. 7,975,305

Defendants contend that the specification of the '305 patent does not provide sufficient disclosure of the following limitations as broadly as those limitations are apparently being applied by Finjan in its infringement contentions:

▪ "network interface" (Claim 1)

▪ "database of parser and analyzer rules" (Claims 1 and 13)

▪ "computer exploits" (Claims 1 and 13)

▪ "patterns of types of token" (Claims 1 and 13)

▪ "types of token comprising a punctuation type, an identifier type and a function type" (Claims 1 and 13)

▪ "rule-based content scanner" (Claim 1)

▪ "potential computer exploits" (Claims 1 and 13)

▪ "network traffic probe" (Claim 1)

▪ "selectively diverting" (Claim 1 and 13)

▪ "program code constructs" (Claims 1 and 13)

▪ "rule update manager" (Claim 1)

1          ▪   "pattern-matching engines" (Claims 2 and 14)

2          ▪   "content blocker" (Claim 5)

3              **6.      U.S. Patent No. 8,079,086**

4          Defendants contend that the specification of the '806 patent does not provide sufficient

5   disclosure of the following limitations as broadly as those limitations are apparently being applied

6   by Finjan in its infringement contentions:

7          ▪   "Downloadble" (Claims 1, 17, 24, 35, 37, and 42)

8          ▪   "transmitter" (Claims 24, 37, and 42)

9          ▪   "deriving security profile data" (Claims 1, 17, and 24)

10         ▪   "security profile" (Claims 1, 17, 24, 35, 37, and 42)

11         ▪   "list of suspicious operations that may be attempted by the Downloadable (Claims

12             1, 24, 35, 37, and 42)

13         ▪   "appending a representation" (Claim 1)

14         ▪   "appended Downloadable" (Claim 1)

15         ▪   "representation" (Claims 1, 17, 24, 35, 37 and 42)

16         ▪   "Downloadable scanner" (Claims 9 and 24)

17         ▪   "transport protocol transmission (Claims 17, 24, 35, and 42)

18         ▪   "retrieving security profile data for the incoming Downloadable from a database of

19             Downloadable security profiles indeed according to Downloadable IDs, based on

20             ID of the incoming Downloadable" (Claim 42)

21             **7.      U.S. Patent No. 8,141,154**

22         Defendants contend that the specification of the '154 patent does not provide sufficient

23   written description of the following limitations as broadly as those limitations are apparently being

24   applied by Finjan in its infringement contentions:

25         ▪   "a content processor (i) for processing content received over a network, the content

26             including a call to a first function, and the call including an input" (Claim 1)

27         ▪   "a content processor (i) for processing content received over a network, the content

28             including a call to a first function, and the first function including an input variable"

(Claim 6)

- "a content processor . . . (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe" (Claim 1)

- "a content processor . . . (ii) for calling a second function with a modified input variable" (Claim 6)

- "a transmitter for transmitting the input to the security computer for inspection, when the first function is invoked" (Claim 1)

- "a transmitter for transmitting the input variable to a security computer for inspection, when the first function is called" (Claim 6)

- "a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input" (Claim 1)

- "a receiver for receiving the modified input variable from the security computer, wherein the modified input variable is obtained by modifying the input variable if the security computer determines that calling a function with the input variable may not be safe" (Claims 6)

- "wherein said content processor (i) suspends processing of the content after said transmitter transmits the input to the security computer" (Claim 2)

- "wherein said content processor . . . (ii) resumes processing of the content after said receiver receives the indicator from the security processor" (Claim 2)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] process content received over a network, the content including a call to a first function, and the call including an input" (Claims 4 and 5)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] process content received over a network, the content including a call to a first function, and the first function including an input variable" (Claim 10)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . transmit the input for inspection, when the first

function is invoked, and suspend processing of the content" (Claims 4 and 5)

- ▪ "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . transmit the input variable for inspection, when the first function is called, and suspend processing of the content" (Claim 10)

- ▪ "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . receive an indicator of whether it is safe to invoke a second function with the input" (Claims 4 and 5)

- ▪ "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . receive a modified input variable" (Claim 10)

- ▪ "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . resume processing of the content after receiving the indicator, and invoke the second function with the input only if the indicator indicates that such invocation is safe" (Claims 4 and 5)

- ▪ "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . resume processing of the content after receiving the modified input variable" (Claim 10)

- ▪ "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . calling a second function with the modified input variable, wherein the modified input variable is obtained by modifying the input variable if the inspection of the input variable indicates that calling a function with the input variable may not be safe" (Claim 10)

- ▪ "wherein the program code causes the computer device to dynamically generate the input prior to transmitting the input for inspection" (Claim 5)

### 8.    U.S. Patent No. 8,225,408

Defendants contend that the specification of the '408 patent does not provide sufficient written description of the following limitations as broadly as those limitations are apparently being applied by Finjan in its infringement contentions:

- ▪ "receiving, by a computer, an incoming stream of program code" (Claims 1, 4, and 23)

- "determining, by the computer, any specific one of a plurality of programming languages in which the incoming stream is written" (Claims 1, 4, and 23)
- "instantiating, by the computer, a scanner for the specific programming language, in response to said determining" (Claims 1 and 4)
- "the scanner comprising parser rules and analyzer rules for the specific programming language" (Claims 1 and 4)
- "wherein the parser rules define certain patterns in terms of tokens, tokens being lexical constructs for the specific programming language" (Claims 1, 4, 9, and 21)
- "wherein the analyzer rules identify certain combinations of tokens and patterns as being indicators of potential exploits, exploits being portions of program code that are malicious" (Claims 1, 4, 9, and 21)
- "identifying, by the computer, individual tokens within the incoming stream" (Claims 1 and 4)
- "dynamically building, by the computer while said receiving receives the incoming stream, a parse tree whose nodes represent tokens and patterns in accordance with the parser rules" (Claims 1 and 4)
- "dynamically detecting, by the computer while said dynamically building builds the parse tree, combinations of nodes in the parse tree which are indicators of potential exploits, based on the analyzer rules" (Claims 1 and 4)
- "indicating, by the computer, the presence of potential exploits within the incoming stream, based on said dynamically detecting" (Claims 1, 4, and 23)
- "wherein the specific programming language is Uniform Resource Identifier (URI)" (Claim 21)
- "repeating said instantiating, said identifying, said dynamically building, said dynamically detecting and said indicating for the embedded program code, based on the parser rules and the analyzer rules for the other programming language" (Claim 8)
- "a receiver, stored on the medium and executed by the computer, for receiving an incoming stream of program code" (Claims 9 and 21);

- "a multi-lingual language detector, stored on the medium and executed by the computer, operatively coupled to said receiver for detecting any specific one of a plurality of programming languages in which the incoming stream is written" (Claims 9 and 21);

- "a scanner instantiator, stored on the medium and executed by the computer, operatively coupled to said receiver and said multi-lingual language detector for instantiating a scanner for the specific programming language, in response to said determining," (Claims 9 and 21);

- "a rules accessor for accessing parser rules and analyzer rules for the specific programming language" (Claims 9 and 21);

- "a tokenizer, for identifying individual tokens within the incoming" (Claims 9 and 21);

- "a parser, for dynamically building while said receiver is receiving the incoming stream, a parse tree whose nodes represent tokens and patterns in accordance with the parser rules accessed by said rules accessor" (Claims 9 and 21);

- "an analyzer, for dynamically detecting, while said parser is dynamically building the parse tree, combinations of nodes in the parse tree which are indicators of potential exploits, based on the analyzer rules" (Claims 9 and 21);

- "a notifier, stored on the medium and executed by the computer, operatively coupled to said scanner instantiator for indicating the presence of potential exploits within the incoming stream, based on results of said analyzer" (Claims 9 and 21);

- "for each of a plurality of programming languages, expressing exploits in terms of tokens and rules, wherein exploits are portions of program code that are malicious, wherein tokens are lexical constructs of a specific programming language" (Claim 23)

- "wherein rules designate certain patterns of tokens as forming programmatical constructs" (Claim 23)

- "dynamically building, while said receiving receives the incoming stream, a parse tree whose nodes represent tokens and rules vis-à-vis the specific programming language" (Claim 23)

1  ▪   "dynamically detecting, while said dynamically building builds the parse tree, patterns

2     of nodes in the parse tree which are indicators of potential exploits, based on said

3     expressing vis-à-vis the specific programming language" (Claim 23)

4         iv.    *Contentions Under 35 U.S.C. § 112(6)*

5     Subject to the Defendants' reservation of rights provided herein and based on Defendants'

6  present understanding of the asserted claims of the Asserted patents, Defendants identify the

7  following terms with respect to 35 U.S.C. § 112(6).   With respect to computer-implemented

8  means or step plus function claims, the specification must disclose a sufficient, corresponding

9  algorithm as structure for each function.  *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1313 (Fed.

10  Cir. 2012).

11         **1.    U.S. Patent No. 6,154,844**

12  ▪   Defendants contend that the following limitations are not adequately supported by the

13     specification of the '844 patent under 35 U.S.C. § 112(6):"means for receiving a

14     Downloadable" (Claim 43)

15  ▪   "means for generating a first Downloadable security profile that identifies suspicious

16     code in the received Downloadable" (Claim 43)

17  ▪   "means for linking the first Downloadable security profile to the Downloadable before

18     a web server makes the Downloadable available to web clients" (Claim 43).

19         **2.    U.S. Patent No. 7,058,822**

20     Defendants contend that the following limitations are not adequately supported by the

21  specification of the '822 patent under 35 U.S.C. § 112(6):

22  ▪   "a content inspection engine communicatively coupled to the information monitor for

23     determining whether the downloadable-information includes executable code"  (Claims

24     9 and 12)

25  ▪   "a packaging engine communicatively coupled with the content inspection engine for

26     causing mobile protection code ("MPC") to be communicated to at least one

27     information-destination of the downloadable-information, if the downloadable-

28     information is determining to include executable code." (Claims 9 and 12)

1    ▪ "a linking engine coupled to the MPC generator for forming a sandbox package

2      including the MPC and the downloadable-information" (Claim 12)

3    ▪ "a transfer engine for causing the sandbox package to be communicated to the at least

4      one information destination" (Claim 12)

5    ▪ "a mobile code means communicatively coupled to the receiving means for causing

6      mobile protection code to be executed by a mobile code executor at a downloadable-

7      information destination such that one or more operations of the executable code at the

8      destination, if attempted, will be processed by the mobile protection code" (Claim 28)

### 3.  U.S. Patent No. 7,613,918

Defendants contend that the following limitations are not adequately supported by the specification of the '918 patent under 35 U.S.C. § 112(6):

   ▪ "a plurality of computer accounts for logging in to the client computer" (Claims 1, 12, and 21)

   ▪ "a code profiler, coupled with said receiver, for scanning CODE-A and deriving a profile thereof" (Claim 12)

   ▪ "a security context generator, coupled with said code profiler, for determining, based on the profile of CODE-A derived by said profiler, an appropriate computer account from among the plurality of computer accounts, under which CODE-A may be processed by the client computer" (Claim 12)

   ▪ "a code packager, coupled with said security context generator, for packaging" (Claim 12)

   ▪ "a transmitter, coupled with said code packager, for forwarding CODE-C to the client computer for processing" (Claim 12)

### 4.  U.S. Patent No. 7,647,633

Defendants contend that the following limitations are not adequately supported by the specification of the '633 patent under 35 U.S.C. § 112(6):

   ▪ "content inspection engine comprises a parser for parsing the downloadable-information" (Claim 12)

"content analyzer communicatively coupled to the parser for determining whether one or more downloadable-information elements of the downloadable-information correspond with executable code elements" (Claim 12)

### 5. U.S. Patent No. 7,975,305

Defendants contend that the following limitations are not adequately supported by the specification of the '305 patent under 35 U.S.C. § 112(6):

- a network interface, housed within a computer, for receiving incoming content from the Internet on its destination to an Internet application running on the computer (claim 1)
- a rule-based content scanner that communicates with said database of parser and analyzer rules, operatively coupled with said network interface, for scanning incoming content received by said network interface to recognize the presence of potential computer exploits therewithin (claim 1)
- a network traffic probe, operatively coupled to said network interface and to said rule-based content scanner, for selectively diverting incoming content from its intended destination to said rule-based content scanner (claim 1)
- a rule update manager that communicates with said database of parser and analyzer rules, for updating said database of parser and analyzer rules periodically to incorporate new parser and analyzer rules that are made available (claim 1)
- content blocker, operatively coupled to said rule-based content scanner, for preventing incoming content having a computer exploit that was recognized by said rule-based content scanner from reaching its intended destination (claim 5)

### 6. U.S. Patent No. 8,079,086

Defendants contend that the following limitations are not adequately supported by the specification of the '086 patent under 35 U.S.C. § 112(6):

- "a Downloadable scanner coupled with said received for deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable" (Claim 24)
- "a transmitter coupled with said receiver and with said Downloadable scanner, for

transmitting the Downloadable and a representation of the Downloadable security profile data to a destination computer" (Claim 24)

- " a receiver for receiving an incoming Downloadable , and for receiving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable (Claim 37)

- "a database manager for retrieving security profile data for the incoming Downloadable from a data base of Downloadable security profiles indexed according to Downloadable IDs, based on an ID of the incoming Downloadable" (Claim 42)

### 7.     U.S. Patent No. 8,141,154

Defendants contend that the following limitations are not adequately supported by the specification of the '154 patent under 35 U.S.C. § 112(6):

- "a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input" (Claim 1)

- "a content processor (i) for processing content received over a network, the content including a call to a first function, and the first function including an input variable" (Claim 6)

- "a content processor . . . (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe" (Claim 1)

- "a content processor . . . (ii) for calling a second function with a modified input variable" (Claim 6)

- "a transmitter for transmitting the input to the security computer for inspection, when the first function is invoked" (Claim 1)

- "a transmitter for transmitting the input variable to a security computer for inspection, when the first function is called" (Claim 6)

- "a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input" (Claim 1)

- "a receiver for receiving the modified input variable from the security computer, wherein the modified input variable is obtained by modifying the input variable if the

security computer determines that calling a function with the input variable may not be safe" (Claim 6)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] process content received over a network, the content including a call to a first function, and the call including an input" (Claims 4 and 5)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] process content received over a network, the content including a call to a first function, and the first function including an input variable" (Claim 10)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . transmit the input for inspection, when the first function is invoked, and suspend processing of the content" (Claims 4 and 5)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . transmit the input variable for inspection, when the first function is called, and suspend processing of the content" (Claim 10)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . receive an indicator of whether it is safe to invoke a second function with the input" (Claims 4 and 5)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . receive a modified input variable" (Claim 10 and 11)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . resume processing of the content after receiving the indicator, and invoke the second function with the input only if the indicator indicates that such invocation is safe" (Claims 4 and 5)

- "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . resume processing of the content after receiving the modified input variable" (Claim 10)

- ▪ "[a] non-transitory computer-readable storage medium storing program code for causing a computing device to[] . . . calling a second function with the modified input variable, wherein the modified input variable is obtained by modifying the input variable if the inspection of the input variable indicates that calling a function with the input variable may not be safe" (Claim 10)

### 8.     U.S. Patent No. 8,225,408

Defendants contend that the following limitations are not adequately supported by the specification of the '408 patent under 35 U.S.C. § 112(6):

- ▪ "a scanner for the specific programming language, in response to said determining" (Claim 1)

- ▪ "a receiver, stored on the medium and executed by the computer, for receiving an incoming stream of program code" (Claim 9)

- ▪ "a multi-lingual language detector, stored on the medium and executed by the computer, operatively coupled to said receiver for detecting any specific one of a plurality of programming languages in which the incoming stream is written" (Claim 9)

- ▪ "a scanner instantiator, stored on the medium and executed by the computer, operatively coupled to said receiver and said multi-lingual language detector for instantiating a scanner for the specific programming language, in response to said determining, the scanner" (Claim 9)

- ▪ "a rules accessor for accessing parser rules and analyzer rules for the specific programming language, wherein the parser rules define certain patterns in terms of tokens, tokens being lexical constructs for the specific programming language, and wherein the analyzer rules identify certain combinations of tokens and patterns as being indicators of potential exploits, exploits being portions of program code that are malicious" (Claim 9)

- ▪ "a tokenizer, for identifying individual tokens within the incoming;" (Claim 9)

- ▪ "a parser, for dynamically building while said receiver is receiving the incoming

stream, a parse tree whose nodes represent tokens and patterns in accordance with the parser rules accessed by said rules accessor" (Claim 9)

- ▪ "an analyzer, for dynamically detecting, while said parser is dynamically building the parse tree, combinations of nodes in the parse tree which are indicators of potential exploits, based on the analyzer rules" (Claim 9)

- ▪ "a notifier, stored on the medium and executed by the computer, operatively coupled to said scanner instantiator for indicating the presence of potential exploits within the incoming stream, based on results of said analyzer" (Claim 9).

## VII.   ADMISSION OF PRIOR ART

During prosecution of the asserted patents, Finjan made numerous admissions concerning prior art in the specification and/or the prosecution history, including admissions that certain claim elements of certain asserted patents were present in the prior art. Finjan is thus estopped from taking positions inconsistent with its admissions in the prosecution history of the asserted patents. Defendants thus reserve the right to assert that Finjan should be estopped from arguing that prior art does not disclose the claim elements that Finjan has already admitted are disclosed in the prior art should Finjan assert otherwise.

## VIII.   DOCUMENT PRODUCTION ACCOMPANYING INVALIDITY CONTENTIONS

Documents produced pursuant to Patent L.R. 3-4(a)-(b) may be found at bates range: PP-ARM 00000001 – PP-ARM 00002409, PP-ARM00136758 – PP-ARM00137880, TFS00000001 – TFS00005934, and CA_MEDIA_0000001 – CA_MEDIA_0003906. Additional documents are being made available for inspection and copying at the San Francisco offices of undersigned counsel pursuant to Patent L.R. 3-4(a) and the default and/or eventual protective order in this action, including (1) a computer containing source code sufficient to show the operation of the accused products, and (2) a computer with review access to additional highly sensitive and highly confidential materials relating to the accused products.

Respectfully Submitted

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

DATED: June 8, 2015                    By */s/ Jennifer A. Kash*
                                          Jennifer A. Kash
                                          Attorneys for Defendants PROOFPOINT, INC.
                                          and ARMORIZE TECHNOLOGIES, INC.

## **<u>PROOF OF SERVICE</u>**

I am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 50 California Street, 22nd Floor, San Francisco, California 94111-4788.  On June 8, 2015, I served true copies of the foregoing document(s), as well as all appendices and exhibits thereto, on the interested parties in this action as follows:

PAUL J. ANDRE (State Bar No. 196585)
JAMES R. HANNAH (State Bar No. 237978)
LISA KOBIALKA (State Bar No. 191404)
HANNAH LEE (State Bar No. 253197)
pandre@kramerlevin.com
jhannah@kramerlevin.com
lkobialka@kramerlevin.com
hlee@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025

BENU C. WELLS (State Bar No. 4146163)
CHRISTINA LYNN MARTINEZ (State Bar No. 4695433)
bwells@kramerlevin.com
cmartinez@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036

By electronic mail transmission from grantmargeson@quinnemanuel.com on June 8, 2015, by transmitting a PDF format copy of such document(s) to each such person at the e mail address listed below their name(s). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

Executed on June 8, 2015, at San Francisco, California.

*/s/ Grant Nicholas Margeson*
Grant Nicholas Margeson